IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK SATCHELL, et al.<br><br>    Plaintiffs,<br>  v.<br><br>FEDEX CORPORATION,<br><br>    Defendant._____/ | No. C 03-02659 SI<br>No. C 03-02878 SI<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Plaintiffs' motion for class certification is presently pending before the Court. Defendant has opposed the motion. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby GRANTS plaintiffs' motion.

**BACKGROUND**

This action arises under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the California Fair Employment and Housing Act, Cal. Gov't Code § 12940 *et seq.*, ("FEHA"). Plaintiffs allege that defendant FedEx Express ("FedEx" or "defendant") discriminates based on race in (1) performance evaluations, (2) promotion, (3) compensation, and (4) discipline throughout the Western Region. The Western Region has four separate operations: Domestic Ground Operations ("DGO"), Air Ground Freight Services ("AGFS"), Air Operations Division, and the Customer Call Centers. Plaintiffs' proposed classes include employees from DGO and AGFS. AGFS performs ramp operations at airports and package sorting at major sort facilities. DGO performs sort, delivery, and pick-up operations at local stations throughout the region.

Plaintiffs seek certification of a "Minority Employee Class" consisting of African-American and Latino hourly employees in the following positions: Handler, Freight Handler, Material Handler, Checker-Sorter,

Customer Service Agent, Courier, Swing Driver, Ramp Transport Driver ("RTD"), Ramp Area Driver, Shuttle Driver, Dangerous Goods Agent, Information Agent, Operations Agent, Ramp Agent, Service Assurance Agent, Truck Control Agent, Trace Representative, Input Auditor, Team Leader, and Dispatcher. This class seeks to prohibit defendant from (1) providing minority employees with disproportionately fewer promotions to Checker/Sorter, Courier and other driving positions, and Operations Manager; (2) compensating minority employees less for the same work than similarly-situated non-minority counterparts; and (3) disciplining minority employees more frequently and more harshly than similarly-situated non-minority counterparts for the same occurrences.

In addition, plaintiffs propose a second class, the "African-American Lower-Level Manager Class," consisting of African-American managers below the Senior Manager level. This proposed class challenges defendant's alleged practices of compensating African-American lower-level managers less than their non-minority counterparts for the same work, and disciplining such managers more frequently and harshly than their non-minority counterparts.

According to plaintiffs, the effect of defendant's discriminatory practices is that the highest percentage of minority employees is in the lowest paid positions – hourly positions as Handler, Freight Handler, and Material Handler – and the representation of minorities drops at each step up the promotions ladder. *See* Statistical Analysis of Race and Ethnic Patterns in Federal Express Workforce by Richard Drogin, Ph.D. ("Drogin Report") ¶¶ 12-14. Plaintiffs allege that FedEx has a culture of hostility towards minorities, and that a lack of meaningful standards and monitoring allows racial bias to infect performance evaluation, promotion, compensation, and discipline decisions.

With respect to promotion, plaintiffs allege discrimination in promoting employees from "casual" to "permanent" status. Casual employees have the least job security of all FedEx employees. They also do not have access to the FedEx intranet, including the on-line Job Change Application Tracking System ("JCATS"), through which permanent employees apply for positions. As a result, promotions to permanent positions allegedly take place through a "tap-on-the-shoulder" process.

Plaintiffs also allege discrimination in promotion within the ranks of permanent employees. Plaintiffs allege that the Basic Skills Test ("BST"), which an employee must pass to be promoted from Handler to

Courier or other driving positions (the most common path), has a statistically significant adverse impact on minorities, disqualifying almost two-thirds of African-Americans who apply for the Courier job.

In addition, plaintiffs allege discrimination in promoting employees to entry-level manager positions. The Courier job is typically the stepping stone to the Operations Manager position, the first-line management job. FedEx uses the "ASPIRE" program to select first-line managers, which involves one prerequisite class and four development classes. An employee cannot attend these classes without his or her manager's approval. Then, when applying for a manager position, a candidate receives "screening" scores based on several evaluation tools (that plaintiffs allege have not been validated), and is ultimately subjected to an interview by a panel selected by the hiring manager. The hiring manager is supposed to select the highest-scoring candidate, but plaintiffs contend that managers do not always follow this rule to the detriment of African-American and Latino applicants.

Plaintiffs also allege that defendant uses a discriminatory performance evaluation system that causes under-promotion of minority employees. They have introduced evidence of a statistically significant disparity in the evaluation of minority employees and white employees in the same jobs. According to plaintiffs, this disparity is due to the use of subjective criteria (like "teamwork," "professionalism," and "neatness") and the lack of guidance given to managers to ensure that the subjective criteria are used in the same way by all managers. Performance evaluations directly impact eligibility for promotion. In addition, an employee's current manager must approve the employee's application for promotion, and managers have complete discretion to approve or disapprove these applications, without explanation or review of these decisions. Among approved applicants, FedEx policy requires that the promotion be given to the application with the highest "CEV" score, which is based on their time in service and their last two performance evaluation scores, but in practice hiring managers may select lower ranked applicants.

Defendant's personnel policy provides that an employee with an active discipline warning letter or performance reminder is not eligible for promotion. Warning letters and "online counselings" can also be taken into account in performance reviews, and an unsatisfactory performance review automatically results in the issuance of a performance reminder letter. Thus, discipline decisions and performance evaluations are intertwined, and have a significant adverse impact on promotion opportunities for minority employees. Plaintiffs

contend that minority employees are disciplined much more frequently than white employees. Drogin Rpt. ¶¶ 53-55, Table 22.

Compensation is determined by a formula tied to performance evaluations and, by implication, to discipline. *See* People Manual § 3-10, Table 1. Plaintiffs contend that minority employees and lower level managers are paid less than non-minorities, when accounting for seniority, part-time status, casual/permanent status, job title, and facility.

Plaintiffs do not allege that defendant's personnel system is "entirely subjective." Rather, they contend that while FedEx's operations are uniform, centralized, and hierarchical, and its personnel policies are also uniform across the company, managers are given significant discretion in making the decisions about discipline and performance evaluation that impact compensation and promotion opportunities down the line.

In support of their motion, plaintiffs have submitted the following materials: (1) deposition, testimony, declarations, and charges of discrimination by the named plaintiffs; (2) eighteen declarations from current and former FedEx employees; (3) FedEx documents and the testimony of FedEx's corporate representatives; (4) a report by statistician Richard Drogin regarding statistically significant disparities in evaluation, promotion, compensation, and discipline decisions; (5) a report by sociologist William Bielby regarding racial stereotypes in human resources processes; and (6) a report by industrial organizational psychologist Nita French regarding FedEx's "Basic Skills Test." In opposition, defendant has filed: (1) FedEx's principal personnel manual, the "People Manual"; (2) excerpts from the depositions of plaintiffs and plaintiffs' experts; (3) declarations from FedEx employees; (4) a report by statistical expert Mary Dunn Baker; (5) a report by industrial organizational psychologist Jerilyn Hayward; and (6) a report by management practices expert Jan Duffy. Plaintiffs filed (1) a reply declaration of Richard Drogin to the report of Mary Baker; (2) a reply declaration of Nita French to the reports of Jerilyn Hayward and Jan Duffy; and (3) a report by labor economist Marc Bendick, Jr, as well as additional excerpts of testimony.

## LEGAL STANDARD

A court may certify a class if the plaintiff demonstrates that all of the requirements of Federal Rule of

Civil Procedure 23(a) are satisfied and at least one of the requirements of Rule 23(b) is satisfied. *See* Fed. R. Civ. P. 23; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) requires that the following four factors must be met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). In short, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy.

In addition to demonstrating that the Rule 23(a) requirements are met, plaintiff must establish one or more of the following grounds for maintaining the suit as a class action pursuant to Rule 23(b): (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication. *See* Fed. R. Civ. P. 23(b). Here, plaintiffs assert that this case falls within Rule 23(b)(2).

In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather, whether the requirements of Rule 23 are met. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The Court must conduct a rigorous analysis to determine whether the Rule 23 requirements have been met. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). The Court is obliged to accept as true the substantive allegations made in the complaint. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). However, it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by plaintiff's complaints." 2 Herbert Newberg & Alba Conte, Newberg on Class Actions 7.26 (3d ed. 1992).

The decision to certify a class is committed to the discretion of the district court. *See Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977). Under Rule 23(c), a court may maintain a class action as to particular issues only or divide a class into subclasses. *See* Fed. R. Civ. P. 23(c)(4).

5

# DISCUSSION

## I. Rule 23(a) Requirements

### A. Numerosity

Rule 23(a)(1) requires that the class be so numerous that the number of potential plaintiffs cannot be practicably joined. Whether joinder would be impracticable depends on the facts and circumstances of each case and does not require any specific minimum number of class members. In this case, it is undisputed that the proposed Minority Employee Class numbers in the thousands, and the African-American Lower Level Manager Class contains hundreds of class members. Drogin Rpt. ¶¶ 13-16. The numerosity requirement is easily met.

### B. Common questions of law or fact[1]

Rule 23(a)(2)'s commonality requirement may be satisfied by "the alleged existence of common discriminatory practices." *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (citation omitted). A defendant's actions need not affect each class member in the same manner. *Id.* In the Ninth Circuit, the commonality requirement has been "construed permissively," and may be satisfied by either "shared legal issues with divergent factual predicates," or "a common core of salient facts coupled with disparate legal remedies." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988). Indeed, the Ninth Circuit considers the requirements for finding commonality under Rule 23(a)(2) to be "minimal." *Id.* at 1020.

Plaintiffs contend that they have satisfied this requirement by raising both the common legal issue and the common factual issue of discrimination against minorities at FedEx. Specifically, they rely on the uniformity of personnel policies throughout the Western Region, as reflected in the "People Manual," the Basic Skills Test, performance evaluations and discipline records, and the compensation and promotion decisions based on all

---

[1] Defendant argues that plaintiffs have apparently abandoned claims regarding promotions to Senior Manager and compensation and promotion for Latino Managers, which were alleged in the complaint, and that accordingly those claims should be dismissed. Plaintiffs respond that they seek only to certify the class claims for which they currently have a sound evidentiary basis, and that any dismissal is premature. The Court concludes that the appropriate course at this juncture in the litigation is to certify only the claims that are the subject of plaintiffs' motion, and if necessary the Court will later dismiss uncertified class claims.

of these factors. Common questions of fact include (1) whether FedEx's promotions, compensation, discipline and evaluation policies and practices in the Western Region are arbitrary, subjective and discretionary and thus susceptible to discriminatory application by predominantly non-minority managers; (2) whether the Basic Skills Test has been properly validated, (3) whether FedEx denies minorities equal promotional opportunities; (4) whether performance evaluations are race-biased; and (5) whether the discipline system is applied unfairly to minority employees. Common legal questions are also presented, such as (1) whether FedEx's conduct produces an adverse impact in violation of Title VII and FEHA; (2) whether FedEx's conduct constitutes adverse treatment under Title VII, § 1981, and FEHA, and (3) whether FedEx's conduct can be justified as a "business necessity."

Defendants raise a number of specific challenges to commonality. As a general matter, FedEx contends that plaintiffs cannot pursue a theory of subjective decision making because FedEx's personnel decisions are not entirely subjective, but rather are driven by objective factors spelled out in the People Manual and the DGO and AGFS manuals. This argument is unavailing. A court may certify a class where the challenged personnel policies contain both objective and subjective components. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990-91 (1988) (noting that subjective decision-making is a "practice" subject to challenge under Title VII); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir. 1990).

Relatedly, FedEx contends that there is no common "promotion" claim because promotion decisions are based on objective factors such as (1) time in service; (2) meeting minimum qualifications, including passing the Basic Skills Test; (3) active discipline related to the position; and (4) the applicant's past two performance evaluations.[2] However, plaintiffs argue that even if promotions are based on "objective" criteria, defendant ignores the adverse impact of these criteria and has failed to validate the use of such criteria. Plaintiffs also contend that FedEx managers have unmonitored discretion to approve or not approve employee applications.

FedEx also challenges the conclusions of plaintiffs' sociologist-expert regarding the discretionary aspects of the promotion process because it is based on the statistical analysis of Drogin, which FedEx argues is flawed. Indeed, defendant devotes much of its opposition to criticizing Drogin's methods and arguing that

---

[2] FedEx also argues that there is no separate promotion claim because this claim is really based on plaintiffs' other challenges to performance evaluation and discipline. However, the fact that plaintiffs' claims are interrelated does not defeat commonality.

7

the analysis of defendant's expert, Mary Baker, is more accurate and sound. However, an evaluation of which party has presented more compelling statistical evidence is a question of fact that should be resolved on the merits by the trier of fact and not at the class certification phase. *See Bouman v. Block*, 940 F.2d 1211, 1225 (9th Cir. 1991); *see also Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 292 (2d Cir. 1999).

FedEx also argues that commonality is lacking because plaintiffs have disparate promotion claims, some named plaintiffs never sought promotions, and not all class members received poor evaluations, including proposed named plaintiffs Brown, Stevenson, and Smith. These arguments relate more to the typicality of the plaintiffs than to whether there are common issues of law and fact; as discussed in Section I.C. *infra*, however, the named plaintiffs need not represent each and every type of claim in order to be "typical" and adequately represent the class.

FedEx also argues that there is neither a common "performance evaluation claim" nor a common "compensation claim." Defendants highlight the fact that FedEx uses 12 separate performance evaluations for hourly employees that evaluate different job-related criteria. However, the fact that FedEx uses a number of different evaluation forms does not defeat commonality. Instead, what is relevant for purposes of class certification is whether FedEx's systems and processes for evaluating employees present common issues. As plaintiffs note, all Operations Managers are evaluated with the same form, and the 12 different forms for hourly employees use the same rating scale and have overlapping categories. In addition, all of the forms are centrally designed and disseminated, and a single individual is responsible for all of them. Further, plaintiffs allege that the discretionary nature of reviews, as well as the fact that they have not been validated, present common issues of fact.

FedEx also contends that plaintiffs' compensation claims must fail because plaintiffs' own statistical analysis shows that minorities received higher evaluations on average than whites in many job categories, and defendant's statistical analysis suggests that in many jobs in many of the relevant years, minorities received higher compensation than whites. In support of these arguments, defendants rely heavily on their own statistician who challenges Drogin's statistical analyses as flawed. As stated above, however, it is not appropriate at the class certification phase for the Court to decide which party's statistical model is correct. *See Bouman*, 940 F.2d at 1225; *see also Caridad*, 191 F.3d at 292.

8

FedEx also contends that there is no common "discipline claim," because discipline claims are particularly "ill-suited for class treatment," and again because Drogin's statistical analysis is flawed. Defendant also argues that managers have little discretion in whether to issue discipline, because the two primary reasons for discipline are attendance and accidents. It is plaintiffs' contention, however, that FedEx's discipline system suffers from the same defects of manager discretion, lack of systematic monitoring, and adverse impact that characterize its promotion, evaluation and compensation systems. Discipline claims have been certified in other cases. *See, e.g.*, *Chisholm v. U.S. Postal Service*, 665 F.2d 482, 492 (4th Cir. 1981); *Binion v. Metropolitan Pier & Exposition Auth.*, 163 F.R.D. 517, 521-24 (N.D. Ill. 1995); *see also Battle v. White Cap, Inc.*, 1999 WL 199594, *3 (N.D. Ill. March 31, 1999).

Finally, FedEx contends that there is no common claim based on the BST, because there are four Basic Skills Tests covering reading comprehension, map reading, sorting, and listening, and different employees have to pass different portions of the tests; thus, there will be no class-wide proof on the appropriateness of the tests. However, plaintiffs contend that the BST is itself invalid, and thus whether a class member is required to take only a portion of the BST, or several portions, plaintiffs assert that the BST will have a common adverse impact on class members.

The Court concludes that plaintiffs' performance evaluation, discipline, promotion, and compensation claims present common questions of law and fact. Plaintiffs are challenging the uniform personnel policies of FedEx, and there are certainly common legal questions about whether the discretionary nature of personnel decision-making constitutes disparate treatment or disparate impact. *See Watson*, 487 U.S. at 990-91 (1988); *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 150-51 (N.D. Cal. 2004); *Morgan v. United Parcel Service, Inc.*, 169 F.R.D. 349, 356 (E.D. Mo. 1996). In addition, the statistical evidence on which plaintiffs rely is common to the class, and thus the inferences drawn from this evidence will also be common to all class members. *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 339-40 (1977). The question of whether defendant's statistical model is superior to plaintiffs' is for another day. *See Caridad*, 191 F.3d at 292.

**C.    Typicality**

9

The commonality and typicality requirements of Rule 23(a) tend to merge. *See Falcon*, 457 U.S. at 157 n. 3. Typicality exists if the named plaintiffs' claims are "reasonably coextensive" with those of absent class members. *See Hanlon*, 150 F.3d at 1020. Typicality does not mean that the claims of class members must be identical or substantially identical. *See Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiff has submitted declarations of the eight proposed class representatives and eighteen class members, alleging that they all experienced the same discriminatory practices in performance evaluation, promotion, compensation, and discipline.

Defendant argues that the class lacks a named plaintiff for many of the claims, because none of the named plaintiffs sought hourly promotions to Courier, RTD or Checker-Sorter during the limitations period; none of the named plaintiffs is a Latino who sought and was denied a promotion to management; and the only casual employee plaintiff, Rachel Hutchins, only sought a promotion to a Customer Service position and did not seek a promotion to Courier.

Given the permissive standard for typicality, the Court finds that the claims of the putative class representatives are reasonably coextensive with those of absent class members, even if they have not experienced each and every alleged form of discrimination. *See Arnold v. United Artists*, 158 F.R.D. at 449 (holding that it is sufficient for plaintiffs' claims to "arise from the same remedial and legal theories" as the class claims). With respect to plaintiffs' promotion claims, there is no requirement that plaintiffs have a class representative for every job category. *See Staton*, 327 F.3d at 957; *see also Hartman v. Duffey*, 19 F.3d 1459, 1472 (D.D.C. 1994) (holding that a job-by-job requirement for typicality "would permit an employer to defeat the broad enforcement of Title VII simply by administering different objective tests as part of the application process for each job."); *Dukes*, 222 F.R.D. at 167 (holding that "there is no requirement that plaintiffs have a class representative for each management category that they seek to represent.").

Defendants also argue that the disciplinary records of the named plaintiffs make them inadequate. However, because plaintiffs allege FedEx disciplines class members more frequently and more harshly than similarly-situated non-minority employees, the fact that some of the named plaintiffs have been disciplined by FedEx makes them typical, not inadequate.

Defendants also argue that none of the named plaintiffs filed an EEOC charge alleging discrimination

based on performance evaluation scores. However, the Court concludes that the named plaintiffs exhausted their administrative remedies with respect to this claim. The EEOC charges attached to the complaint allege discrimination in the terms and conditions of employment, and in particular named plaintiff Gonzales' EEOC charge states he was discriminated against when FedEx lowered his performance scores.

Finally, defendants argue that all of the named plaintiffs either took and passed or were exempt from the BST, and thus the class representatives cannot adequately represent this claim. Although plaintiffs argue that they do not have a separate "claim" with respect to the BST, the Court agrees with defendant that if the validity of the BST is to be challenged, separately or otherwise, some representative plaintiff must have taken and failed some part of the BST. Plaintiffs will be given the option to amend their complaint to add such an individual.

### D. Adequacy of representation

Adequacy of representation under Rule 23(a)(4) involves two elements: (1) that the representative party's attorney be qualified, experienced, and generally able to conduct the litigation; and (2) that the suit not be collusive and that the representative plaintiffs' interests not be antagonistic to those of the remainder of the class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Defendant appears to concede the first element, and the Court finds it satisfied because the firms representing plaintiffs have demonstrated competence and possess considerable experience in handling complex class action lawsuits. With respect to the second element, defendant has argued that the interests of class representatives Derrick Satchell and Kalini Boykin conflict with those of the class because they are managers who made many of the evaluation, discipline, and promotion decisions challenged here. The Court finds that this conflict is avoided by the creation of two separate classes, as proposed by plaintiffs.

## II. Rule 23(b) requirements

Once the four requirements of 23(a) have been met, the Court must determine whether the case meets any of the three requirements of Rule 23(b). Plaintiffs argue that this class should be certified under Rule 23(b)(2), which provides in pertinent part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> * * *
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed. R. Civ. P. 23(b).

Defendants argue that class certification is improper because the FedEx has not acted on grounds "generally applicable" to the class and because damages issues predominate over plaintiffs' requests for injunctive and declaratory relief.

Defendant argues that Rule 23(b)(2) requires a homogeneity that is lacking because the employment decisions at issue were made by many different individuals applying many different policies. However, plaintiffs are not challenging a series of unrelated and discrete decisions, but rather a set of policies, procedures and systems that allegedly affect class members in a similar fashion. Plaintiffs allege that FedEx has acted in a manner generally applicable to the class by (1) using selection procedures with an adverse impact that have not been validated such as the BST and excessively discretionary performance reviews, (2) implementing a discipline system with adverse impact and no systematic monitoring of outcomes, (3) building these discretionary results into a compensation system based on biased performance reviews that has significant adverse impact; (4) discriminating in promotions, both because of the built-in biases of the BST, performance review, and discipline components, and because of a lack of monitoring of "pass-overs" where managers disregard policy, and (5) by maintaining a "tap the shoulder" system of promotion from casual to permanent jobs. Accordingly, the Court concludes that certification under Rule 23(b)(2) is appropriate.

Second, the fact that plaintiffs seek damages in addition to declaratory and injunctive relief does not preclude certification under Rule 23(b)(2). *See Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003); *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir. 1986). Here, plaintiffs seek the following injunctive relief: (1) permitting casual employees to apply for and view the posting of jobs on the JCATS system; (2) eliminating passage of the BIT as a requirement for promotions into Courier and RED positions; (3) modifying performance evaluation criteria and monitoring performance evaluations to make them consistent, without adverse impact; and (4) modifying the discipline criteria and monitoring the discipline system. Plaintiffs

also seek equitable monetary relief in back and front pay, which does not affect class treatment under 23(b)(2). *See Probe*, 780 F.2d 776. While plaintiffs seek compensatory and punitive damages as well, the Court concludes that injunctive relief, and not monetary damages, is the primary relief sought.

### III. Class period

The parties debate the appropriate start-dates for the class claims alleged in the complaint. The class start dates are governed by statutes of limitations, which differ among claims and, with respect to 42 U.S.C. § 1981, according to types of claims; and by the dates on which various representative plaintiffs filed their administrative claims.

Plaintiffs' consolidated amended complaint alleges the following different class periods according to type of claim and subclass: (1) for plaintiffs' Title VII claims, a class period beginning June 20, 2002 for the Minority Employee Class and a class period beginning July 10, 2002 for the African-American Lower Manager Class;[3] (2) for plaintiffs' claims under 42 U.S.C. § 1981, a class period beginning October 17, 1999 for both classes; and (3) for plaintiffs' FEHA claims, a class period beginning June 13, 2001 for the Minority Employee Class and a class period beginning July 31, 2001 for the African-American Lower Manager Class. *See* Consolidated Amended Complaint ¶¶ 164, 187, & 204.

The parties' discussion of the class period centers on plaintiffs' promotion claims. According to FedEx, the first EEOC charge that raised a promotion claim was filed on April 8, 2003, and thus the earliest possible date for the beginning of the Title VII liability period is June 12, 2002. The Court notes that this is 8 days *earlier* than the Title VII class period asserted by plaintiffs. *See id.* at ¶ 164. To be conservative, the Court will use the later date: The Title VII class period shall begin on June 20, 2002 for the Minority Employee Class and on July 10, 2002 for the African-American Lower Manager Class.

FedEx also argues that the earliest possible date for the beginning of the liability period for Section 1981 promotion claims is January 1, 2002 under the applicable state statute, California Code of Civil Procedure § 340(3). Plaintiffs contend that the liability for their promotion claims dates back to October 17,

---

[3] The Court assumes that the class periods for the "Minority Lower Management Class" asserted in the complaint are the same for the proposed "African-American Lower Manager Class."

1999 under 28 U.S.C. § 1658, the four-year catch-all federal statute of limitations.[4]

The class period for plaintiffs' Section 1981 promotion claims is determined by whether those claims were actionable prior to 1990. In *Jones v. R.R. Donnelly*, __ U.S. __, 124 S. Ct. 1836 (2004), the Supreme Court held that Section 1981 claims that were not actionable prior to the 1991 Civil Rights Act are governed by the four-year catch-all statute, rather than the applicable state statute of limitations. The Ninth Circuit, in *Sitgraves v. Allied Signal, Inc.*, 953 F.2d 570 (9th Cir. 1992), held that denials of promotion were actionable prior to the 1991 Civil Rights Act where the promotion "rises to the level of a new and distinct relation between the employee and the employer." *Id.* at 572. *Sitgraves* held that the move from a non-supervisory position to a supervisory position met this test, as did a move from compensation based on hours worked to compensation based on an annual salary. *Id.* at 574.

Applying these tests, the *Sitgraves* court found actionable the claims of individuals who sought promotions from positions as hourly-compensated, non-supervisory employees to supervisory, salaried positions of professional rank. *Id.* In contrast, the court found non-actionable the claims of individuals who worked in semi-skilled, hourly positions who sought promotion to skilled, hourly positions that offered significant pay increases but no new supervisory responsibilities. *Id.* The court remanded for further findings with regard to another individual because the record was unclear whether the promotion "would have changed his position from supervised to supervisor; whether he was already a supervisor and the promotion simply moved him one step up the management ladder but would not have materially changed his contractual relationship with the employer; or whether a change in the nature of his supervisory functions would have significantly altered the nature of his relationship to management." *Id.*

Applying *Sitgraves* to the Section 1981 claims in this case, the Court concludes that changes from "casual" to permanent employment at FedEx were actionable prior to 1990, and thus are governed by the state statute of limitations. "Casual" employees do not have regular work schedules, receive no benefits, and do not have access to the FedEx intranet; when such employees become permanent, they enter into a "new and distinct" relationship with FedEx. Similarly, under *Sitgraves* the denial of promotions from hourly permanent

---

[4] Plaintiffs filed their consolidated amended complaint on October 17, 2003. The parties do not dispute that October 17, 1999 is the beginning of the class period for plaintiffs' Section 1981 compensation claims. In addition, the parties do not discuss the FEHA class period.

14

positions to salaried permanent positions would have been actionable prior to 1990. *See id.* In contrast, promotions from one hourly permanent position to another, such as moving from Handler jobs to Courier, Checker/Sorter and Ramp Transport Driver, would not have been actionable prior to 1990 because although these promotions lead to pay increases, they do not include new supervisory responsibilities nor do they significantly change the employee's relationship to management. *See id.*[5]

The Court will certify the classes for the time periods which accord with this analysis. The result, however, is cumbersome, and the parties may at a later time wish to seek a modification to these time frames.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion for class certification.

The Court hereby certifies the following classes:

1. A "Minority Employee Class" consisting of all African-American and Latino Handlers, Freight Handlers, Material Handlers, Checker-Sorters, Customer Service Agents, Couriers, Swing Drivers, Ramp Transport Drivers, Ramp Area Drivers, Shuttle Drivers, Dangerous Goods Agents, Information Agents, Operations Agents, Ramp Agents, Service Assurance Agents, Truck Control Agents, Trace Representatives, Input Auditors, Team Leaders, and Dispatchers, working in defendant's Western Region[6] who are or were employed during the class period, who allege claims of employment discrimination in violation of Title VII of the

---

[5] Plaintiffs argue that statistically significant disparities dating back to 1999 are relevant to plaintiffs' promotion claims, because there may be a pattern-and-practice of discrimination that constitutes a "continuing violation." In any event, plaintiffs contend, time-barred discriminatory acts may be relevant background evidence for timely discrimination claims. *See AMTRAK v. Morgan*, 536 U.S. 101, 115 n. 9 (2002); *Lyons v. England*, 307 F.3d 1092, 1107 n. 8 (9th Cir. 2002). The Court does not read *Morgan*'s footnote so broadly as to support a continuing violation theory for the pattern-and-practice allegations here. Time-barred acts may be relevant to the conduct alleged here, and the Court will apply FRE 401's relevance standard to this evidence, as the Ninth Circuit held proper in *Lyons*.

[6] The Western Region is now comprised of Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, New Mexico, Oregon, part of Texas, Utah, Washington, and Wyoming. From 1999 to November 2003, it was comprised of only six states: California, Hawaii, parts of Washington, Oregon, Alaska, and Nevada.

Civil Rights Act of 1964 (both disparate impact and disparate treatment), 42 U.S.C. § 1981, and for those class members working, or who worked, in California, the California Fair Employment and Housing Act; and

2. An "African-American Lower-Level Manager Class" consisting of all African-American Operations Managers working in defendant's Western Region during the class period who allege claims of employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (both disparate impact and disparate treatment), 42 U.S.C. § 1981, and for those class members working, or who worked, in California, the California Fair Employment and Housing Act.[7]

The Court certifies the following claims for the Minority Employees Class: (1) claims concerning promotions to Checker/Sorter, Courier and other driving positions, and Operations Manager; (2) claims concerning compensation; and (3) claims concerning discipline.

The Court certifies the following claims for the African-American Lower Manager Class: (1) claims concerning compensation; and (2) claims concerning discipline.

The class periods are as follows:

(1) for plaintiffs' Title VII claims, a class period beginning June 20, 2002 for the Minority Employee Class and a class period beginning July 10, 2002 for the African-American Lower Manager Class;

(2) for plaintiffs' claims under 42 U.S.C. § 1981,

(A) a class period beginning October 17, 1999 for both classes with respect to compensation claims;

(B) a class period beginning October 17, 1999 for promotion claims by class members alleging denial of promotion from one permanent hourly position to another permanent hourly position;

(C) a class period beginning January 1, 2002 for promotion claims by class members alleging

---

[7] The Court notes that the proposed class definitions contained in plaintiffs' motion for class certification differ slightly from the class definitions contained in plaintiffs' Consolidated Amended Complaint with regard to the job positions listed. *Compare* Plaintiffs' Motion at (i) *and* Complaint at ¶ 17. This order adopts the class definitions contained in plaintiffs' motion.

16

denial of promotion from casual positions to permanent positions;

(D) a class period beginning January 1, 2002 for promotion claims by class members alleging denial of promotion from permanent hourly positions to permanent salaried positions; and

(3) for plaintiffs' FEHA claims, a class period beginning June 13, 2001 for the Minority Employee Class and a class period beginning July 31, 2001 for the African-American Lower Manager Class.

In addition, the Court appoints Valerie Brown, Rick Gonzales, Cynthia Guerrero, Rachel Hutchins, Kelvin Smith, Sr., and Ken Stevenson as Class Representatives of the Minority Employee Class, and appoints Derrick Satchell and Kalini Boykin as Class Representatives of the African-American Lower-Level Manager Class. Plaintiffs are directed to amend the complaint to add a class representative who has failed the BST within 30 days of the filing date of this order.

The Court also appoints as Class Counsel of both the Minority Employee Class and the African-American Lower-Level Manager Class the following law firms: Lieff, Cabraser, Heimann & Bernstein, LLP; Schneider & Wallace; the Law Offices of John Burris; and the Law Offices Kay McKenzie Parker.

The Court further orders that this litigation be bifurcated into separate phases. The first phase will address liability and relief applicable to the class as a whole, including declaratory and injunctive relief, and whether defendant is liable for punitive damages. This phase of the action is certified under Federal Rule of Civil Procedure 23(b)(2). If liability is established, the second phase of this case will address appropriate individual compensatory and equitable relief, including individual entitlement to back and front pay. The precise procedures to be used during the second phase, if any, will be determined later in this litigation.

If plaintiffs wish to amend their complaint to add a class representative with requisite experience with the BST, they must do so no later than October 12, 2005. The parties are ordered to meet and confer concerning a form of class notice, and a plan for providing same to the class members, and present their suggestions to the Court in a joint statement to be filed no later than October 31, 2005  A further case management conference will be held on Friday, November 18, 2005. [No. C-03-2659 SI, #92; No. C-03-2878 SI, #61.]

**IT IS SO ORDERED.**

Dated: September 27, 2005

_____
SUSAN ILLSTON
United States District Judge