1  [Names and Addresses of Counsel
    Appear on Signature Page]

2

3

4

5

6

7

8

9           UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11  DERRICK SATCHELL, KALINI                  Case No. C 03-2659 SI; C 03-2878 SI
    BOYKIN, VALERIE BROWN, RICK
12  GONZALES, CYNTHIA GUERRERO,               **CLASS ACTION**
    RACHEL HUTCHINS, TYRONE
13  MERRITT, KELVIN SMITH, SR., and           **SECOND CONSOLIDATED AMENDED**
    KEN STEVENSON, on behalf of               **COMPLAINT FOR VIOLATIONS OF**
14  themselves and all others similarly situated,  **TITLE VII OF THE CIVIL RIGHTS ACT**
                                              **OF 1964; 42 U.S.C. § 1981; CALIFORNIA**
15              Plaintiffs,                   **FAIR EMPLOYMENT AND HOUSING**
                                              **ACT**
16  v.

17  FEDEX EXPRESS, a Delaware                 **JURY TRIAL DEMANDED**
    corporation,
18
                Defendant.
19

20

21

22

23

24

25

26

27

28

1

### INTRODUCTION

2   Individual and representative Plaintiffs Derrick Satchell ("Satchell"), Kalini

3   Boykin ("Boykin"), Valerie Brown ("Brown"), Rick Gonzales ("Gonzales"), Cynthia Guerrero

4   ("Guerrero"), Rachel Hutchins ("Hutchins"), Tyrone Merritt ("Merritt"), Kelvin Smith, Sr.

5   ("Smith"), and Ken Stevenson ("Stevenson") (collectively "Plaintiffs"), on behalf of themselves

6   and all others similarly situated, allege as follows:

7

### PRELIMINARY STATEMENT

8   1.      This race discrimination class action is brought on behalf of two classes of

9   African American and Latino ("Minority") employees of defendant FedEx Express.  One class

10  consists of all African-American and Latino Handlers, Freight Handlers, Material Handlers,

11  Checker/Sorters, Customer Service Agents, Couriers, Swing Drivers, Ramp Transport Drivers,

12  Ramp Area Drivers, Shuttle Drivers, Dangerous Goods Agents, Information Agents, Operations

13  Agents, Ramp Agents, Service Assurance Agents, Truck Control Agents, Trace Representatives,

14  Input Auditors, Team Leaders, and Dispatchers working in FedEx's Western Region, which

15  includes the states of Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada,

16  New Mexico, Oregon, part of Texas, Utah, Washington, and Wyoming, during the period

17  October 17, 1999 through the date of judgment in this action ("Minority Employee Class").  The

18  second class consists of all African-American Operations Managers in FedEx's Western Region,

19  which includes the states of Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana,

20  Nevada, New Mexico, Oregon, part of Texas, Utah, Washington, and Wyoming, during the

21  period October 17, 1999 through the date of judgment in this action ("African American Lower-

22  Level Manager Class").

23  2.      Representative Plaintiffs Brown, Gonzales, Guerrero, Hutchins, Merritt,

24  Smith, and Stevenson allege on behalf of themselves and the Minority Employee Class that

25  FedEx Express engages in a continuing policy and practice of racial discrimination through the

26  use of subjective and arbitrary decision making against its African American and Latino hourly

27  employees in the Western Region by (1) disproportionately assigning Minority Employees to

28  part-time and casual positions, instead of to the full-time and permanent hourly positions to which

1  similarly situated non-Minority employees are sometimes initially assigned; (2) providing

2  Minority Employees with fewer promotions to full-time and permanent hourly positions than

3  provided to similarly situated non-Minority employees; (3) providing Minority Employees with

4  fewer promotions to management positions than provided to similarly situated non-Minority

5  employees; (4) providing Minority Employees with less compensation, including less pay for the

6  same work and less overtime, than provided to similarly situated non-Minority employees; and

7  (5) disciplining Minority Employees for petty matters and/or for infractions unsupported or

8  contradicted by credible evidence, for which similarly situated non-Minority employees are not

9  disciplined or are disciplined less harshly.

10        3.      Representative Plaintiffs Derrick Satchell and Kalini Boykin allege on

11  behalf of themselves and the class of African American Lower-Level Managers that FedEx

12  Express engages in a continuing policy and practice of racial discrimination through the use of

13  subjective and arbitrary decision-making against its African American Operations Managers and

14  other managers below the level of Senior Manager ("African American Lower-Level Managers")

15  in the Western Region by (1) providing African American Lower-Level Managers with fewer

16  promotions to higher management grade levels and/or senior management positions than provided

17  to similarly situated non-Minority managers; (2) providing African American Lower-Level

18  Managers with less compensation, including less pay for the same work, than provided to

19  similarly situated non-Minority managers; and (3) disciplining African American Lower-Level

20  Managers for petty matters and/or for infractions unsupported or contradicted by credible

21  evidence, for which similarly situated non-Minority managers are not disciplined or are

22  disciplined less harshly.

23        4.      This action seeks an end to these discriminatory practices, and seeks

24  declaratory and injunctive relief, including rightful place relief, back pay, front pay, and

25  compensatory and punitive damages for the individual Plaintiffs and members of the two classes.

26                          **JURISDICTION AND VENUE**

27        5.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 and

28  42 U.S.C. §§ 2000e-5(f)(3) and 42 U.S.C. § 1981.  The action presents federal questions under

477941.1                          - 2 -                SECOND CONSOLIDATED AMENDED COMPLAINT AND
                                                       DEMAND FOR JURY TRIAL
                                                       CASE NO. C 03-2659 SI; C 03-2878 SI

1  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and 42 U.S.C.

2  § 1981.  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiffs'

3  claims under the California Fair Employment and Housing Act, Cal. Gov't Code §§ 12940, *et*

4  *seq.*

5         6.    Venue is proper in this district pursuant to 42 U.S.C. § 2000e5(f) and

6  28 U.S.C. § 1391 (b) & (c).  All the named Plaintiffs' claims, except for those of Plaintiff Merritt,

7  arose in California, and many of the acts complained of herein occurred in this District and gave

8  rise to the claims alleged.  Defendant operates over 100 facilities in California and employs

9  thousands of workers in the State of California.  Defendant operates at least 10 facilities in the

10  Northern District of California.

11                         **THE PARTIES**

12         7.    Plaintiff Derrick Satchell is an African American formerly employed by

13  Defendant FedEx Express as a Courier Operations Manager at its distribution facility located at

14  335 Brokaw Road, Santa Clara, California (the "Santa Clara Facility").  Plaintiff Satchell was

15  employed by Defendant from approximately June 1992 until April 16, 2002.  Plaintiff Satchell is

16  a resident of Tracy, California.

17         8.    Plaintiff Kalini Boykin is an African American currently employed by

18  Defendant as a Ramp Transport Driver ("RTD") Operations Manager, most recently at its

19  operations facility located at 1254 Davis Street, San Leandro, California (the "San Leandro

20  Facility").  Plaintiff Boykin has been employed by Defendant in several capacities since

21  approximately May 1995.  Plaintiff Boykin is a resident of Sacramento, California.

22         9.    Plaintiff Valerie Brown is an African American currently employed by

23  Defendant as a part-time Customer Service Agent at 935 Performance Dr., Stockton, California

24  (the "Stockton Facility").  Plaintiff Brown has been employed by defendant FedEx Express at

25  several of its facilities and in several capacities since approximately 1982.  Plaintiff Brown is a

26  resident of Tracy, California.

27         10.    Plaintiff Rick Gonzales is a Latino formerly employed by Defendant

28  FedEx Express as a Courier at Defendant's facility located at 9339 Ann Street, Santa Fe Springs,

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1  California (the "Santa Fe Springs Facility").  Plaintiff Gonzales was employed by Defendant from

2  approximately May 1988 until September 2002.  Plaintiff Gonzales is a resident of Temecula,

3  California.  Plaintiffs are informed and believe, and thereon allege, that Plaintiff is eligible for

4  rehire.

5          11.     Plaintiff Cynthia Guerrero is a Latina formerly employed by Defendant

6  FedEx Express as a Courier at Defendant's Santa Fe Springs Facility.  Plaintiff Guerrero was

7  employed by Defendant from approximately 1995 to July 2004.  Plaintiff Guerrero currently

8  resides in Topeka, Kansas.  Plaintiffs are informed and believe, and thereon allege, that Plaintiff

9  is eligible for rehire.

10          12.     Plaintiff Rachel Hutchins is an African American formerly employed by

11  Defendant FedEx Express as a part-time, casual Handler at Defendant's facility located at 2103

12  Airport Drive, Bakersfield, California (the "Bakersfield Facility").  Plaintiff Hutchins was

13  employed by Defendant from approximately December 1995 through April 1996, and from

14  March 2001 through January 2004.  Plaintiff Hutchins is a resident of Bakersfield, California.

15  Plaintiffs are informed and believe, and thereon allege, that Plaintiff is eligible for rehire.

16          13.     Plaintiff Tyrone Merritt is an African American currently employed by

17  Defendant FedEx Express as a Field Facility Management Specialist, domiciled at Defendant's

18  facility in New Orleans, Louisiana.  From the fall of 2001 to July 2005, he worked as a permanent

19  part-time Handler at Defendant's facility located at 3002 E. Old Tower Rd., Phoenix, Arizona

20  (the "Phoenix Facility").  Plaintiff Merritt has been employed by Defendant since approximately

21  September 1998.  Plaintiff Merritt is currently a resident of Memphis, Tennessee, where he is

22  attending training.

23          14.     Plaintiff Kelvin Smith is an African American formerly employed by

24  Defendant FedEx Express as a part-time Lead Handler at Defendant's Santa Clara Facility.

25  Plaintiff Smith was employed by Defendant from approximately November 1989 to July 2002.

26  Plaintiff Smith is a resident of Apple Valley, California.

27          15.     Plaintiff Ken Stevenson is an African American currently employed by

28  Defendant FedEx Express as an Operations Manager at Defendant's facility located at 201 W.

1   Manville St., Compton, California (the "Compton Facility").  Plaintiff Stevenson has been

2   employed by Defendant in various positions since approximately May 1997.  Plaintiff Stevenson

3   is a resident of Long Beach, California.

4          16.     Defendant FedEx Express is, and at all times mentioned herein was, a

5   Delaware corporation operating express mail and package delivery and freight delivery services

6   in the San Francisco Bay Area, as well as throughout the State of California and the United

7   States.  FedEx Express operates facilities, among other places, in Bakersfield, Emeryville,

8   Milpitas, Oakland, San Francisco, San Jose, San Leandro, Santa Clara, Santa Fe Springs, and

9   Sunnyvale, California.

10                              **CLASS ALLEGATIONS**

11          17.     The Representative Plaintiffs bring this class action pursuant to Fed. R.

12   Civ. P. 23(a), (b)(2), and (b)(3), on behalf of:  (1) a "Minority Employee Class" comprising all

13   African-American and Latino Handlers, Freight Handlers, Material Handlers, Checker/Sorters,

14   Customer Service Agents, Couriers, Swing Drivers, Ramp Transport Drivers, Ramp Area

15   Drivers, Shuttle Drivers, Dangerous Goods Agents, Information Agents, Operations Agents,

16   Ramp Agents, Service Assurance Agents, Truck Control Agents, Trace Representatives, Input

17   Auditors, Team Leaders, and Dispatchers working in FedEx's Western Region, which includes

18   the states of Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, New

19   Mexico, Oregon, part of Texas, Utah, Washington, and Wyoming, during the period October 17,

20   1999 through the date of judgment in this action; and (2) an "African American Lower-Level

21   Manager Class" comprising all African-American Operations Managers in FedEx's Western

22   Region, which includes the states of Alaska, Arizona, California, Colorado, Hawaii, Idaho,

23   Montana, Nevada, New Mexico, Oregon, part of Texas, Utah, Washington, and Wyoming, during

24   the period October 17, 1999 through the date of judgment in this action.

25          A.     **Employee Class**

26          18.     Plaintiffs Brown, Gonzales, Guerrero, Hutchins, Merritt, Smith, and

27   Stevenson are members of, and seek to represent, the Minority Employees Class.

28          19.     The members of the Minority Employee Class identified herein are so

477941.1                                  - 5 -          SECOND CONSOLIDATED AMENDED COMPLAINT AND
                                                        DEMAND FOR JURY TRIAL
                                                        CASE NO. C 03-2659 SI; C 03-2878 SI

1   numerous that joinder of all members is impracticable.  By the end of 2003, FedEx Express had

2   many tens of thousands of employees.  Although the precise number of Minority Employees

3   affected by the discriminatory practices alleged herein is currently unknown, it is far greater than

4   can be feasibly addressed through joinder.  The precise number is ascertainable from Defendant's

5   records.

6           20.     There are many questions of law and fact common to the Minority

7   Employee Class, and these questions predominate over any questions affecting only individual

8   members.  Common questions of fact or law include, among others:  (1) whether FedEx Express'

9   policies or practices have a disparate impact on Minority Employees with respect to (a) initial job

10  assignment, (b) compensation, (c) promotion, and (d) discipline; (2) whether any disparate impact

11  is justified by business necessity; (3) whether the disparate impact constitutes a violation of

12  Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e et seq.; (4) whether FedEx Express has

13  intentionally discriminated against Minority Employees with respect to (a) initial job assignment,

14  (b) compensation, (c) promotion, and (d) discipline; (5) whether FedEx Express has engaged in a

15  pattern and practice of disparate treatment adverse to Minority Employees; (6) whether that

16  disparate treatment violates Title VII of the 1964 Civil Rights Act; (7) whether defendant's

17  intentional discrimination against Minority Employees violates 42 U.S.C. § 1981; (8) whether

18  FedEx Express' policies or practices violate Section 12940, *et seq*., of the California Government

19  Code, known as the Fair Employment and Housing Act ("FEHA"), as to Minority Employees

20  who have been employed or reside in California; and (9) whether injunctive relief and other

21  equitable remedies (including back pay and front pay) and compensatory and punitive damages

22  are warranted for the Minority Employee Class.

23          21.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2)

24  because FedEx Express has acted and/or refused to act on grounds generally applicable to the

25  Minority Employee Class, making appropriate declaratory and injunctive relief with respect to

26  Plaintiffs Brown, Gonzales, Guerrero, Hutchins, Merritt, Smith, and Stevenson and the Minority

27  Employee Class as a whole.  The members of the Minority Employee Class are entitled to

28  injunctive relief to end FedEx Express' common, uniform, and unfair racially discriminatory

1    personal policies and practices.

2            22.    Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3)

3    because common questions of fact and law predominate over any questions affecting only

4    individual members of the Minority Employee Class, and because a class action is superior to

5    other available methods for the fair and efficient adjudication of this litigation.  The members of

6    Minority Employee Class have been damaged and are entitled to recovery as a result of FedEx

7    Express' common, uniform, and unfair racially discriminatory personnel policies and practices.

8    FedEx Express has computerized payroll and personnel data that will make calculation of

9    damages for specific members of the Minority Employee Class relatively simple.

10            **B.    African American Lower-Level Manager Class**

11            23.    Plaintiffs Satchell and Boykin are members of, and seek to represent, the

12    African American Lower-Level Manager Class.

13            24.    The members of the African American Lower-Level Manager Class

14    identified herein are so numerous that joinder of all members is impracticable.  By the end of

15    2003, FedEx Express had many tens of thousands of employees.  Although the precise number of

16    African American Lower-Level Managers affected by the discriminatory practices alleged herein

17    is currently unknown, it is far greater than can be feasibly addressed through joinder.  The precise

18    number is ascertainable from Defendant's records.

19            25.    There are many questions of law and fact common to the African American

20    Lower-Level Manager Class, and these questions predominate over any questions affecting only

21    individual members.  Common questions of fact or law include, among others:  (1) whether

22    FedEx Express' policies or practices have a disparate impact on African American Lower-

23    Managers with respect to (a) compensation, (b) promotion to senior management, and

24    (c) discipline; (2) whether any disparate impact is justified by business necessity; (3) whether the

25    disparate impact constitutes a violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C.

26    § 2000e et seq.; (4) whether FedEx Express has intentionally discriminated against African

27    American Lower-Level Managers with respect to (a) compensation, (b) promotion to senior

28    management, and (c) discipline; (5) whether FedEx Express has engaged in a pattern and practice

477941.1                                - 7 -                    SECOND CONSOLIDATED AMENDED COMPLAINT AND
                                                                DEMAND FOR JURY TRIAL
                                                                CASE NO. C 03-2659 SI; C 03-2878 SI

of disparate treatment adverse to African American Lower-Level Managers; (6) whether that disparate treatment violates Title VII of the 1964 Civil Rights Act; (7) whether defendant's intentional discrimination against African American Lower-Level Managers violates 42 U.S.C. § 1981; (8) whether, as to African American Lower-Level Managers who have been employed or reside in California, FedEx Express' policies or practices violate Section 12940, *et seq*., of the California Government Code, known as the Fair Employment and Housing Act ("FEHA"); and (9) whether injunctive relief and other equitable remedies (including back pay and front pay) and compensatory and punitive damages are warranted for the African American Lower-Level Manager Class.

26.    The claims of Representative Plaintiffs Satchell and Boykin are typical of the claims of the African American Lower-Level Manager Class.

27.    Representative Plaintiffs Satchell and Boykin will fairly and adequately represent and protect the interests of the members of the African American Lower-Level Manager Class. Plaintiffs have retained counsel competent and experienced in complex class actions and employment discrimination litigation.

28.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because FedEx Express has acted and/or refused to act on grounds generally applicable to the African American Lower-Level Manager Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs Satchell and Boykin and the African American Lower-Level Manager Class as a whole. The members of the African American Lower-Level Manager Class are entitled to injunctive relief to end FedEx Express' common, uniform, and unfair racially discriminatory personnel policies and practices.

29.    Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the African American Lower-Level Manager Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the African American Lower-Level Manager Class have been damaged and are entitled to recovery as a result of FedEx Express' common, uniform, and unfair

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1   racially discriminatory personnel policies and practices.  FedEx Express has computerized payroll

2   and personnel data that will make calculation of damages for specific members of the African

3   American Lower-Level Manager Class relatively simple.

4   <center>**STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS**</center>

5   <center>A.   **FedEx Express' Discriminatory Policies and Practices**</center>

6          30.    Defendant FedEx Express engages in a pattern and practice of highly

7   subjective decision making regarding employment matters that is discriminatory to Minority

8   Employees and African American Lower-Level Managers and is manifested in initial assignments

9   (as to Minority Employees only), promotions, compensation, and discipline.  While Defendant

10  has policies designed to govern these matters, many of these policies involve uncontrolled

11  subjective criteria and/or are applied by Defendant in an arbitrary and capricious manner. As a

12  result, racial biases and stereotypes enter into Defendant's employment decisions.

13         31.    Defendant's system of subjective and arbitrary decision making has an

14  adverse impact on Minority Employees and African American Lower-Level Managers relative to

15  their non-Minority peers with respect to (a) initial job assignment (as to Minority Employees

16  only); (b) promotion to permanent and full-time positions and to management; (c) compensation;

17  and (d) discipline.  This impact is not justified by business necessity.  Even if it could be so

18  justified, less discriminatory alternatives exist that could equally serve any alleged necessity.

19         32.    Defendant also engages in intentional discrimination against Minority

20  Employees and African American Lower-Level Managers with respect to (a) initial job

21  assignment (as to Minority Employees only); (b) promotion to permanent and full-time positions

22  and to management; (c) compensation; and (d) discipline through its system of subjective and

23  arbitrary decision making, as demonstrated by anecdotal and statistical evidence.

24         33.    Defendant has discriminated against Minority Employees by use of a dual-

25  employment track.  For example, both full-time and part-time employees fill Handler positions at

26  a facility.  The full-time positions are more lucrative and provide employees with more

27  opportunities for advancement, greater job security, and greater pay and benefits.  By contrast, the

28  part-time positions are less desirable because they offer lower wages, lesser benefits, changing

1    and inconsistent work hours, proportionately heavier responsibilities, and more difficult work

2    conditions.  Defendant has a systematic pattern and practice of relegating qualified Minority

3    Employees to part-time jobs, with lesser job security, compensation, and opportunity for

4    advancement.  Defendant typically reserves the full-time, permanent, higher wage positions for

5    non-Minority employees.  Consistent with Defendant's long-standing discriminatory policies and

6    practices, Defendant typically hires Minority Employees only for entry level, part-time, and

7    casual positions.

8              34.     Defendant also disproportionately fails to promote qualified Minority

9    Employees from part-time, casual positions to full-time and permanent positions at the same rate

10   as their similarly situated non-Minority counterparts.  Even when FedEx Express does promote

11   Minority Employees from part-time, casual positions to full-time, permanent positions, it does not

12   promote them as quickly as their similarly situated non-Minority counterparts.  To be promoted

13   from Handler or other low level hourly positions into Courier, Ramp Transport Driver, or Service

14   Agent positions, a FedEx employee must pass a group of tests known as the Basic Skills Tests

15   ("BST"), which FedEx knows has statistically significant adverse impact on minorities, and

16   which has not been validated.  The BST requirement applies uniformly to all Service Agent,

17   Courier, and Ramp Transport Driver candidates in the Western Region.  FedEx also uses uniform

18   performance evaluations that have adverse impact and have not been validated, and that are the

19   basis for promotion and compensation decisions under FedEx policy.

20             35.     Virtually all Minority Employees of Defendant FedEx Express occupy

21   entry level, hourly positions.  FedEx Express disproportionately fails to promote qualified

22   Minority Employees to lower management positions such as Operations Manager, and instead

23   disproportionately promotes similarly situated or less qualified non-Minority employees to those

24   positions.

25             36.     The few Minority Employees who are able to break into the management

26   ranks are usually promoted by a small handful of Minority managers.  These Minority managers,

27   however, are themselves often subjected to discriminatory practices that minimize their

28   opportunities for further advancement.  Such practices include, for example, exclusion of

1    Minority managers from "informal" email buddy lists and social gatherings that are used to

2    communicate relevant operating procedures, discuss managerial issues, and post corporate

3    advancement opportunities.

4           37.    FedEx Express disproportionately fails to promote the few qualified

5    African American Lower-Level Managers to Senior Manager positions, and instead

6    disproportionately promotes similarly situated, or less qualified, non-Minority Operations

7    Managers or other non-Minority Lower-Level Managers to Senior Manager positions. Even

8    when African American Lower-Level Managers are promoted to Senior Manager positions, they

9    are promoted less quickly than similarly situated, or less qualified, non-Minorities.

10          38.    Plaintiffs are informed and believe that Minority Employees and African

11   American Lower-Level Managers are paid less than non-Minority employees who perform

12   substantially similar work and have similar or lesser skills and experience. Plaintiffs are further

13   informed and believe that non-Minority employees are more likely to be assigned to positions that

14   pay better than positions to which Minority Employees are assigned.

15          39.    Plaintiffs are informed and believe that this discrimination in compensation

16   takes on several forms: requiring Minority Employees and African American Lower-Level

17   Managers to perform the job duties of higher positions without a commensurate change in their

18   title or increase in pay; paying Minority Employees and African American Lower-Level

19   Managers less than non-Minority employees with the same job title and job duties; providing

20   Minority Employees with fewer desired overtime hours than non-Minority employees with equal

21   or less seniority; and not paying Minority Employees the guaranteed minimum pay.[1]

22          40.    Defendant has also engaged in a longstanding, widespread and

23   discriminatory policy and practice of applying differential standards in determining whether to

24   subject an employee to disciplinary action. Minority Employees and African American Lower-

25   Level Managers are consistently reprimanded and disciplined for petty matters, and are

26   disciplined for infractions unsupported or contradicted by credible evidence. Non-Minority

27   _____

[1] Defendant guarantees its part-time employees a minimum of 17½ hours to which they are entitled even if the company does not have sufficient work to be performed. The number of hours out of the guaranteed minimum of hours which an employee did not actually work are called "excess" minimum hours.

28

1    Employees are not reprimanded or disciplined for similar matters, or for infractions which are not

2    supported by credible evidence.

3         41.    Defendant routinely terminates Minority Employees and African American

4    Lower-Level Managers who receive three forms of written discipline within a 12-month period,

5    even if some of the three are documented counselings or Online Compliment/Counselings

6    ("OLCC")[2], rather than formal warning letters.  By contrast, Defendant does not automatically

7    terminate non-Minority employees and managers who are disciplined three times in a 12-month

8    period.  Where non-Minorities have received three disciplinary actions in a 12-month period,

9    Defendant has allowed the non-Minority employee to continue his or her employment, has

10   transferred the employee, or has demoted the employee.

11        42.    Defendant has condoned the discriminatory conduct of its managers by

12   failing to properly investigate formal complaints regarding discrimination, and by promoting

13   managers who engage in acts of discrimination or transferring them to other locations despite

14   repeated complaints (and in some cases, previous discrimination lawsuits) by Plaintiffs and other

15   Minority Employees and African American Lower-Level Managers.

16        43.    This pattern of denying Minority Employees and African American Lower-

17   Level Managers equal assignments, promotions, training, and compensation and of over-

18   disciplining Minority Employees and African American Lower-Level Managers, is not the result

19   of random or non-discriminatory factors.  Rather, it is the result of an ongoing and continuous

20   pattern and practice of intentional race discrimination in assignments, compensation, promotions,

21   and discipline.  It is further the result of reliance on policies and practices that have an adverse

22   impact on Minority Employees which cannot be justified by business necessity, and for which

23   alternative policies and practices with less discriminatory impact could be utilized that would

24   equally serve any asserted business necessity.  Plaintiffs are informed and believe that such

25   policies and practices continue up to and including the present and include, without limitation:

26        (a)    Failure to consistently post job and promotional openings to ensure

27

28   [2] OLCCs are verbal warnings accompanied by a notation in a company employee database that both employee and manager acknowledge in writing.

1   that all Minority Employees and African American Lower-Level Managers have notice of and

2   opportunity to seek advancement, higher compensation, overtime, or more desirable assignments

3   and training;

4           (b)     Reliance upon unweighted, arbitrary and subjective criteria (used

5   by a nearly all-non-Minority managerial workforce) in making job assignment, training,

6   performance review, compensation, promotion, and discipline decisions.  Even where FedEx

7   policies state objective requirements, these requirements are often applied in an inconsistent

8   manner and ignored at the discretion of management;

9           (c)     Reliance on racial stereotypes in making employment decisions

10  involving job assignments, promotions, compensation, discipline and training;

11          (d)     Pre-selection and "grooming" of non-Minority employees for

12  promotion, favorable assignments, higher pay, and more desirable positions;

13          (e)     Maintenance of largely racially-segregated job categories and

14  departments;

15          (f)     Deterrence and discouragement of Minority Employees and African

16  American Lower-Level Managers from seeking advancement, training, favorable assignments

17  and higher paid, more desirable positions;

18          (g)     Paying Minority Employees and African American Lower-Level

19  Managers lower compensation than similarly situated non-Minorities;

20          (h)     Assigning Minority Employees to lower paying positions and

21  positions with lesser advancement potential than those given to non-Minorities (including part-

22  time and casual positions), and advancing Minority Employees more slowly from these positions

23  than similarly situated non-Minority employees;

24          (i)     Providing less training and support to Minority Employees and

25  African American Lower-Level Managers than that given to non-Minority employees and

26  managers; and

27          (j)     Using employment tests (such as the BST) and performance

28  evaluations that have adverse impact and have not been validated, and failing to explore

1    alternative, non-discriminatory options.

2          44.    As a proximate result of the racially discriminatory employment practices

3    and other wrongful acts alleged herein, Plaintiffs and members of both classes have suffered loss

4    of income, loss of advancement and promotion, loss of career opportunity, and/or loss of

5    intangible job benefits.  As a proximate result of the racially discriminatory employment policies,

6    practices and other wrongful acts alleged herein, Plaintiffs and members of both classes have

7    experienced pain, suffering, severe emotional and mental distress, shame, humiliation,

8    embarrassment, and related physical ailments.

9          45.    Plaintiffs, and each of them, have experienced such racially discriminatory

10   employment practices and other racially discriminatory actions by Defendant including, without

11   limitation, the practices and actions described herein.

12          B.    **FedEx Express' Operations**

13          46.    The Plaintiffs to this action are, or have been, employed by Defendant

14   FedEx Express in its Western Region.

15          47.    Defendant FedEx Express' Western Region includes the following states:

16   Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, New Mexico, Oregon,

17   part of Texas, Utah, Washington, and Wyoming.

18          48.    Defendant employs uniform employment and personnel policies

19   throughout all its districts, regions, and/or divisions in the Western Region.  Regardless of facility

20   or corporate division, there are uniform policies for employees, uniform "orientation" procedures,

21   and uniform salary, assignment, pay, training, promotion, and disciplinary policies.  All facilities

22   must follow these uniform, company-wide policies and procedures.

23          49.    Defendant operates numerous warehouse distribution centers in California

24   and the United States.  Distribution facilities are standardized and comprised of a large warehouse

25   to which packages are delivered, sorted, stored for later delivery or pick-up, and shipped.

26          50.    Defendant operates several shifts at its major distribution facilities, during

27   which packages arrive and depart the warehouse.  Many thousands of packages may be handled

28   and sorted on the Line (the conveyor belt used to move packages inside a station) per hour during

a shift at a mid- to large-sized facility.  An individual package may weigh anywhere from a few ounces to 75 pounds.  Crates may weigh up to 200 pounds.

51.     Defendant employs numerous Handlers to lift, sort, scan and stack packages in buckets, cans and delivery vehicles.  In addition, several of the Handlers are designated as "Lead" and are responsible for the coordination and efficient operation of other Handlers in processing packages along a particular part of the Line.

52.     In addition to Handlers, Defendant employs Checker/Sorters, who scan and direct packages; Couriers and Swing Drivers, who operate the delivery vehicles and deliver and pickup packages from customers; Shuttle Drivers, who drive shuttles or large tractor trucks to pick up significant numbers of packages from institutional customers and to make trips to the airport and other distribution facilities; Customer Service Agents, who interact with the public and handle customer pickups and complaints; Dispatchers, who communicate with Couriers; Operations Managers, who supervise the various workgroups or job classes in the Facility during a shift; and Freight Handlers, Material Handlers, Ramp Agents, Ramp Area Drivers, and Ramp Transport Drivers to load and unload packages and heavy freight, to transfer the cargo to and from the cargo airplanes to the onsite facility for sorting or storage, and to transfer the cargo to and from the large freight vehicles or smaller shuttles that transport the packages to the various distribution facilities in the area, or to their ultimate destinations.  FedEx also employs Dangerous Goods Agents, Information Agents, Operations Agents, Service Assurance Agents, Truck Control Agents, Trace Representatives, Input Auditors, and Team Leaders to assist with and coordinate these operations.

53.     The Regions for Defendant FedEx Express are headed by Vice Presidents of Operations.  The Districts for FedEx Express are headed by District Managers who report directly to the Vice Presidents of Operations.  The Districts are comprised of individual distribution/service centers in the Domestic Ground Operations ("DGO") division, and of "organizations" in Air Ground Freight Services ("AGFS") division, which may correspond to a single facility or to set of operations within a larger airport based facility.  Both service centers and organizations are run by Senior Managers, who report directly to the Managing Directors.

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1    Senior Managers supervise Operations Managers, the lowest management positions.

2           54.    The Vice President of Operations, the District Managers and Senior

3    Managers form the senior management ranks in a region.  The various operations managers at

4    each facility form the lower management ranks.

5           55.    Defendant has limited the senior and lower management ranks primarily to

6    non-Minorities in the Western Region.  Defendant principally promotes from within and

7    maintains a work force with significant numbers of Minority Employees in lower level jobs.

8    Defendant, however, employs only a sparse number of Minorities in its management ranks.

9    Plaintiffs are informed and believe, and based thereon allege, that Defendant has never employed

10   a Minority as a Vice President of Operations in the Western Region.  Plaintiffs are informed and

11   believe that even when Minority Employees are promoted, on average they are advanced later,

12   and then more slowly, than similarly situated non-Minority employees.

13          56.    As a result of the scarcity of Minority managers in management positions

14   in the Western Region, the managerial ranks within the District are commonly known as the "Ole

15   Boys Network" or the "Country Club."  Racial epithets have often been used by Defendant's

16   Senior Managers.

17          57.    The racial composition of Defendant's workforce with respect to its senior

18   and lower management ranks is grossly disproportionate to the available pool of Minority

19   workers who are qualified for positions in the senior and lower management ranks of Defendant's

20   business.

**ALLEGATIONS OF NAMED PLAINTIFFS**

21

22   **I.    MINORITY EMPLOYEE CLASS**

23          **Valerie Brown**

24          A.    **Class Claims**

25          58.    Plaintiff Brown was hired by Defendant in approximately 1982 as a

26   Customer Service Agent at the distribution facility in Sunnyvale Facility and transferred to the

27   Milpitas Facility in approximately 1987 upon closure of the former facility. In approximately

28   1989, Defendant employed Plaintiff Brown as the sole African American Courier at the Milpitas

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1  Facility.

2          59.     In 2003, Defendant gave Plaintiff Brown written, disciplinary notations

3  regarding issues for which non-Minority Couriers were not criticized, negatively affecting her

4  performance reviews and promotability. For example, Plaintiff Brown was reprimanded for

5  calling in sick and not speaking directly with a manager, whereas non-Minority employees were

6  not disciplined when they called in sick and left messages for their managers with hourly

7  employees.  Plaintiff Brown was disciplined despite the objection of her direct supervisor.

8          60.     Similarly, in July 2003, Plaintiff Brown was disciplined for a customer

9  complaint without having had an opportunity to give her account of the incident.  By contrast,

10  Defendant has not disciplined numerous non-Minority employees who have had customer

11  complaints made against them.

12          61.     Plaintiff Brown made numerous complaints to the Station Manager and to

13  human resources regarding this racially discriminatory treatment. However, Defendant did not

14  take any action regarding the complaints, apart from questioning Plaintiff Brown.

15          62.     In 1995, Defendant opened the current Santa Clara Facility and transferred

16  many of the service routes that had formerly been operated from the Milpitas Facility to the new

17  facility. In allocating the Courier routes between the two facilities, Defendant divided Plaintiff

18  Brown's route equally between the two centers. Plaintiff Brown's route was the only service route

19  that was split. All the routes for non-Minority Couriers were kept intact. In order to keep her

20  service area, Plaintiff Brown was required to transfer to the Santa Clara Facility as a part-time

21  courier, thus losing the higher full-time pay.  No non-Minority employee courier was required to

22  convert to part-time status or to give up his or her route.

23          63.     Defendant engaged in race-based discrimination by passing over Plaintiff

24  Brown in favor of more junior, less qualified non-Minority employees for various promotions and

25  higher paying positions.  In the early 1990s, Plaintiff Brown applied for several sales

26  representative positions that defendant had posted to employees.  Plaintiff Brown was not hired

27  for any of the sales representative positions despite her long service with Defendant. Instead,

28  Defendant hired numerous non-Minority recent graduates, with little or no experience, and other

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1  non-Minority employees from within the company.  With her seniority, Plaintiff Brown should

2  have been hired; the advertisements for the positions indicated that prior sales experience was not

3  a requirement since the Company would provide necessary training.

4         64.    Similarly, in 2000, Plaintiff Brown applied for two higher paying Dispatch

5  positions at the Oakland Station and the Oakland Hub. However, Plaintiff Brown did not get

6  either position. Once again, Defendant passed over her in favor of more junior, less qualified non-

7  Minority employees.

8         65.    In January 2001 and February 2002, Plaintiff Brown applied for Operations

9  Manager positions at the Santa Clara Facility and the Milpitas Facility, respectively. In each case,

10  Defendant promoted a non-African American to the position despite the fact that the non-African

11  American had significantly less seniority than Plaintiff Brown and only Courier experience.

12  Plaintiff Brown had Courier, acting Dispatcher, and Customer Service Agent experience and had

13  been with the Company since 1982.

14         66.    Plaintiff Brown is also informed and believes, and thereupon alleges, that

15  she has been compensated less than similarly situated non-Minorities.

16         B.    **Individual Claims for Work Conditions, Harassment, and Retaliation**

17         67.    While Plaintiff Brown was a Courier at the Milpitas Facility, Defendant

18  discriminated against her on the basis of race, saddling her with greater responsibilities than her

19  non-Minority colleagues and thus making it more difficult for her to perform as well as them.

20  Defendant required Plaintiff Brown to deliver packages on her route, as well as perform overflow

21  responsibilities and make additional trips to pick up freight left by other Couriers. Defendant did

22  not require Plaintiff Brown's non-Minority colleagues to perform these additional duties.

23         68.    Defendant harassed Plaintiff Brown by criticizing her in a manner that was

24  publicly embarrassing and humiliating. Instead of criticizing Plaintiff Brown in the privacy of an

25  office as they did with non-Minority employees, Defendant would stop the conveyor belt to draw

26  attention and criticize Plaintiff Brown while she was working among others on the Line.

27         69.    In July 2002, Defendant retaliated against Plaintiff Brown for filing a racial

28  discrimination complaint with the Department of Fair Employment and Housing. In response to

1    Plaintiff Brown's complaint, Defendant disciplined Plaintiff Brown more harshly than her non-

2    Minority colleagues.  Defendant disciplined Plaintiff Brown in response to a customer complaint

3    but did not discipline the non-Minority employees also mentioned in the complaint.

4            70.     In addition to the foregoing, Plaintiff Brown has experienced disparate

5    treatment on the basis of race with respect to many employment practices by Defendant.

6            71.     Plaintiff Brown filed a timely charge of discrimination with the EEOC on

7    April 16, 2003, attached hereto as Exhibit "A," which was automatically cross-filed with the

8    DFEH.  Plaintiff Brown has received Notices of Right to Sue from the EEOC and from the

9    DFEH.

10           **Rick Gonzales**

11           A.      **Class Claims**

12           72.     Plaintiff Rick Gonzales is a Latino male who was employed by Defendant

13   FedEx Express as a Courier from May 1998 until September 2002.

14           73.     Defendant has undermined Plaintiff Gonzales' attempts to attain

15   management positions, while actively supporting non-Minority candidates in their efforts to

16   secure management positions.  Defendant never discussed or provided guidance to Plaintiff

17   Gonzales about the possibility or process of entering management, although he had expressed his

18   desire to advance to management several times.  Further, Defendant did not offer him the support

19   provided non-Minority employees in preparing for management, such as training him on

20   computer systems or discussing a manager's operational responsibilities.  Defendant's

21   discriminatory management selection practices discouraged Plaintiff Gonzales from applying for

22   management positions.

23           74.     Plaintiff Gonzales observed that non-Minority employees were promoted

24   to management faster than Minority Employees, and that management steered non-Minority

25   employees into management positions.  For example, during Plaintiff Gonzales' 5-year tenure at

26   Defendant's Santa Fe Springs location, several non-Minority employees became managers, while

27   only one Minority entered management.  The Minority Employees were consistently given the

28   worst shifts, working at night with the newest employees.  Plaintiff Gonzales observed less senior

477941.1                              - 19 -                SECOND CONSOLIDATED AMENDED COMPLAINT AND
                                                            DEMAND FOR JURY TRIAL
                                                            CASE NO. C 03-2659 SI; C 03-2878 SI

1   non-Minority employees being promoted to management before him even though he was equally

2   if not more qualified for the positions that were open, but he did not observe his Minority peers

3   attain management positions.

4          75.   Defendant has further discriminated against Plaintiff Gonzales by engaging

5   in discriminatory employment practices intended to and/or having the effect of undermining

6   Plaintiff Gonzales' efforts to advance into Defendant's management ranks.  In August 2002,

7   Defendant refused to allow Plaintiff Gonzales to apply for management positions because his

8   performance review rating was 3/10 of a point below the alleged cutoff.  Plaintiff Gonzales

9   believes that Defendant manipulates such subjective criteria in order to control who may become

10  eligible for management.  However, Plaintiff Gonzales is informed and believes that Defendant

11  has permitted non-Minority employees to apply for management positions with performance

12  review scores lower than that of Plaintiff Gonzales.

13         76.   Defendant has discriminated against Plaintiff Gonzales by disciplining him

14  for infractions for which non-Minority employees were not similarly disciplined.  For example,

15  Plaintiff Gonzales has received multiple OLCC's and warning letters for infractions such as

16  incorrect calculations, packages not returned, and timecard errors.  In contrast, his non-Minority

17  peers were rarely disciplined for such conduct.

18         77.   Plaintiff Gonzales is also informed and believes, and thereupon alleges,

19  that he has been compensated less than similarly situated non-Minorities.

20         B.     **Individual Claim for Failure to Rehire from Disability**

21         78.   Defendant discriminated against Plaintiff Gonzales by failing to assisting

22  him in securing a suitable position upon return from workers compensation leave.  After Plaintiff

23  Gonzales was injured on the job for the second time with a severe lower back injury, he required

24  an extended leave.  When he prepared to return to work, Defendant displaced him from his prior

25  position and refused to identify a suitable position for him anywhere in Southern California,

26  despite Plaintiff Gonzales' 12-year tenure and his offer to accept any position available, including

27  those requiring relocation to Los Angeles or Las Vegas.  Instead, Defendant sent Plaintiff

28  Gonzales a termination letter on approximately September 13, 2002.  Defendant has routinely

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1   assisted non-Minority employees who have suffered permanent and temporary disabilities to find

2   suitable job opportunities with FedEx.

3        79.   In addition to the foregoing, Plaintiff Gonzales has experienced disparate

4   treatment on the basis of race with respect to many employment practices by Defendant.

5        80.   Plaintiff Gonzales filed a timely charge of discrimination with the EEOC

6   on April 15, 2003, attached hereto as Exhibit "B," which was automatically cross-filed with the

7   DFEH.  Plaintiff Gonzales has received Notices of Right to Sue from the EEOC and from the

8   DFEH.

9   **Cynthia Guerrero**

10   A.   **Class Claims**

11        81.   Defendant hired Plaintiff Guerrero in approximately 1995.  Plaintiff

12   Guerrero worked for Defendant in Commerce City and Santa Fe Springs, California as a

13   Customer Service Agent and as a Courier.

14        82.   Among other things, Defendant discriminated against Plaintiff Guerrero by

15   failing to promote her to positions for which she was qualified and instead promoting less senior,

16   less qualified non-Minority employees over her, and/or by paying Plaintiff Guerrero less than

17   non-Minority employees, even though Plaintiff Guerrero has comparable responsibilities and

18   more seniority and work experience.  Plaintiff Guerrero was paid at the Courier/Handler rate until

19   late 2002, even though she was performing the work of a regular Courier. The difference in pay

20   between the two positions is about $1/hour. The difference in job responsibilities is that

21   Courier/Handlers cannot exceed 8 stops per hour, while Couriers can.  Plaintiff Guerrero was

22   often doing 18 stops per hour.

23        83.   Upon beginning to perform the duties of a Courier, Plaintiff Guerrero

24   asked Defendant when she would be upgraded to Courier pay.  Defendant told Plaintiff Guerrero

25   she could not be upgraded immediately because of a hiring freeze, but that she wouldn't have to

26   wait more than a month.  In fact, Plaintiff Guerrero was not upgraded until late 2002, after she

27   filed her EEOC charge. Meanwhile, Plaintiff Guerrero's non-Minority colleagues did receive the

28   upgrade.

84.     Defendant also discriminated against Plaintiff Guerrero by reducing her work hours, thus negatively affecting her compensation, while increasing the work hours given to non-Minority employees with less seniority.

85.     Defendant further discriminated against Plaintiff Guerrero by issuing formal disciplinary actions against her for petty or trivial matters, or matters unsupported or contradicted by credible evidence.  Defendant has given Plaintiff Guerrero over 50 calendar notations for trivial matters such as failure to pull an airbill copy or forgetting to sign her time card, for which non-Minority employees are not disciplined.  In fact, Defendant routinely overlooks late arrival, no-shows, and other more significant breaches of conduct by non-Minority employees.

86.     Defendant has systematically discriminated against the employees in Plaintiff Guerrero's workgroup, called Loop 9, all of whom are Minority Employees.

87.     Plaintiff Guerrero is also informed and believes, and thereupon alleges, that she has been compensated less than similarly situated non-Minorities.

B.     **Individual Claim for Retaliation**

88.     Defendant has also retaliated against Plaintiff Guerrero for complaining about race-based discrimination.  Most recently, in July 2004, Defendant effectively terminated Plaintiff Guerrero.  When Plaintiff Guerrero sought to clarify her employment status, which she had previously been informed was "inactive" due to long-term disability leave, Plaintiff Guerrero was informed that her employment was instead terminated due to her failure to find an alternative position with Defendant after she had been displaced.

89.     In addition to the foregoing, Plaintiff Guerrero has experienced disparate treatment on the basis of race with respect to many employment practices by Defendant.

90.     Plaintiff Guerrero filed timely charges of discrimination with the EEOC on June 13, 2002 and June 18, 2003, attached hereto as Exhibit "C," which were automatically cross-filed with the DFEH.  Plaintiff Guerrero has received Notices of Right to Sue from the EEOC and from the DFEH.

**Rachel Hutchins**

A.    **Class Claims**

91.    Plaintiff Rachel Hutchins is an African American woman formerly employed by Defendant as a Handler in Bakersfield, California.  Plaintiff worked for Defendant from December 1995 through April 1996, and again from March 2001 through January 2004.

92.    Defendant hired and/or promoted less senior, less experienced non-Minority individuals to permanent or full-time positions, whereas Plaintiff Hutchins remained a casual Handler during her more than two and a half years with Defendant.

93.    Defendant passed over Plaintiff in favor of less or equally qualified non-Minority individuals in filling positions for which Plaintiff applied.  Starting in approximately October 2002, Plaintiff Hutchins sought a position as a Customer Service Agent (CSA).  From approximately May or June 2002 to April 2003, Plaintiff Hutchins performed the duties of a Customer Service Agent, without a commensurate change in title or salary.  Although Customer Service Agent positions became available, Defendant did not place Plaintiff Hutchins in these positions.

94.    Plaintiff Hutchins complained several times to Defendant about its failure to promote her to a Customer Service Agent position.  Defendant offered various excuses for this failure, including that Plaintiff Hutchins could not be promoted from Casual status.  However, Defendant promoted non-Minority employees to permanent Customer Service Agent and Courier positions from Casual status.  In one such instance, two Customer Service Agent positions became available in approximately November 2002, and Defendant informed Plaintiff Hutchins that she would receive one of the positions.  Instead, however, Defendant placed in one of the positions a non-Minority employee who had no experience as a Customer Service Agent, whom Plaintiff Hutchins herself had trained, and who had quit her job a few weeks previously.

95.    In April 2003, Defendant informed Plaintiff Hutchins that she would receive the next Customer Service Agent position that opened, without being required to apply.  From approximately May 2003, a Customer Service Agent position was available.  Although Plaintiff was qualified, Defendant still did not place Plaintiff Hutchins in a Customer Service

1    Agent position.

2         96.    Defendant has discriminated against Plaintiff Hutchins with respect to

3    compensation by paying her as a Handler, while requiring her to perform the duties of a Customer

4    Service Agent. Defendant refused to offer Plaintiff Hutchins a Customer Service Agent position,

5    or to change her title or compensation to reflect her additional duties.

6         97.    Defendant also discriminated against Plaintiff Hutchins with respect to

7    compensation by failing to pay her correctly for hours worked on Saturday over an approximately

8    two month period. Plaintiff Hutchins was informed and believes that according to FedEx policy,

9    temporary and casual employees are to be paid at the rate of one and a half times their hourly rate

10    for work performed on Saturday. Plaintiff is informed and believes, and on that basis alleges, that

11    non-Minority employees have been paid at the higher rate for such hours. Defendant has further

12    discriminated against Plaintiff Hutchins with respect to compensation by allowing her to work

13    fewer hours than similarly situated non-Minority employees, and by relegating her to casual

14    status.

15         98.    Plaintiff Hutchins is also informed and believes, and thereupon alleges, that

16    she has been compensated less than similarly situated non-Minorities.

17         B.    **Individual Claims for Termination and Retaliation**

18         99.    Defendant retaliated against Plaintiff Hutchins for filing a charge of

19    discrimination with the EEOC and for participating in this lawsuit by wrongfully terminating

20    Plaintiff Hutchins on January 20, 2004.

21         100.    In addition to the foregoing, Plaintiff Hutchins has experienced disparate

22    treatment on the basis of race with respect to many employment practices by Defendant.

23         101.    Plaintiff Hutchins filed a timely charge of discrimination with the EEOC

24    on May 27, 2003, attached hereto as Exhibit "D," which was automatically cross-filed with the

25    DFEH. Plaintiff Hutchins has received Notices of Right to Sue from the EEOC and from the

26    DFEH. Plaintiff Hutchins supplemented this charge with a retaliation claim on August 16, 2004

27    and has requested a Notice of Right to Sue.

28

1

**Tyrone Merritt**

2

A.      **Class Claims**

3       102.    Plaintiff Tyrone Merritt is an African American male employed by FedEx

4   Express since September 1998.  Plaintiff Merritt worked in FedEx Express's Phoenix, Arizona

5   facility from the fall of 2001 through the summer of 2005.  During that time, Plaintiff Merritt

6   worked as a permanent part-time Handler.

7       103.    During his tenure as a Handler in Phoenix, Plaintiff Merritt was passed

8   over for numerous promotions, including promotions to the position of Courier.  Plaintiff Merritt

9   was not able to apply for a Courier promotion because he failed the Basic Skills Test ("BST") in

10  February 2003 and again in May 2005.  The BST is a requirement for promotion to Courier

11  positions even though it has tremendous adverse impact and has not been validated.

12      104.    Plaintiff Merritt has also been passed over for promotions to other

13  positions, including positions as a Dispatcher, Material Handler, Ramp Agent, and Team Leader,

14  all of which were given to similarly situated white employees.  Plaintiff Merritt was also passed

15  over for two Dangerous Goods Specialist positions, which were both filled by white applicants

16  with less seniority than Plaintiff Merritt.

17      105.    Plaintiff Merritt has also been subjected to harsher discipline than similarly

18  situated white employees.  For example, in approximately February 2004, Plaintiff Merritt was

19  reprimanded by his manager for a "drop can" violation because a can containing packages fell

20  from his dolly.  Plaintiff Merritt is aware of two white employees who dropped cans from their

21  dollies, but received no reprimands.

22      106.    Plaintiff Merritt has also been denied fair compensation because of FedEx

23  Express' racially biased policies and practices.

24      B.      **Individual Claim for Denial of Leave Without Pay**

25      107.    Plaintiff Merritt was denied leave without pay ("LWOP") in mid-2004,

26  while similarly situated white employees were permitted to take LWOP.

27      108.    In addition to the foregoing, Plaintiff Merritt has experienced disparate

28  treatment on the basis of race with respect to many employment practices by Defendant.

477941.1                              - 25 -

109.    Plaintiff Merritt filed a timely charge of discrimination with the EEOC on December 2, 2004, and a supplemental charge on July 1, 2005, both attached hereto as Exhibit "E." Plaintiff Merritt has requested a Notice of Right to Sue from the EEOC.

**Kelvin Smith, Sr.**

A.    **Class Claims**

110.    Defendant hired Plaintiff Smith in approximately November 1989 as a part-time Courier at the Santa Clara Facility.

111.    From April 2002 through July 2002, Plaintiff Smith acted as Operations Manager for PM Sort Operations at his Facility. His duties included closing down the facility, covering sick calls, enlisting Couriers to help loading, assuring that freight got on shuttles in time, guiding the movement of trucks within the Facility, and coordinating the activities of Handlers, Loaders and Dispatchers. The only management function that Plaintiff Smith did not perform was providing performance reviews. Repeatedly, Plaintiff Smith requested that Defendant permit him to complete the management training program and enable him to promote to open Operations Manager positions. Defendant failed to assist Plaintiff Smith.

112.    Defendant undermined Plaintiff Smith's efforts to obtain management training while actively supporting non-Minority candidates in their efforts to secure management training. Plaintiff Smith participated in the ASPIRE management training program, successfully completed the program's required tests and assessments, and not only met but exceeded the performance review requirements. However, Defendant failed to allow Plaintiff Smith to complete the final part of the program, a peer assessment that had to be scheduled by management. From April 2002 through July 2002, Plaintiff Smith's managers ignored his repeated requests to complete the peer review section. By contrast, Defendant consistently assisted less senior and less experienced non-Minority ASPIRE participants in completing the program, thereby permitting them to apply for management positions for which Plaintiff Smith remained ineligible because of Defendant's failures.

113.    Defendant discriminated against Plaintiff Smith by paying him less than less senior and/or similarly situated non-Minority employees. Defendant paid Plaintiff Smith less

1  than less experienced non-Minority Lead Handlers, even when Plaintiff Smith was required to

2  perform management duties for the PM operations.

3          114.  Defendant provided inferior training to Plaintiff Smith compared with

4  similarly situated non-Minority employees.  While Plaintiff Smith was acting as an Operations

5  Manager from April 2002 to July 2002, Defendant failed to provide Plaintiff Smith with the level

6  of training provided to Plaintiff Smith's non-Minority peers with respect to particular operational

7  indices in Plaintiff Smith's facility.

8          115.  Defendant discriminated against Plaintiff Smith by disciplining him for

9  infractions for which non-Minority employees were not similarly disciplined.  In February 2002,

10  Defendant issued Plaintiff Smith his first warning letter for administering a makeshift procedure

11  to assure that the Facility would meet performance objectives.  Plaintiff Smith was also

12  suspended for a week.  Plaintiff Smith had performed the procedure only upon directives from his

13  non-Minority Manager and Station Manager.  However, Defendant did not discipline, either

14  verbally or with warning letters, the two non-Minority managers responsible for implementing the

15  Astra Sops procedure.  African American Plaintiff Satchell was the only other person disciplined

16  in the matter.  Similarly, Defendant has not disciplined non-Minority employees for actions taken

17  as a result of management directives.

18          116.  In May 2002, Plaintiff Smith was again unfairly disciplined when a delay

19  caused freight to arrive late at the ramp.  The non-Minority manager responsible for the delay was

20  not disciplined.

21          117.  Plaintiff Smith is also informed and believes, and thereupon alleges, that he

22  has been compensated less than similarly situated non-Minorities.

23          **B.**      **Individual Claims for Termination and Retaliation**

24          118.  In July 2002, in retaliation for Plaintiff Smith's filing of a complaint with

25  the Department of Fair Employment and Housing for racial discrimination and harassment,

26  Defendant wrongfully terminated Plaintiff Smith for a trivial time card oversight that had no

27  practical impact on Plaintiff Smith's wages and that was identified on the same day before any

28  processing.  Defendant routinely allows non-Minority employees or managers to correct

477941.1          - 27 -      

1   identified mistakes on timecards.

2         119.   In this particular case, Plaintiff Smith failed to clock an authorized ten-

3   minute break to collect his children from daycare.  Plaintiff Smith's Station Manger, upon seeing

4   Plaintiff Smith with his children, took it upon herself to instruct Plaintiff Smith's manager to

5   check his timecard to see if Plaintiff Smith had clocked his break.  The Station Manager did not

6   permit Plaintiff Smith to correct the mistake, even though non-Minority employees routinely

7   correct mistakes on time cards.  Non-Minority Employees also routinely take breaks without

8   indicating them by time codes on their time cards.  Defendant does not strictly police every

9   movement of non-Minority employees, nor do Station Managers concern themselves with such

10  employee matters that are more properly handled by an Operations Manager.  Finally, Defendant

11  is liberal in accommodating childcare concerns of non-Minority employees, especially when such

12  accommodation has, as in the case of Plaintiff Smith, no material impact on the employee's job

13  performance.

14        120.   In August 2002, Defendant refused to rehire Plaintiff Smith to his position

15  as Lead Handler when it upheld its discriminatory discipline and wrongful termination actions

16  against him.  Plaintiff Smith had filed an internal discrimination complaint, as well as a

17  Guaranteed Fair Treatment ("GFT") request in connection with his discriminatory discipline and

18  wrongful termination claims dating from February 2002 through Plaintiff Smith's termination in

19  July 2002.  As part of his appeal, Plaintiff Smith submitted facts supporting his claims of

20  differential treatment and discrimination at the hands of Defendant.  Defendant has overturned

21  unfair actions and rehired non-Minority employees upon the basis of much less credible

22  information than that provided by Plaintiff Smith.

23        121.   In addition to the foregoing, Plaintiff Smith has experienced disparate

24  treatment on the basis of race with respect to many employment practices by Defendant.

25        122.   Plaintiff Smith filed a timely charge of discrimination with the EEOC on

26  June 24, 2003, which was automatically cross-filed with the DFEH, and filed a separate timely

27  charge with the DFEH on July 22, 2002. These charges are attached hereto as Exhibit "F."

28  Plaintiff Smith has received Notices of Right to Sue from the EEOC and from the DFEH.

1    **Ken Stevenson**

2         A.    **Class Claims**

3         123.    Plaintiff Stevenson is an African American male currently employed by

4    Defendant as an Operations Manager in Compton, California.  Plaintiff Stevenson began working

5    for Defendant in approximately May 1997 as a casual, part-time Courier.

6         124.    Defendant consistently undermined Plaintiff Stevenson's efforts to attain

7    management positions, while actively supporting non-Minority employees in their attempts to

8    enter management.  Prior to his promotion to Operations Manager in 2005, Plaintiff Stevenson

9    had sought to apply for promotion more than ten times, without success.  Rather than respond to

10   Plaintiff Stevenson's multiple efforts to secure a management position, Defendant   offered

11   baseless excuses for its failure to promote him.  For example, Senior Manager Mike Smith told

12   Plaintiff Stevenson that he must complete management classes, but when Plaintiff indicated his

13   willingness to begin management classes, Smith postponed the classes, and then only held them

14   intermittently.  On other occasions, Defendant told Plaintiff Stevenson there was a "hiring

15   freeze."  Meanwhile, Defendant promoted other less senior non-Minority employees over

16   Plaintiff Stevenson, such as Tim Becker and Mike Aroz, notwithstanding the fact that Plaintiff

17   Stevenson received a higher management assessment.

18        125.    Defendant also required Plaintiff Stevenson to attend management classes

19   on his own time, while non-Minority employees, such as Becker and Aroz, were allowed to

20   attend them during work time.

21        126.    Smith further told Plaintiff Stevenson that he would never be a manager as

22   long as Smith worked at the facility.  Plaintiff Stevenson's co-workers told him they have heard

23   similar comments from Smith and others about Plaintiff Stevenson.

24        127.    Defendant has discriminated against Plaintiff Stevenson by disciplining

25   him for infractions for which non-Minority employees were not similarly disciplined.  For

26   example, Defendant has disciplined Plaintiff Stevenson for failing to tuck in his shirt, but

27   Defendant refuses to purchase shirts big enough for Plaintiff Stevenson.  Defendant has further

28   used such petty infractions as barriers to Plaintiff Stevenson's promotion into management.  For

1    example, on May 8, 2003, Defendant informed Plaintiff Stevenson that he could not apply for a

2    vacant manager position because his socks were too short.  When Plaintiff Stevenson pointed out

3    that Mike Aroz, a non-Minority employee, wore his socks in an identical fashion, Defendant

4    simply instructed Aroz to change his socks, but did not prevent him from applying for the

5    manager position.  Aroz became a manager approximately two weeks later.

6            128.    Plaintiff Stevenson is also informed and believes, and thereupon alleges,

7    that he has been compensated less than similarly situated non-Minorities.

8                    **B.    <u>Individual Claim for Harassment</u>**

9            129.    Defendant has used, or permitted others to use, offensive racial epithets in

10   Plaintiff Stevenson's workplace.  For example, when Plaintiff Stevenson's car was stolen,

11   Operations Manager Shelley Humphrey stated, "You people drive those kind of cars."  When

12   Plaintiff Stevenson reported the comment to his supervisor, Roger Fleud, Fleud said, "We all

13   have a little racism in us."  When Plaintiff Stevenson filed an internal EEO complaint about these

14   comments, Defendant retaliated against him by further blocking him from being promoted to

15   management.

16           130.    In addition to the foregoing, Plaintiff Stevenson has experienced disparate

17   treatment on the basis of race with respect to many employment practices by Defendant.

18           131.    Plaintiff Stevenson filed a timely charge of discrimination with the EEOC

19   on June 13, 2002, attached hereto as Exhibit "G," which was automatically cross-filed with the

20   DFEH**.**  Plaintiff Stevenson has received Notices of Right to Sue from the EEOC and from the

21   DFEH.

22   **II.    <u>AFRICAN AMERICAN LOWER-LEVEL MANAGER CLASS</u>**

23           **<u>Derrick Satchell</u>**

24           **A.    <u>Class Claims</u>**

25           132.    Plaintiff Satchell was hired by Defendant FedEx Express in approximately

26   June 1992 as a part-time Handler at Defendant's Facility in Santa Clara, California.  Despite

27   repeated requests by Plaintiff Satchell for full-time employment, Defendant hired and/or

28   promoted less senior, less experienced non-Minority individuals to Courier and other full-time

1   positions before Defendant gave Plaintiff Satchell a full-time position.

2          133.   Once Plaintiff Satchell finally obtained a position as an Operations

3   Manager, Defendant also consistently issued formal disciplinary actions against Plaintiff Satchell

4   for petty or trivial matters for which non-Minority employees were not disciplined, thus lowering

5   Plaintiff Satchell's performance reviews and rendering him ineligible for promotion.

6          134.   Defendant discriminated against Plaintiff Satchell by paying him less than

7   less senior and/or similarly situated non-Minority employees.  Throughout Plaintiff Satchell's

8   employment with FedEx, Defendant paid Plaintiff Satchell less than non-Minority managers even

9   though Plaintiff Satchell had comparable responsibilities and more seniority and management

10  experience.

11         135.   In approximately December 1999, when Plaintiff Satchell was a Courier

12  Operations Manager, Plaintiff Satchell received his first warning letter for excessive late

13  deliveries by Couriers on Mondays.  Defendant disciplined Plaintiff Satchell despite the fact that

14  the problem dated back to a prior Operations Manager's tenure and that the late deliveries were

15  occurring only on Plaintiff Satchell's scheduled day off.  Defendant has not reprimanded non-

16  Minority managers, much less given warning letters, where the non-Minorities were not directly

17  responsible for the infraction.  In addition, Defendant had not disciplined the non-Minority

18  manager who supervised the workgroup prior to Plaintiff Satchell.

19         136.   In approximately August 2001, Defendant disciplined Plaintiff Satchell for

20  insubordination for failure to submit, in a timely manner, an action plan for correcting a

21  deficiency in his operations.  Plaintiff Satchell failed to submit the action plan on time because

22  Defendant had not properly notified Plaintiff Satchell of his need to submit the Plan.  Plaintiff

23  Satchell was required to work through the night to prepare the plan and submitted it a day late.

24  Defendant disciplined Plaintiff Satchell even though he had proof that other non-Minority

25  managers were also failing in the cited area, but were not required to submit similar Action Plans

26  and were not otherwise disciplined.

27         137.   Defendant disciplined Plaintiff Satchell again in November 2001 in

28  connection with his performance review.  Defendant gave Plaintiff Satchell a warning letter after

- 31 -          SECOND CONSOLIDATED AMENDED COMPLAINT AND
                                                              DEMAND FOR JURY TRIAL
                                                     CASE NO. C 03-2659 SI; C 03-2878 SI

1    rating his performance as 1.0 in one area of the review due to Plaintiff Satchell's group's failure

2    to improve in that area. Plaintiff Satchell's Senior Manager, Christopher Matthews, refused to

3    alter the low rating when Plaintiff Satchell produced emails from Matthews commending Plaintiff

4    Satchell's group for improvement in the area in question, and stating "excellent job; now you

5    only need to maintain it." Defendant's personnel policy states that disciplinary letters should not

6    be issued where only one or two areas of a review are deficient; a warning letter is warranted only

7    if an entire performance review is 1.0 or below. Defendant does not issue warning letters to non-

8    Minority managers regarding performance reviews unless the entire review is unsatisfactory.

9    Further, Defendant does not issue warning letters to non-Minorities who provide evidence

10   contradicting an allegation of unsatisfactory performance.

11            138.    On December 1, 2001, Plaintiff Satchell met with District Director Steven

12   Seymour regarding the warning letter. Seymour assured Plaintiff Satchell that the letter would

13   not be entered in the system. Based on Seymour's assurance, Plaintiff Satchell did not purse the

14   Guaranteed Fair Treatment ("GFT") process further. When Defendant terminated Plaintiff

15   Satchell's employment in April 2002 for three active, documented disciplinary actions, the

16   warning letter in question was counted toward the three.

17            139.    In November 2001, Defendant gave Plaintiff Satchell an OLCC because he

18   had failed to cancel excess minimum hour pay for Couriers in his group who had not actually

19   worked the minimum number of hours. At the time, Plaintiff Satchell informed Defendant that

20   canceling the minimum without a waiver would violate policy. In December 2001, Seymour and

21   Matthews informed managers at the Santa Clara Facility that they wanted excess minimum hours

22   cancelled regardless of waivers. Again, Plaintiff Satchell objected, citing policy, but cancelled

23   the hours anyway. Plaintiff Satchell was issued a warning letter, however, because he

24   inadvertently failed to cancel the excess minimum hours of a few couriers. Whereas Defendant

25   issued Plaintiff Satchell a warning letter for his inadvertent failure to cancel payment for excess

26   minimum hours, Defendant refused to issue warning letters to non-Minority managers, such as

27   Paul Birkenbach, who also failed a second time to cancel excess minimum hours.

28            140.    Plaintiff Satchell is also informed and believes, and thereupon alleges, that

477941.1                                    - 32 -            SECOND CONSOLIDATED AMENDED COMPLAINT AND
                                                                      DEMAND FOR JURY TRIAL
                                                              CASE NO. C 03-2659 SI; C 03-2878 SI

1    he has been compensated less than similarly situated non-Minorities.

2        B.    **Individual Claims for Failure to Promote, Termination, and Retaliation**

3

4        141.    Defendant undermined Plaintiff Satchell's efforts to advance within

5    management, while actively supporting his non-Minority peer managers in their efforts to

6    advance within management.  Defendant discriminated against Plaintiff Satchell by failing to

7    advance or promote Plaintiff Satchell from a Level 25 to Level 26 Operations Manager during his

8    employment with the Company.  Plaintiff had satisfied all the requirements for a Level 26

9    promotion, including having been in a Level 25 manager position for over 18 months and having

10   received successive performance reviews in excess of 3.0.  By contrast, Defendant promoted

11   numerous non-Minority Operations Managers to Level 26 who joined management after Plaintiff

12   Satchell and had received equal or lower performance reviews.

13       142.    Defendant excluded Plaintiff Satchell from "informal" email buddy lists

14   used by Regional, District and Station Managers to communicate relevant operating procedures

15   and corporate advancement opportunities and to informally discuss managerial issues.

16       143.    Defendant provided inferior training to Plaintiff Satchell compared with

17   similarly situated non-Minority employees, adversely affecting his ability to obtain a promotion.

18   Defendant failed to provide Plaintiff Satchell with the level of training provided to Plaintiff

19   Satchell's non-Minority peer managers with respect to particular operational indices in Plaintiff

20   Satchell's facility.  Defendant also failed to sufficiently staff Plaintiff Satchell's workgroup so

21   that objectives could be met in accordance with Defendant's expectations.  By contrast,

22   Defendant provided Plaintiff Satchell's non-Minority peer managers with proper staffing or

23   assigned employees from other workgroups to assist the workgroups of non-Minority employees.

24       144.    Defendant discriminated against Plaintiff Satchell by terminating Plaintiff

25   for conduct for which non-Minority employees were not similarly terminated.  In March 2002,

26   Defendant had an interim manager issue Plaintiff Satchell a third documented disciplinary action

27   within a 12-month period, and immediately terminated his employment.  Defendant disciplined

28   and terminated Plaintiff Satchell for time card falsification.  The time card "falsification" forming

1   the basis for the termination was Plaintiff Satchell's cancellation of employee minimum hours in

2   December 2001 that Plaintiff Satchell performed upon directives from Matthews and Seymour.

3   Plaintiff Satchell had objected to canceling the minimum hours without an employee waiver.

4         145.    On August 28, 2002, Defendant refused to rehire Plaintiff Satchell as an

5   Operations Manager after an Appeals Board in Memphis, Tennessee refused to overturn its

6   discriminatory discipline and wrongful termination actions.  In April 2002, Plaintiff Satchell had

7   filed an internal discrimination complaint, as well as a GFT request in connection with his

8   discriminatory discipline, promotion, compensation, and wrongful termination claims dating from

9   August 2001 through Plaintiff Satchell's termination.  As part of his appeal, Plaintiff Satchell

10  submitted facts supporting his claims of differential treatment and discrimination by Defendant.

11  Defendant has rehired and overturned unfair actions against non-Minority employees upon the

12  basis of much less credible information than that provided by Plaintiff Satchell.

13        146.    Defendant retaliated against Plaintiff Satchell for complaining of

14  discrimination.  After Defendant terminated Plaintiff Satchell's employment in April 2002,

15  Plaintiff filed a race discrimination and wrongful termination complaint against Defendant with

16  the California Department of Fair Employment and Housing.  In December 2002, Plaintiff

17  Satchell filed a civil complaint for race discrimination in Superior Court.  In response to Plaintiff

18  Satchell's complaints, Defendant has engaged in a pattern of making defamatory statements

19  against Plaintiff Satchell to employers seeking to hire Plaintiff Satchell.  As a result of

20  Defendant's defamatory statements, Plaintiff Satchell had great difficulty in securing employment

21  after his termination by Defendant.  On numerous occasions, prospective employers successfully

22  completed several rounds of interviews with Plaintiff Satchell, commended Plaintiff Satchell on

23  his presentation and employment record, indicated satisfaction with his references, and provided

24  Plaintiff Satchell with strong indication of their interest in employing him.  However, upon

25  speaking with or receiving letters from Defendant regarding Plaintiff Satchell, the employers

26  declined to hire Plaintiff Satchell.  In June 2002, Airborne Express declined to hire Plaintiff

27  Satchell after Defendant defamed Plaintiff Satchell in retaliation for filing a complaint.  Yellow

28  Transportation similarly declined to hire Plaintiff Satchell after Defendant's retaliatory actions.

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1    Further, after speaking with Defendant in December 2002, Coca-Cola Company refused to hire

2    Plaintiff Satchell after 6 successful interviews from August 2002 to December 2002.

3            147.    In addition to the foregoing, Plaintiff Satchell has experienced disparate

4    treatment on the basis of race with respect to many employment practices by Defendant.

5            148.    Plaintiff Satchell filed a timely charge of discrimination with the EEOC on

6    May 6, 2003, attached hereto as Exhibit "H," which was automatically cross-filed with the

7    DFEH.  Plaintiff Satchell has received Notices of Right to Sue from the EEOC and the DFEH.

8            **Kalini Boykin**

9            A.    **Class Claims**

10            149.    Plaintiff Boykin was hired by Defendant in approximately May 1995 as a

11    casual, part-time Handler at the Oakland Hub. Despite repeated requests for available permanent

12    and full-time positions, Defendant hired and/or promoted many less senior non-Minority

13    individuals to permanent positions before Defendant gave Plaintiff Boykin a permanent position.

14    For example, in approximately June 1997, Plaintiff Boykin applied for the full-time position of

15    Control Room Agent at the Oakland Hub; however, Defendant passed her over in favor of a

16    subsequently hired and less experienced, non-African American.

17            150.    Plaintiff Boykin also interviewed for numerous other full-time positions

18    before she was finally promoted to a full-time Truck Control Agent position in January 1998.

19    Other non-Minority employees with similar qualifications and experience were promoted to this

20    position sooner than Plaintiff Boykin.

21            151.    Plaintiff Boykin also was rarely permitted to earn overtime hours, while

22    non-Minority employees were permitted to work overtime when necessary, earning wages at the

23    higher overtime rate.

24            152.    In 1999, Plaintiff Boykin was promoted to an RTD Driver position after

25    several unsuccessful attempts to obtain the promotion despite being qualified. As in her previous

26    positions, Plaintiff Boykin excelled as an RTD Driver. She received a consistent 7.0 out of 7.0 on

27    her performance reviews. Plaintiff Boykin also excelled in Defendant's ASPIRE management

28    training program. On each of the three program assessments, (i) the Quantitative Assessment, (ii)

477941.1                            - 35 -

1    the Psychological Assessment, and the (iii) Peer Assessment, Plaintiff Boykin scored the highest

2    possible grade, 5 on a scale of 5.

3    153.    In May 2000, Plaintiff Boykin applied for one of two Operations Manager

4    positions at the San Leandro Facility. Despite Plaintiff Boykin's superior qualifications and the

5    strong recommendation of her manager, Defendant, including specifically Senior Manager Robert

6    Montez and Regional Vice President Michael Pigors, passed over Plaintiff Boykin in favor of two

7    less experienced and less qualified non-Minority applicants, Carl Bowersmith and Mark Azevedo.

8    154.    Because of Plaintiff Boykin's superior qualifications, Defendant

9    improperly conducted the interviews so as to minimize the advantages that Plaintiff Boykin

10   possessed over the two non-Minority applicants. Contrary to Defendant's policy, Defendant

11   conducted the interviews at separate locations and with separate panels.

12   155.    In response to the discriminatory hiring procedures, Plaintiff Boykin filed a

13   GFT.  After an investigation, Defendant was directed to conduct the interviews again, and

14   interviews were scheduled for the following week at another facility before the same panel.

15   156.    At the second interview, Defendant once again selected Bowersmith and

16   Azevedo for the two Operations Manager positions. Defendant was unable to explain why

17   Bowersmith and Azevedo were more qualified than Plaintiff Boykin when she raised the issue

18   with manager Montez.

19   157.    After being passed over a second time, Plaintiff Boykin filed another GFT

20   request together with an EEO discrimination complaint. Defendant failed to properly investigate

21   Plaintiff Boykin's discrimination complaint. Even though Defendant scheduled an arbitration to

22   explore Plaintiff Boykin's allegations, they failed to follow up or report any findings to Plaintiff

23   Boykin.  Moreover, no one ever contacted Plaintiff Boykin from Employee Relations at

24   Defendant's Memphis headquarters to discuss the complaint with Plaintiff Boykin. In fact,

25   Plaintiff Boykin never received a response to her EEO complaint even though she has never

26   withdrawn it.

27   158.    Plaintiff Boykin is informed and believes, and thereupon alleges, that she

28   has been compensated less than similarly situated non-Minorities.  Even after Plaintiff Boykin

1   ultimately was made a manager after several attempts, Defendant continued to discriminate

2   against her on the basis of race. While Defendant paid Carl Bowersmith a salary in the first

3   quartile for managers in their grade (Level 25), Plaintiff Boykin was paid at the lowest rate in

4   Level 25. Plaintiff was paid at a lower rate despite being assigned greater management

5   responsibilities than the two non-Minority managers. Upon becoming a manager, Plaintiff Boykin

6   assumed all the responsibilities of the manager who had stepped down and more. She was

7   responsible for the PM operations for RTD drivers in the entire South Bay and mid-Peninsula

8   service area, which includes both San Francisco stations, the South San Francisco Facility, Palo

9   Alto, the San Jose Facility, the Santa Clara Facility, the Sunnyvale Facility, the Oakland Hub, and

10  the San Jose and San Francisco Ramps. The operations for which she was responsible lasted from

11  3:00 PM to midnight. Plaintiff Boykin was responsible for over 100 routes daily and 24

12  employees.

13          159.    By contrast, Bowersmith was given a relatively easy management

14  assignment. Bowersmith was made responsible for the Weekend Operation, a 20-hour operation

15  on Saturdays and Sundays. The Weekend Operation involves nine employees, all moving freight

16  from the San Leandro Facility to the Oakland Hub.

17          160.    Defendant also discriminated against Plaintiff Boykin by failing to provide

18  management support to Plaintiff Boykin, making it more difficult for her to perform her job

19  duties. Montez spent little time with Plaintiff Boykin, instead focusing his attention on assisting

20  Bowersmith to develop as a manager.

21          161.    Despite her lack of support from Defendant, Plaintiff Boykin excelled in

22  her management responsibilities. In her first year as a manager, Plaintiff Boykin turned the

23  extremely uncooperative workgroup that she inherited from Mike Kelly, the previous non-

24  Minority manager, into a highly productive group. In that first year, Plaintiff Boykin received a

25  Survey Feedback Score ("SFA") of 97 from her group, and a SFA score of 94 in the second year.[3]

26  Moreover, Plaintiff Boykin received a leadership average of 4.9 in her first year and one of 4.7 in

27  ─────────────────

28  [3] A SFA is an hourly employee's review of his or her manager. SFA are considered in determining a manager's
    promotability and performance reviews.

477941.1                                    - 37 -

1   her second year. Plaintiff Boykin also received a commendation from the Senior Vice President

2   for her management abilities.

3   162.   Nevertheless, Defendant took additional steps to undermine her

4   advancement in Defendant's management ranks. Montez refused to timely perform Plaintiff

5   Boykin's performance reviews, which are essential to pay rate and grade level increases. Plaintiff

6   Boykin was scheduled for a 3-month performance review prior to taking a maternity leave.

7   Though Montez timely performed the performance reviews for Bowersmith, he delayed Plaintiff

8   Boykin's review until she returned from her maternity leave. At that time, he gave Plaintiff

9   Boykin a three-month review and the two non-Minority managers six-month reviews.

10   163.   Montez also discriminated against Plaintiff Boykin by providing her with

11   an unreasonably low review of 2.8. Defendant initially attempted to give Plaintiff Boykin a rating

12   of 2.5, but Plaintiff Boykin rebutted each and every basis for Montez's grading. Defendant rated

13   Plaintiff Boykin below 3.0, despite her exemplary performance as reflected in her SFA scores, in

14   order to preclude her from receiving any pay or grade level increases. By contrast, the two non-

15   Minority managers were given higher scores and pay increases. Defendant has routinely delayed

16   Plaintiff Boykin's pay and grade level increases, requiring her to take extra measures in order to

17   receive the same benefits as the two non-Minority managers.

18   164.   In March 2001, Defendant continued its discrimination against Plaintiff

19   Boykin by disciplining her for a trivial matter for which it has routinely refused to discipline non-

20   Minority employees. Montez informed Plaintiff Boykin that she had failed to provide for an ad

21   hoc, unscheduled pick-up for an institutional customer. As a result of attempting to assure that the

22   Sacramento route was covered in light of Defendant's failure to provide her with sufficient RTD

23   Drivers, Plaintiff Boykin had inadvertently missed the order. However, the AM Operations

24   Manager with Plaintiff Boykin's responsibilities, had the order picked up the next morning. Since

25   the package was an economy order, there was no failure by Defendant to meet its delivery

26   deadlines.

27   165.   As a result of the missed pick up, Montez threatened to give Plaintiff

28   Boykin a written warning letter. Defendant's standard disciplinary practice is to provide written

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1    warning letters only after an employee has committed previous acts deserving discipline.

2    Defendant has not provided documented counseling to non-Minority managers or employees

3    upon their first offense. In response to Plaintiff Boykin's pleas for fairness, Montez indicated that

4    he would give Plaintiff Boykin only a verbal warning if she would prepare a corrective action

5    plan to address the oversight.

6          166.    Plaintiff Boykin submitted the action plans as requested and was informed

7    by District Manager Robin VanGalder and Montez that it was insufficient. Defendant insisted on

8    giving Plaintiff Boykin a documented counseling despite earlier assurances that she would only

9    get a verbal warning. Furthermore, VanGalder and Montez informed Plaintiff Boykin that she had

10   been guilty of "gross leadership failure" and that she was a bad manager. Non-Minority managers

11   have frequently failed to have packages picked up on time yet have not been disciplined, much

12   less given OLCCs or written warnings or accused of "gross leadership failure."

13          B.    **Individual Claims for Working Conditions and Retaliation**

14          167.    Defendant assigned more burdensome job duties and shifts to Plaintiff

15   Boykin than to non-Minority employees, thus making it more difficult for her to perform as well

16   as her non-Minority peers. While a part-time Handler, Defendant discriminated against Plaintiff

17   Boykin on the basis of race by routinely assigning her to work on the busiest conveyor belts, or

18   "slides" as they are called at the Oakland Hub, where thousands of packages are processed. By

19   contrast, many stronger non-Minority employees were permitted to work on less taxing slides

20   where packages numbered in the hundreds, not thousands.

21          168.    In November 2003, after Plaintiff Boykin had filed her charge with the

22   EEOC, Defendant retaliated against Plaintiff Boykin by changing her schedule from her regular

23   time of 1:30 PM to 10:30 PM to a more undesirable shift, 1:00 AM to 10:00 AM. Defendant did

24   not adversely change the hours of the non-Minority Operations Managers with the same seniority

25   as Plaintiff Boykin.

26          169.    Defendant has further retaliated against Plaintiff Boykin for complaining

27   about race-based discrimination, for filing a charge with the EEOC, and for participating in this

28   lawsuit, by suspending her without cause and failing to offer her a suitable position after a

1    medical leave of absence.

2           170.    In addition to the foregoing, Plaintiff Boykin has experienced disparate

3    treatment on the basis of race with respect to many employment practices by Defendant.

4           171.    Plaintiff Boykin filed a timely charge of discrimination with the EEOC on

5    May 6, 2003, and filed a timely charge with the DFEH in July 31, 2002, attached hereto as

6    Exhibit "I." Plaintiff Boykin has received Notices of Right to Sue from the EEOC and from the

7    DFEH. Plaintiff Boykin supplemented this charge with a retaliation claim dated October 10,

8    2005 and has requested a Notice of Right to Sue.

9
                        **FIRST CLAIM FOR RELIEF**
10              **VIOLATION OF TITLE VII—CLASS CLAIMS**

11          172.    This claim is brought on behalf of all Plaintiffs and the class of Minority

12   Employees and the class of African American Lower-Level Managers.

13          173.    The class period for the Minority Employee Class for this Claim for Relief

14   is from June 20, 2002 through the date of judgment. The class period for the African American

15   Lower-Level Manager Class for this Claim for Relief is from July 10, 2002 through the date of

16   judgment.

17          174.    Plaintiffs Satchell, Boykin, Brown, Gonzales, Guerrero, Hutchins, Merritt,

18   Smith and Stevenson filed timely charges of discrimination with the Equal Employment

19   Opportunity Commission, received right to sue letters[4], and timely filed the instant claim.

20          175.    The foregoing conduct violates Title VII of the Civil Rights Act of 1964,

21   42 U.S.C. §§ 2000(e), *et seq.*

22          **A.    Disparate Impact**

23          176.    As to disparate impact, Plaintiffs incorporate by reference the allegations of

24   paragraphs 1 through 31, 33 through 66, 72 through 77, 81 through 87, 91 through 98, 102

25   through 106, 110 through 117, 123 through 128, 132 through 140, and 149 through 166, above, as

26   though fully set forth herein.

27          177.    Defendant has maintained a system for making decisions about

28   ───────────────
     [4] Plaintiff Merritt has requested a right to sue letter.

promotions, assignments (as to the Minority Employee Class), compensation, and discipline which is excessively subjective and which has had a disparate impact on Plaintiffs, the Minority Employee Class, and the African American Lower-Level Manager Class.  This system cannot be justified by business necessity, but even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged necessity.  Defendant's policies and practices that have a disparate impact on Plaintiffs and the classes they represent are alleged in paragraph 43 above.

178.    Defendant's discriminatory policies and practices as described above have denied Plaintiffs and the classes they represent promotions, desirable job assignments (as to the Minority Employee Class), and compensation to which they were and are entitled; have caused Plaintiffs and the classes they represent to be disciplined when they should not have been, resulting in the loss of past and future wages and other job benefits; and have caused Plaintiffs and the classes they represent to suffer humiliation, embarrassment and emotional distress.

### B.    Disparate Treatment

179.    As to disparate treatment, Plaintiffs incorporate by reference the allegations of paragraphs 1 through 178, above, as though fully set forth herein.

180.    Defendant has engaged in a pattern and practice of intentional discrimination against Plaintiffs and the classes in promotions, assignments (as to the Minority Employee Class), compensation, and discipline.

181.    Plaintiffs request relief as to both their disparate impact and disparate treatment claims as provided in the Prayer for Relief below.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF TITLE VII—NON-CLASS CLAIMS FOR DISPARATE TREATMENT

182.    Plaintiffs incorporate by reference the allegations of paragraphs 1 through 181, above, as though fully set forth herein.  This claim is brought on behalf of the named Plaintiffs individually for their non-class claims.

183.    Defendant intentionally discriminated against named Plaintiffs Brown, Gonzales, Merritt, Smith, Stevenson, Satchell, and Boykin on the basis of their race.

184. Defendant subjected named Plaintiffs Brown, Gonzales, Merritt, Smith, Stevenson, Satchell, and Boykin to a racially hostile work environment.

185. Defendant intentionally discriminated against Plaintiff Brown by subjecting her to more burdensome work conditions than similarly situated non-Minority employees, subjecting her to harassment, and retaliating against her for filing a discrimination complaint.

186. Defendant intentionally discriminated against Plaintiff Gonzales by failing to rehire him from disability.

187. Defendant intentionally discriminated against Plaintiff Merritt by singling him out for discipline and by denying him leave without pay.

188. Defendant intentionally discriminated against Plaintiff Smith by retaliating against him for filing a discrimination complaint and terminating him.

189. Defendant intentionally discriminated against Plaintiff Stevenson by subjecting him to harassment.

190. Defendant intentionally discriminated against Plaintiff Satchell by retaliating against him for filing a discrimination complaint and terminating him.

191. Defendant intentionally discriminated against Plaintiff Boykin by subjecting her to more burdensome work conditions than similarly situated non-Minority employees.

192. Defendant's discriminatory and retaliatory practices have resulted in the loss of past and future wages and other job benefits, and have caused Plaintiffs to suffer humiliation, embarrassment and emotional distress.

193. Plaintiffs request relief as to both their disparate impact and disparate treatment claims as provided in the Prayer for Relief below.

**THIRD CLAIM FOR RELIEF**
**VIOLATION OF 42 U.S.C. § 1981—CLASS CLAIMS**

194. Plaintiffs incorporate by reference the allegations of paragraphs 1 through 193, above, as though fully set forth herein.

195.    This claim is brought on behalf of all Plaintiffs and the Minority Employee Class and the African American Lower-Level Manager Class.

196.    The class period for both the Minority Employee Class and the African American Lower-Level Manager Class for this Claim for Relief is from October 17, 1999 to the date of judgment in this action.

197.    FedEx Express has engaged in a pattern and practice of intentional discrimination against Plaintiffs and the classes with respect to initial assignments (as to the Minority Employee Class only), promotion, compensation, and discipline.

198.    The foregoing conduct constitutes illegal intentional discrimination with respect to the making, performance, modification, and termination of contracts prohibited by 42 U.S.C. § 1981.

199.    Plaintiffs request relief as provided in the Prayer for Relief below.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF 42 U.S.C. § 1981—NON-CLASS CLAIMS**

200.    Plaintiffs incorporate the allegations of paragraphs 1 through 199, above, as though full set forth herein.

201.    This claim is brought on behalf of the named Plaintiffs individually for their non-class claims.

202.    Defendant intentionally discriminated against named Plaintiffs Brown, Gonzales, Merritt, Smith, Stevenson, Satchell, and Boykin on the basis of their race.

203.    Defendant intentionally discriminated against Plaintiff Brown by subjecting her to more burdensome work conditions than similarly situated non-Minority employees, subjecting her to harassment, and retaliating against her for filing a discrimination complaint.

204.    Defendant intentionally discriminated against Plaintiff Gonzales by failing to rehire him from disability.

205.    Defendant intentionally discriminated against Plaintiff Merritt by singling

1   him out for discipline and by denying him leave without pay.

2   206.   Defendant  intentionally discriminated against Plaintiff Smith by retaliating

3   against him for filing a discrimination complaint and terminating him.

4   207.   Defendant intentionally discriminated against Plaintiff Stevenson by

5   subjecting him to harassment.

6   208.   Defendant intentionally discriminated against Plaintiff Satchell by

7   retaliating against him for filing a discrimination complaint and terminating him.

8   209.   Defendant intentionally discriminated against Plaintiff Boykin by

9   subjecting her to more burdensome work conditions than similarly situated non-Minority

10  employees.

11  210.   Defendant's discriminatory and retaliatory practices have resulted in the

12  loss of past and future wages and other job benefits, and have caused Plaintiffs to suffer

13  humiliation, embarrassment and emotional distress.

14  211.   Plaintiffs request relief as to both their disparate impact and disparate

15  treatment claims as provided in the Prayer for Relief below.

16
17  **FIFTH CLAIM FOR RELIEF**
**VIOLATION OF CALIFORNIA FEHA-CLASS CLAIMS**

18  212.   This claim is brought on behalf of all members of the classes who are or

19  were employed by Defendant in California and/or who reside in California, including all the

20  named Plaintiffs except for Plaintiff Merritt.

21  213.   The class period for the Minority Employee Class for this Claim for Relief

22  is from June 13, 2001 through the date of judgment in this action.  The class period for the

23  African American Lower-Level Manager Class for this Claim for Relief is from July 31, 2001

24  through the date of judgment in this action.

25  214.   Plaintiffs Satchell, Boykin, Brown, Gonzales, Guerrero, Hutchins, Smith,

26  and Stevenson filed timely charges of discrimination with the California Fair Employment and

27  Housing, received right to sue letters, and timely filed the instant claim.  Plaintiffs have therefore

28  exhausted their administrative remedies and fulfilled all conditions precedent to suit.

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1

### A.    **Disparate Impact**

2    215.    As to disparate impact, Plaintiffs incorporate by reference the allegations of

3    paragraphs 1 through 31, 33 through 66, 72 through 77, 81 through 87, 91 through 98, 102

4    through 106, 110 through 117, 123 through 128, 132 through 140, 149 through 166, and 172

5    through 214, above, as though fully set forth herein.

6    216.    Defendant has maintained a system for making decisions about

7    promotions, assignments (as to the Minority Employee Class), compensation, and discipline

8    which is excessively subjective and which has had a disparate impact on Plaintiffs, the Minority

9    Employee Class, and the African American Lower-Level Manager Class.  This system cannot be

10   justified by business necessity, but even if it could be so justified, less discriminatory alternatives

11   exist that could equally serve any alleged necessity.  Defendant's policies and practices that have

12   a disparate impact on Plaintiffs and the classes they represent are alleged in paragraph 43 above.

13   217.    Defendant's discriminatory policies and practices as described above have

14   denied Plaintiffs and the classes they represent promotions, desirable job assignments (as to the

15   Minority Employee Class), and compensation to which they were and are entitled; have caused

16   Plaintiffs and the classes they represent to be disciplined when they should not have been,

17   resulting in the loss of past and future wages and other job benefits; and have caused Plaintiffs

18   and the classes they represent to suffer humiliation, embarrassment and emotional distress.

19   ### B.    **Disparate Treatment**

20   218.    As to disparate treatment, Plaintiffs incorporate by reference the allegations

21   of paragraphs 1 through 217, above, as though fully set forth herein.

22   219.    Defendant has engaged in a pattern and practice of intentional

23   discrimination against Plaintiffs and the classes in promotions, assignments (as to the Minority

24   Employee Class), compensation, and discipline.

25   220.    The foregoing conduct by Defendant against the named Plaintiffs and

26   members of the classes residing or employed in California violates Section 12940, *et seq*., of the

27   California Government Code, known as the Fair Employment and Housing Act ("FEHA").

28   221.    As a result of such violations of FEHA, the named Plaintiffs and members

of the classes residing or employed in California have suffered the loss of past and future wages and other job benefits, and have suffered humiliation, embarrassment and emotional distress.

222.   Plaintiffs request relief as to both their disparate impact and disparate treatment claims as provided in the Prayer for Relief below.

## SIXTH CLAIM FOR RELIEF
## VIOLATION OF CALIFORNIA FEHA—NON-CLASS CLAIMS

223.   Plaintiffs incorporate paragraphs incorporate by reference the allegations of paragraphs 1 through 222, above, as though fully set forth herein.

224.   This claim is brought on behalf of the named Plaintiffs employed and/or residing in California individually for their non-class claims.

225.   Defendant intentionally discriminated against named Plaintiffs Brown, Gonzales, Smith, Stevenson, Satchell, and Boykin on the basis of their race.

226.   Defendant subjected named Plaintiffs Brown, Gonzales, Smith, Stevenson, Satchell, and Boykin to a racially hostile work environment.

227.   Defendant intentionally discriminated against Plaintiff Brown by subjecting her to more burdensome work conditions than similarly situated non-Minority employees, subjecting her to harassment, and retaliating against her for filing a discrimination complaint.

228.   Defendant  intentionally discriminated against Plaintiff Gonzales by failing to rehire him from disability.

229.   Defendant  intentionally discriminated against Plaintiff Smith by retaliating against him for filing a discrimination complaint and terminating him.

230.   Defendant intentionally discriminated against Plaintiff Stevenson by subjecting him to harassment.

231.   Defendant intentionally discriminated against Plaintiff Satchell by retaliating against him for filing a discrimination complaint and terminating him.

232.   Defendant intentionally discriminated against Plaintiff Boykin by

1  subjecting her to more burdensome work conditions than similarly situated non-Minority

2  employees.

3    233.    Defendant's discriminatory and retaliatory practices have resulted in the

4  loss of past and future wages and other job benefits, and have caused Plaintiffs to suffer

5  humiliation, embarrassment and emotional distress.

6    234.    Plaintiffs request relief as provided in the Prayer for Relief below.

7    **RELIEF ALLEGATIONS**

8    235.    Plaintiffs and the classes they represent have no plain, adequate or

9  complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in

10  this action is the only means of securing complete and adequate relief.  Plaintiffs and the classes

11  they represent are now suffering and will continue to suffer irreparable injury from Defendant's

12  discriminatory acts and omissions.

13    236.    The actions on the part of Defendant have caused and continue to cause

14  Plaintiffs and the classes substantial losses in earnings, other compensation, desirable job

15  assignments, promotions, and other employment benefits, in an amount to be determined

16  according to proof.

17    237.    The actions on the part of Defendant have caused Plaintiffs and the classes

18  to suffer humiliation, embarrassment and emotional distress.

19    238.    Defendant acted or failed to act as herein alleged with malice or reckless

20  indifference to the protected rights of Plaintiffs and members of the classes.  Plaintiffs and

21  members of the classes are thus entitled to recover punitive damages in an amount to be

22  determined according to proof.

23    **PRAYER FOR RELIEF**

24    **WHEREFORE,** Plaintiffs, and the classes, pray for relief as follows:

25    1.    Certification of the case as a class action on behalf of the proposed Plaintiff

26  classes, and designation of Plaintiffs as representatives of the classes and their counsel of record

27  as Class Counsel;

28    2.    Damages and equitable relief for all harm the individual Plaintiffs and the

477941.1                                 - 47 -                SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1  classes have sustained as a result of Defendant's conduct, including back pay, front pay,

2  compensatory damages for emotional distress, and general and special damages for lost

3  compensation and job benefits that they would have received but for the discriminatory practices

4  of Defendant, and punitive damages, according to proof;

5      3.   For Plaintiffs' individual, non-class claims, damages and equitable relief

6  for all harm that Plaintiffs have sustained as a result of Defendant's conduct, including

7  reinstatement, back pay, front pay, general and specific damages for lost compensation and job

8  benefits they would have received but for the discriminatory practices of Defendant,

9  compensatory damages for emotional distress, and punitive damages, according to proof;

10     4.   Exemplary and punitive damages in an amount commensurate with

11  Defendant's ability to pay and to deter future discriminatory conduct;

12     5.   A preliminary and permanent injunction against Defendant and its

13  directors, officers, owners, agents, successors, employees and representatives, and any and all

14  persons acting in concert with it, from engaging in each of the unlawful practices, policies,

15  customs and usages set forth herein;

16     6.   A declaratory judgment that the practices complained of in this complaint

17  are unlawful and violate 42 U.S.C. § 2000(e), *et seq.*, Title VII of the Civil Rights Act of 1964e;

18     7.   A declaratory judgment that the practices complained of in this complaint

19  are unlawful and violate 42 U.S.C. § 1981;

20     8.   A declaratory judgment that the practices complained of in this complaint

21  are unlawful and violate Section 12940, *et seq.*, of the California Government Code, known as the

22  Fair Employment and Housing Act;

23     9.   An order restoring and/or promoting Plaintiffs and the classes to their

24  rightful positions;

25     10.   An order assigning Plaintiffs and the classes to those jobs they would now

26  be occupying but for Defendant's discriminatory practices;

27     11.   An order adjusting the wage rates and benefits for Plaintiffs and the classes

28  to that level which Plaintiffs and the classes would be enjoying but for Defendant's

477941.1                                      - 48 -

1   discriminatory practices;

2            11.      Costs incurred, including reasonable attorneys' fees, to the extent allowable

3   by law;

4            12.      Pre-Judgment and Post-Judgment interest, as provided by law; and

5            13.      Such other and further legal and equitable relief as this Court deems

6   necessary, just and proper.

7

8   Dated:  October 12, 2005              LIEFF, CABRASER, HEIMANN &
                                           BERNSTEIN, LLP

9

10                                        By:    */s/ James M. Finberg*_____
                                                James M. Finberg

11

12  Todd M. Schneider (SBN 158253)        James M. Finberg (SBN 114850)
    Guy B. Wallace (SBN 176151)           Bill Lann Lee (SBN 108452)
13  Joshua Konecky (SBN 182897)           Lexi J. Hazam (SBN 224457)
    SCHNEIDER & WALLACE                   Chimène I. Keitner (SBN 226948)
14  180 Montgomery Street, Suite 2000     Nirej S. Sekhon (SBN 213358)
    San Francisco, CA  94104              LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
15  Telephone: (415) 421-7100             275 Battery Street, 30th Floor
    Facsimile: (415) 421-7105             San Francisco, CA  94111-3339
16                                        Telephone:  (415) 956-1000
17  JOHN BURRIS (SBN 69888)               Facsimile:  (415) 956-1008
    7677 Oakport Blvd., Suite 1120
18  Oakland, CA  94612                    KAY MCKENZIE PARKER (SBN 143140)
    Telephone:  (510) 839-5210            703 Market Street, Suite 1401
19  Facsimile:   (510) 839-3882           San Francisco, CA 94103
                                          Telephone:  (415) 227-9622
20  MICHAEL S. DAVIS (SBN 160045)         Facsimile:   (415) 227-4522
21  345 Hill Street
    San Francisco, CA 94109               WAUKEEN Q. McCOY (SBN 168228)
22  Telephone:  (415) 282-4315            703 Market Street, Suite 1407
    Facsimile:  (415) 358-5576            San Francisco, CA  94103
23                                        Telephone:  (415) 675-7705
                                          Facsimile:   (415) 675-2530
24

25                 *Class Counsel and Counsel for the Plaintiffs*

26

27

28

SECOND CONSOLIDATED AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL
CASE NO. C 03-2659 SI; C 03-2878 SI

1    discriminatory practices;

2            11.    Costs incurred, including reasonable attorneys' fees, to the extent allowable

3    by law;

4            12.    Pre-Judgment and Post-Judgment interest, as provided by law; and

5            13.    Such other and further legal and equitable relief as this Court deems

6    necessary, just and proper.

7

8    Dated:  October 12, 2005          LIEFF, CABRASER, HEIMANN &
                                        BERNSTEIN, LLP
9

10                                     By:    /s/ James M. Finberg_____
                                              James M. Finberg
11

12   Todd M. Schneider (SBN 158253)    James M. Finberg (SBN 114850)
     Guy B. Wallace (SBN 176151)       Bill Lann Lee (SBN 108452)
13   Joshua Konecky (SBN 182897)       Lexi J. Hazam (SBN 224457)
     SCHNEIDER & WALLACE               Chimène I. Keitner (SBN 226948)
14   180 Montgomery Street, Suite 2000 Nirej S. Sekhon (SBN 213358)
     San Francisco, CA  94104          LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
15   Telephone: (415) 421-7100         275 Battery Street, 30th Floor
     Facsimile: (415) 421-7105         San Francisco, CA  94111-3339
16                                     Telephone:  (415) 956-1000
     JOHN BURRIS (SBN 69888)           Facsimile:  (415) 956-1008
17   7677 Oakport Blvd., Suite 1120
18   Oakland, CA  94612                KAY MCKENZIE PARKER (SBN 143140)
     Telephone:  (510) 839-5210        703 Market Street, Suite 1401
19   Facsimile:   (510) 839-3882       San Francisco, CA 94103
                                       Telephone:  (415) 227-9622
20                                     Facsimile:   (415) 227-4522
     MICHAEL S. DAVIS (SBN 160045)
21   345 Hill Street
     San Francisco, CA 94109           WAUKEEN Q. McCOY (SBN 168228)
22   Telephone:  (415) 282-4315        703 Market Street, Suite 1407
     Facsimile:   (415) 358-5576       San Francisco, CA  94103
23                                     Telephone:  (415) 675-7705
                                       Facsimile:   (415) 675-2530
24

25                 *Class Counsel and Counsel for the Plaintiffs*

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as provided by Rule 38(a) of the Federal

Rules of Civil Procedure.

Dated:  October 12, 2005

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By:___*/s/ James M. Finberg*_____
      James M. Finberg

Todd M. Schneider (SBN 158253)
Guy B. Wallace (SBN 176151)
Joshua Konecky (SBN 182897)
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA  94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105

JOHN BURRIS (SBN 69888)
7677 Oakport Blvd., Suite 1120
Oakland, CA  94612
Telephone:  (510) 839-5210
Facsimile:   (510) 839-3882

MICHAEL S. DAVIS (SBN 160045)
345 Hill Street
San Francisco, CA 94109
Telephone:  (415) 282-4315
Facsimile:  (415) 358-5576

James M. Finberg (SBN 114850)
Bill Lann Lee (SBN 108452)
Lexi J. Hazam (SBN 224457)
Chimène I. Keitner (SBN 226948)
Nirej S. Sekhon (SBN 213358)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

KAY MCKENZIE PARKER (SBN 143140)
703 Market Street, Suite 1401
San Francisco, CA 94103
Telephone:  (415) 227-9622
Facsimile:   (415) 227-4522

WAUKEEN Q. McCOY (SBN 168228)
703 Market Street, Suite 1407
San Francisco, CA  94103
Telephone:  (415) 675-7705
Facsimile:   (415) 675-2530

*Class Counsel and Counsel for the Plaintiffs*