IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRICK SATCHELL et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>FEDEX EXPRESS,<br><br>    Defendant. | No. C 03-02659 SI<br>Related Case No. C 03-2878 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTIONS TO COMPEL; GRANTING PLAINTIFFS' MOTION FOR SANCTIONS** |

This order resolves a number of discovery disputes between the parties.[1] As set forth below, the Court GRANTS in part and DENIES in part plaintiffs' motions to compel, and GRANTS plaintiffs' motion for sanctions.

**1.    Plaintiffs' Interrogatory No. 4, Second Set (Docket Nos. 450, 477)**

The parties dispute whether defendant has sufficiently answered Interrogatory No. 4, which states,

> For each of the job codes in the Minority Employee Class and the African-American Lower-Level Manager Class, please identify the following by job code and job title:
>
> a.    Each performance review used to evaluate employees in that job code from January 1, 1997, to the present, including, for each performance review and for each time period, a list of the categories and subcategories evaluated, the weights assigned to each category and subcategory, the guidelines provided to managers for evaluating each category and subcategory, and the rating scale provided to managers for evaluating each category and subcategory; and

---

[1] The letter briefs are found at Docket Nos. 448-450, 453-456, 458, 466, 477-482, 486-488, 490, and 494-479 in C 03-3659 SI, and at Docket Nos. 133, 135-136, 142, 147, 151 and 152 in C 03-2878.

     b.    The Bates number of each performance review form and/or OLPR screen printout produced to Plaintiffs corresponding to each of the performance reviews identified in response to (a).

Docket No. 450, Ex. A.

Plaintiffs contend that FedEx's response to this interrogatory is insufficient because FedEx only addressed online performance review forms, not paper performance review forms.[2] Defendant contends that it has fully answered the interrogatory, and that plaintiffs are attempting to obtain information through the motion to compel that they did not actually ask for in the interrogatory.

The Court finds that by only providing information about online performance review forms, FedEx did not fully answer Interrogatory No. 4. That Interrogatory asks for information regarding "*each* performance review" used to evaluate employees in a variety of different jobs; "each" means every type of performance review, whether online or paper. Defendant is correct that the interrogatory does not ask FedEx to specifically state when each paper performance review was used, or whether there was a time period during which managers could use both online or paper performance reviews. However, the interrogatory does ask, with respect to "each" performance review used, for "a list of the categories and subcategories evaluated, the weights assigned to each category and subcategory, the guidelines provided to managers for evaluating each category and subcategory, and the rating scale provided to managers for evaluating each category and subcategory." FedEx is ordered to supplement its interrogatory response to include this information with regard to any and all paper performance reviews used between January 1, 1997 to the present. To the extent that any of this information differs depending on the time period – for example, if different paper review forms were used at different times for the same jobs, or if the weights assigned to each category and subcategory changed over time – the interrogatory response must contain this information.

Plaintiffs also contend that FedEx's interrogatory response is insufficient because FedEx did not specifically identify the Bates number of each performance review form that corresponds with the performance reviews identified in subsection (a) of the interrogatory. FedEx does not specifically

---

[2] According to FedEx's September 18, 2006 letter, FedEx agreed to produce copies of all paper performance review forms used by FedEx during the time period covered by the interrogatory.

2

address this issue in its letter brief; instead, FedEx generally asserts that Rule 33(d) allows for the use of business records when the answer to an interrogatory may be derived or ascertained. Here, plaintiffs assert that it is not evident from the face of the documents which forms applied to which jobs, and during which time periods. FedEx is ordered to supplement the interrogatory response to provide this information.

**2.       Plaintiffs' Twenty-First Set of Requests for Production (Docket Nos. 466, 486)**[3]

Plaintiffs move to compel production of the personnel files, job applications, PRISM histories, computer readable data showing employment histories, and organizational charts showing the job titles and reporting structure for Michael John Snyder (a former FedEx manager who was deposed in this case), and Theodore L. Weise, Michael Pigors, David F. Rebholz, and Timothy George Wertner, four FedEx executives. Plaintiffs have submitted, *inter alia*, excerpts from the deposition testimony of Mr. Snyder regarding comments allegedly made by the other four executives, as well as statements by one executive regarding FedEx's corporate culture.

Plaintiffs assert that they need the documents at issue to learn "(1) the time periods during which the executives worked in the Western region; (2) the executives' policy-making powers and likely influence over those who worked below them; (3) any direct adverse action towards class members taken by these executives; (4) any evidence of racial slurs made by these executives during the class period; (5) whether anyone else ever complained that the executives exhibited racial animus towards class members (perhaps within the class period); and (6) whether FedEx ever took any actions to halt discriminatory acts by these executives." Docket No. 466. Plaintiffs state, and defendant does not dispute, that each of the executives held high-ranking positions within the Western region or the company as a whole during the class period. Plaintiffs seek Snyder's employment records in anticipation of the fact that FedEx will attempt to impeach Snyder as a disgruntled employee.

Defendant objects to the production of these documents on two primary grounds. First,

---

[3] Although the Court has received a copy of FedEx's September 14, 2006 opposition letter brief, that brief does not appear on the docket. If FedEx has not filed a copy of this letter brief, FedEx should do so. Plaintiff's opening and reply letter briefs were filed under seal.

3

1 defendant asserts that the Court should not consider the Snyder deposition transcript because Mr. Snyder
2 refused to take an oath at the beginning of that deposition. However, as plaintiffs note, much if not all
3 of the information contained in the more recent deposition transcript was also discussed in Snyder's
4 earlier deposition, portions of which have been submitted to the Court in connection with other matters.
5 To the extent defendant seeks a ruling that Snyder's deposition testimony is inadmissible, the Court
6 finds it unnecessary to resolve that question at this time.

Defendant also asserts that even if the Court considers the Snyder deposition testimony, at most he has testified about "stray remarks" that have no relevance to the instant case. The Court disagrees. In the context of a class action challenging various employment policies and practices as discriminatory, it is relevant whether high ranking executives hold, and act upon, discriminatory beliefs. *See Emmel v. Coca Cola Bottling Co.*, 95 F.3d 627, 637 (7th Cir. 1996) (finding "ample evidence" to support punitive damages claim where upper management made statements indicating resistance to women holding management roles, and where evidence showed company acted on those attitudes). Whether any such information is admissible is a different question that will be addressed, if necessary, in connection with motions for summary judgment or at trial. Accordingly, the Court concludes that plaintiffs are entitled to the documents sought in the twenty-first set of requests for production.[4]

### 3. Plaintiffs' Twenty-Seventh Set of Requests for Production (Docket Nos. 448 & 478)

Plaintiffs move to compel the production of certain validation studies, or in the alternative, to confirm that no such studies exist. FedEx's September 18, 2006 letter brief states that in response to plaintiff's motion, "[a]ll validation studies related to the BST and ASPIRE have been produced," and that although there are no validity studies pertaining to performance reviews, "documents demonstrating that the performance reviews are content valid and related to the various positions were produced." Docket No. 478.

FedEx states that only one study was not produced: the validation study for the Customer

---

[4] Defendant states that FedEx does not maintain old organizational charts. Defendant is only ordered to produce those organizational charts that are responsive to the document request and which currently exist.

4

1 Representative biodata instrument. FedEx states that this document was not produced because it was
2 developed for use with customer representatives, who are no longer part of FedEx and are employees
3 of a different company, FedEx Services. The Court agrees with defendant that this validation study does
4 not appear to be relevant to any of the claims in this case, and accordingly denies the motion to compel.
5 If plaintiffs contend that this validation study is relevant to the issues in this case, plaintiffs may renew
6 their motion in a separate letter brief.

**4.  Plaintiff Rick Gonzales' Second Set of Interrogatories (Docket Nos. 449, 453, 479 & 488)**

Plaintiff Rick Gonzales' second set of interrogatories requests that FedEx provide the following information:

> 1. Please identify any and all non-African American or non-Latino employees in the Southern California District of FedEx's Western Region, who were displaced from their positions due to disability or medical absence/leave in accordance with Policy 1-6, but were provided an offer of accommodation by Defendant within 75 miles of his/her place of residence.
>
> 2. Please identify any and all non-African American or non-Latino employees in the Southern California District of FedEx's Western Region, who were displaced from their positions due to disability or medical absence/leave in accordance with Policy 1-6, but were provided an offer of accommodation by Defendant within 75 miles of his/her last place of work.

Davis Decl., Ex. C. The time period covered by the interrogatories is April 1, 1997 to the present. *Id*.

FedEx objected to these interrogatories on the ground that it previously made this information available in connection with a document production in April 2004 and September 2005. That previous document production, which was itself the subject of several motions to compel and resulted in several orders from this Court, concerned plaintiff's request for production of "documents relating to non-African American and Latino employees return to work after disability leave." By orders filed March 21 and September 7, 2005, the Court ordered FedEx to produce documents as kept in the ordinary course of business, supplemented with specific information to enable plaintiffs to locate the information at issue. *See* Docket No. 348 at 5.[5]

---

[5] For example, the Court ordered defendant to "identify the names of employees who qualify under the definition of long-term disability leave and provide plaintiff with a list that includes: (1) the name of all qualifying employees, (2) the date each employee began leave, and (3) the date each

FedEx asserts, without any supporting declarations, that the documents previously made available in response to the earlier document requests also contain the information sought by plaintiff Gonzales' interrogatories. Even if that is true, however, defendant cannot fulfill its discovery obligations by referring plaintiffs to voluminous records without providing guidance as to where the relevant information might be found. *See* Fed. R. Civ. P. 33(d); *Rainbow Pioneer No. 44-18-04A v. Hawaii-Nevada Corp.*, 711 F.2d 902, 906 (9th Cir. 1983).

Accordingly, the Court orders defendant to (1) identify the names of any and all employees in the Southern California District of FedEx's Western Region, who were displaced from their positions due to disability or medical absence/leave in accordance with Policy 1-6; (2) supplement, if necessary, the lists previously ordered in the September 7, 2005 order with respect to employee names and numbers, so that plaintiffs can compare that list with previously provided information regarding employees' races; and (3) make all relevant files available to plaintiffs. If those files do not contain information regarding the geographic scope of any accommodation offered, as defendant's letter brief recognizes is a possibility, defendant shall at that time conduct whatever further search is necessary in order to provide interrogatory responses with the relevant information.

**5.     Plaintiffs' Interrogatories Nos. 1 and 2, Second Set (Docket Nos. 458, 480 & 482)**

The parties' dispute centers on information defendant has provided concerning JCATS and, relatedly, job postings. Plaintiffs assert that there are numerous promotions that do not appear in the JCATS database. In order to understand how a promotion can be found in PRISM job history data but not in the JCATS data, plaintiffs propounded two interrogatories:

1.  Do documents exist, or did documents exist, relating to postings for permanent part-time or permanent full-time hourly positions that were not posted in JCATS?

2.  If the answer to Interrogatory No. 1 is "yes," please indicate:
    a. Do the documents still exist?
    b. If they do not still exist, when did they stop existing?
    c. How and by whom were the documents created?
    d. How and by whom were the documents destroyed?

---

employee returned to work; after plaintiffs have determined which employees on this list are relevant to the litigation, defendant must make all relevant files available to plaintiff." *Id.*

6

Docket No. 458 at Ex. D. Defendant responded: "A reasonable search for 'permanent part-time or permanent full-time hourly positions that were not posted in JCATS' was conducted and no documents were located." *Id.* at Ex. E.

Plaintiffs assert that defendant's response is insufficient because Interrogatory No. 1 calls for a "yes" or "no" answer. The Court agrees with plaintiffs on this point. Although defendant contends that a "yes" or "no" answer is not required because the question is not a request for admission but an interrogatory, defendant's answer is incomplete because it does not answer whether any such documents have ever existed. Defendant is ordered to supplement its interrogatory response to clarify whether any such documents have ever existed; if such documents did exist, defendant would also be required to answer Interrogatory No. 2.

Plaintiffs also assert that defendant's response is insufficient because defendant interpreted Interrogatory No. 1 to pertain only to job postings that had never been posted in JCATS, while plaintiffs intended the interrogatory to include "postings that were posted [in JCATS] and filled outside of JCATS." Docket No. 458 at 4. Plaintiffs assert that if there were in fact postings that were posted in JCATS, they should have received such information in the JCATS data. However, whether defendant's document production was inadequate is a separate issue (not presented in the instant motion to compel) from whether Interrogatory No. 1 calls for the information that plaintiffs intended.

The Court agrees with defendant that, as framed, the interrogatory only asked whether documents exist, or previously existed, "relating to postings . . . that were not posted in JCATS." The plain language of plaintiffs' interrogatory covers postings "not posted in JCATS." Plaintiffs did not ask about the existence of documents relating to postings "that were posted in JCATS and filled outside the JCATS process." Accordingly, to the extent plaintiffs seek to compel a further response regarding postings originally posted in JCATS and filled outside the JCATS process, the Court denies the motion.

**6.     Plaintiffs' Requests for Admissions Nos. 3-6 (Docket Nos. 487 & 490)**

Plaintiffs move to compel defendant to admit or deny the authenticity of numerous documents produced by FedEx in this litigation. Plaintiffs' Request for Admission No. 3 requests,

Please admit the authenticity of deposition exhibits 1 through 214, used in 30(b)(6)

7

depositions noticed in the above-captioned case. If any document is identified as not authentic, state with specificity the grounds upon which the document is not what it purports to be.

Docket No. 487, Ex. A. Requests four through six are similar. *See id.* (RFA 4 asking defendant to admit or deny that same exhibits are "kept in the ordinary course of business" and are "fair and accurate copies of the originals"; RFA 5 asking defendant to admit or deny authenticity of "all paper personnel files produced by defendant"; RFA 6 asking defendant to admit or deny that paper personnel files "kept in the ordinary course of business" and are "fair and accurate copies of the originals"). Plaintiffs did not attach copies of any documents to these requests for admission. Defendant objected to the requests on numerous grounds, and also incorporated its response to Request No. 1, which, *inter alia*, admitted that certain documents were authentic and kept in the regular course of business activity.

The Court concludes that there was nothing improper about defendant's responses. It is not reasonable to ask a party to admit the authenticity of hundreds of documents that are not attached to the request. By requesting defendant to make admissions regarding hundreds of deposition exhibits, or "paper personnel files," plaintiffs inappropriately put the burden on defendant to sift through the voluminous discovery in this case. To the extent that issues remain regarding authenticity or business record foundation, those questions can be addressed at trial.

**7.    Plaintiffs' motion to compel and for sanctions (Docket Nos. 454-456, & 481)**

   **A.    Production of documents**

Plaintiffs move to compel the production of documents that plaintiffs assert were twice ordered produced by this Court, yet never actually produced. Plaintiffs also seek sanctions based on FedEx's alleged failure to comply with the Court's previous orders. The documents relate to the employment histories of the named plaintiffs and their comparators.

As background, the Court's March 21, 2005 order directed FedEx to produce, *inter alia*, "personnel files for the remaining 12 of the 33 comparators, and complete files for all comparators, including performance reviews" and "ASPIRE files for comparators." Docket No. 311 at 5. Following FedEx's production of documents in response to the March 21, 2005 order, the parties sought resolution of a dispute concerning whether FedEx had complied with that order. In connection with that dispute,

8

FedEx asserted that it had fully complied with the Court's March 21, 2005 order, and that it had produced all available files in FedEx's possession. The Court's September 7, 2005 order provided, in relevant part,

> The Court agrees with plaintiffs that the electronic versions of personnel files are not sufficient to allow comparisons of job applicants, and that it appears that FedEx did maintain paper personnel records, with ASPIRE materials, at least in some cases. . . . Therefore, defendant's current production is either incomplete, if those documents indeed exist for other comparators, or complete, if those documents once existed but are no longer in FedEx's possession. The Court hereby ORDERS that defendant either produce the following documents or provide a sworn statement regarding the reasons these documents are unavailable: (1) complete performance reviews for plaintiffs and the comparators; (2) complete ASPIRE management training materials for plaintiffs and the comparators; (3) complete ASPIRE job packets for plaintiffs and the comparators for lower management positions; (4) descriptive postings of the positions for which plaintiffs applied; and (5) interview notes of panelists for the jobs at issue. To the extent that this production does not include responsive documents because they no longer exist in either paper or electronic format, defendant's declaration must state when it destroyed or ceased to retain these documents, and the policies or reasons for their destruction. Defendant must submit this declaration to the Court **on or before September 23, 2005**.

Docket No. 349 at 2-3. Defendant did not submit a declaration in response to the September 7, 2005 order.

Plaintiffs have submitted the declaration of plaintiffs' counsel Hank Willson, which describes FedEx's document production in response to the Court's September 7, 2005 order. According to the Willson declaration, FedEx produced two identical CDs on October 28, 2005, and then more documents on November 7, 2005. Willson Decl. ¶¶ 4-6. Based upon their review of FedEx's various document productions, plaintiffs assert that FedEx has failed to produce the following documents:

- The descriptive posting documents describing the actual positions for which the named plaintiffs applied; plaintiffs state that FedEx has only produced the descriptive postings regarding, according to FedEx, "Career Opportunities . . . relevant to plaintiff Stevenson."

- The paper personnel files for the 61 comparators identified by FedEx; plaintiffs state FedEx has only produced electronic performance evaluations.

- All interview notes for the management positions for which the named plaintiffs applied; plaintiffs state FedEx has only produced interview notes for some of the positions for which, it claims, plaintiff Stevenson applied.

- Legible discipline records for the comparators to the named plaintiffs; plaintiffs state FedEx has produced such records but in an illegible format, and has failed

9

> to rectify the problem despite requests that it do so.[6]
>
> • ASPIRE packets and documents regarding the named plaintiffs who applied for management positions; plaintiffs state FedEx has only produced ASPIRE packets and documents that it claims relate to plaintiff Stevenson, but not for plaintiffs Boykin or Brown.

Docket No. 454 at 2. In addition, plaintiffs contend that with respect to the documents that FedEx did produce pertaining to comparators, it failed to identify the particular plaintiff to whom the comparator applies, and has refused to provide any information on this point despite being requested to do so. Defendant responds that it has fully complied with the Court's previous discovery orders, and raises specific arguments, discussed below, with respect to the five categories of documents.

After careful review of the parties' letter briefs, declarations, and exhibits, the Court concludes that defendant has not complied with its discovery obligations, and that this failure is particularly glaring in light of the two previous orders compelling production of the documents at issue. The Court is mindful of the fact that discovery in this class action has been complicated and extensive. However, defendant has repeatedly been ordered by this Court to either produce the documents at issue or provide a sworn declaration explaining any gaps in the production; despite numerous opportunities to do so, including the meet and confer prior to the filing of plaintiffs' motion, defendant has failed to either produce the documents or provide an explanation as to why certain documents are not produced.

For two of the categories at issue – job postings and interview notes – defendant argues that to the extent it did not actually produce some documents, it made those documents available to plaintiffs under Rule 34(b), and that plaintiffs chose not to inspect the business records. For example, although defendant produced job postings for plaintiff Stevenson, with respect to the other named plaintiffs, Mr. Douglas' October 28, 2005 letter generally referred plaintiffs to a building in Memphis, Tennessee for postings between June 2002 and November 4, 2005, and to an "offsite warehouse" for postings prior to June 2002. *See* Docket No. 456, Ex. C. Similarly, although defendant produced some interview notes with respect to some named plaintiffs, defendant referred plaintiffs in that same letter to the OAK, JDY, SJC and BFL sites to "review any personnel file."

---

[6] The parties are ordered to meet and confer on this issue, and if in fact the documents are illegible, defendant shall produce legible copies to plaintiffs; making such documents available at various sites and warehouses will not be sufficient.

10

1  The Court finds these arguments lack merit. The Court's September 7, 2005 order directed
2  defendant to produce these specific documents, and defendant has provided no explanation why it can
3  produce certain job postings and interview notes to plaintiffs, but not others. Particularly in the context
4  of a court order directing defendant to produce these documents, the Court finds that referring plaintiffs
5  to locations scattered around the country to look for documents does not fulfill defendant's obligations.

6  With respect to plaintiffs' contention that FedEx did not produce paper personnel files for the
7  "comparators identified by FedEx,"[7] defendant confusingly asserts that "it is plaintiffs' obligation to
8  identify comparators." Docket No. 481 at 3. FedEx's chart, which is found at Docket No. 481,
9  Attachment 3, states that it has produced various documents and "personnel files" for particular
10 individuals, and "paper personnel files" for fourteen individuals. *See id.* The Court assumes that by
11 distinguishing between "personnel files" and "paper personnel files," defendant implicitly concedes that
12 it has not, in fact, produced paper personnel files for all of the comparators at issue. The Court's
13 September 7, 2005 order held that paper personnel files were required in addition to electronic files to
14 enable plaintiffs to make a complete comparison between the named plaintiffs and their comparators.
15 Thus, to the extent that FedEx only produced electronic files for comparators, FedEx was obligated,
16 under the terms of the September 7, 2005 order, to also produce paper files for those individuals. If
17 paper files do not exist for those individuals, FedEx was required to explain why. FedEx has not done
18 so.

19 With respect to identification of comparators, plaintiffs' motion to compel concerns comparators
20 *identified by FedEx*. Plaintiffs have submitted a list, attached as Exhibit A to the Willson reply
21 declaration (Docket No. 495), listing all of the comparators identified by FedEx in its October 28, 2005
22 and November 7, 2005 productions. If FedEx identified an individual as a comparator, it logically
23 makes sense that FedEx should identify the plaintiffs with whom the "comparators" correspond.

25 Finally, with regard to ASPIRE packets and documents for named plaintiffs Boykin and Brown,
26 defendant asserts that "earlier this year" it produced the ASPIRE materials for Boykin, and that there

---

[7] The Court notes that plaintiffs' motion states that there are 61 comparators at issue, while plaintiffs' reply states that there are 78 comparators.

11

are no materials for Brown. *See* September 14, 2006 declaration of Shelia Mattison. *See* Docket No. 481 at Attachment 2. Plaintiffs' reply contends that there should be a JCA and ASPIRE management application packet for Ms. Boykin in connection with her application for an Operations Manager position. Plaintiffs also assert that there should be ASPIRE materials for Ms. Brown because she testified at her deposition that she completed ASPIRE training, and also because applied for two management positions in 2001. If plaintiffs are correct, plaintiffs are entitled to these materials; if these materials do not exist, defendant must provide an explanation.

Accordingly, the Court GRANTS plaintiffs' motion to compel and GRANTS plaintiffs' motion for sanctions, as follows:

- defendant shall produce descriptive postings of the positions for which *all* of the named plaintiffs applied;
- defendant shall produce paper personnel files for all of the comparators identified by FedEx as listed in Attachment A to the reply Willson Declaration;
- for those comparators identified by FedEx, defendant shall identify the named plaintiffs with whom the comparators correspond;
- defendant shall produce all interview notes for the management positions for which *all* of the named plaintiffs applied;
- if there are no additional ASPIRE materials for plaintiffs Boykin and Brown, defendant shall file a sworn declaration describing all steps taken to locate the specific items described in plaintiffs' October 4, 2006 letter brief;
- to the extent defendant contends that it has already produced any of the documents described above, defendant shall provide a sworn declaration identifying the Bates numbers that correspond to the type of document;
- to the extent that defendant's production does not include responsive documents because they no longer exist in either paper or electronic format, defendant must file a sworn declaration stating when it destroyed or ceased to retain these documents, and the policies or reasons for their destruction; and
- defendant shall pay for plaintiffs' reasonable attorneys' fees and costs associated

12

with the instant motion to compel (not fees associated with plaintiffs' other motions to compel addressed in this order).

The parties shall meet and confer regarding plaintiffs' fees and costs; if the parties are unable to agree as to the reasonableness of the fees and costs sought, the parties shall submit letter briefs with supporting declarations to the Court.

### B.     Rule 30(b)(6) depositions

The parties dispute whether three Rule 30(b)(6) deponents were knowledgeable about the subjects on which they were designated. Plaintiffs requested the designation of a person to testify regarding,

> The steps taken to train managers how to evaluate each aspect of employee performance measured by each of the performance evaluations used to evaluate the performance of employees in each class member job code during the class period . . . including monitoring of such training.

Wallace Decl. Ex. E at 3. FedEx raised various objections to the notice, and responded with twelve different designations according to specific subjects, such as "teamwork" and "planning and organizing."

**Michael Martorano**:  FedEx produced Mr. Martorano, Training Advisor, on the subject of "designing of training material." *Id.* During his deposition, Mr. Martorano testified that he did not have any knowledge regarding designing the substance of training materials; instead, he testified that he was as a "middle man" responsible for "getting that information from the people who create the policies and putting it our training manual verbatim." Martorano Depo. at 26. Plaintiffs' counsel asked, "So your job is not to decide what content goes into these manuals?" to which Mr. Martorano responded, "That is correct." *Id.* at 27.

The Court agrees with plaintiffs that Mr. Martorano was not a knowledgeable Rule 30(b)(6) deponent. FedEx's arguments to the contrary, it strains credulity to state that a deponent who can only testify as to the mechanical process for creating training materials fulfills the obligation to produce a someone knowledgeable about "designing of training material." Defendant's arguments might be persuasive if the technical processes of designing training materials were somehow relevant to plaintiffs'

13

claims. They are not. Accordingly, defendant is ordered to produce in San Francisco[8] another designee who is knowledgeable about designing the *substance* of training materials.

**Philip Douglas**: In response to the same notice, FedEx produced Mr. Douglas, Senior Management Facilitator, on the subject of "Leadership Principles I." Neither party has provided the Court with a definition or explanation of "Leadership Principles I." Plaintiffs assert that Mr. Douglas was an inadequate designee because he was not knowledgeable about how managers were trained to do performance reviews as part of that training, and because Mr. Douglas testified that he did not now anything about the text of a Leadership training manual. However, the deposition excerpts provided by plaintiffs do not support plaintiffs' assertions. Based upon the record before the Court, the Court does not find that Mr. Douglas was an inadequate designee, and accordingly this aspect of plaintiff's motion is denied.

**John Skinner**: FedEx produced Mr. Skinner on the topic of "Checksits," which again neither party defines or explains. Plaintiffs assert that Mr. Skinner was an inadequate designee because he was only knowledgeable about this topic for FedEx's DGO division, and not its AGFS division. Defendant responds that plaintiffs' Rule 30(b)(6) notice did not indicate that they considered any distinction between DGO and AGFS to be significant. The Court finds this argument lacks merit, as the deposition notice used general terms which would presume to encompass both of FedEx's divisions. Defendant also contends that plaintiffs' argument is nothing but "smoke and mirrors" since plaintiffs' counsel made no inquiry as to whether there are practical and relevant differences between the two divisions with respect to Checksits. However, as a review of the deposition transcript makes clear, Mr. Skinner and his counsel repeatedly informed plaintiffs' counsel that Mr. Skinner's knowledge was limited to DGO and that he was not familiar with the Checksit procedures for AGFS. *See* Skinner Depo. at 196-97. Thus, any such inquiry would appear to have been pointless. Accordingly, defendant is ordered to produce in San Francisco a Rule 30(b)(6) designee who is knowledgeable about Checksit procedures for AGFS.

---

[8] Plaintiffs' counsel traveled to Memphis, Tennessee for the Rule 30(b)(6) depositions. In light of defendant's failure to produce knowledgeable deponents, the Court finds it reasonable to require the additional Rule 30(b)(6) depositions to take place in San Francisco.

14

Plaintiffs further argue that Mr. Skinner was inadequate because he testified his job was merely to design the form used by managers when conducting Checksits, and he had no knowledge about how managers actually used these forms when performing Checksits of actual employees. As an initial matter, the Court finds that these questions appear to be beyond the scope of the information plaintiffs requested. *See* Wallace Decl. Ex. E at 5 (requesting designation of person to testify regarding "steps taken to design each of the performance evaluations . . . ."). Moreover, as defendants note, in the meet and confer prior to the depositions, the parties agreed that the depositions would not cover information about local decisions, operations or practices. The Court finds that in this respect, Mr. Skinner was not an inadequate designee.

### C. Additional depositions

Plaintiffs seek to take the depositions of two fact witnesses regarding the discipline claims of two of the named plaintiffs. Plaintiffs have submitted the declaration of Hank Willson, Esq., describing plaintiffs' attempts to depose these individuals prior to the close of fact discovery. The Court concludes that, although plaintiffs delayed somewhat with respect to the Likong deposition, plaintiffs did make a number of efforts to take his deposition prior to the close of discovery, and thus plaintiffs are granted leave to take his deposition. However, plaintiffs have not demonstrated good cause to take the deposition of Greg Koontz, and accordingly the Court denies the request to take that deposition.

### CONCLUSION

For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part plaintiffs' motions to compel, and GRANTS plaintiffs' motion for sanctions. Defendant shall supplement its interrogatory responses and document production, and file any required declarations, by **October 18, 2006**. The parties shall meet and confer regarding the scheduling of the Rule 30(b)(6) depositions and the deposition of Mr. Likong. The parties shall meet and confer regarding the amount of attorneys' fees and costs awarded to plaintiffs as a sanction; if the parties are unable to agree on that amount, plaintiffs shall file a letter brief and supporting declaration by **October 18, 2006**, and defendant may file a response by **October 25, 2006**.

**IT IS SO ORDERED.**

Dated: October 6, 2006

_____
SUSAN ILLSTON
United States District Judge