Frederick Douglas
(Admitted Pro Hac Vice)
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, Tennessee, 38125
Telephone: (901) 434-8519
Facsimile: (901) 434-9271

SEYFARTH SHAW LLP
Gilmore F. Diekmann, Jr. (SBN: 050400)
Francis J. Ortman, III (SBN: 213202)
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Evelyn L. Becker (CA SBN: 170903)
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Attorneys for Defendant
FEDERAL EXPRESS CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DERRICK SATCHELL, KALINI BOYKIN, VALERIE BROWN, RICK GONZALES, CYNTHIA GUERRERO, RACHEL HUTCHINS, DANIEL SHERMAN, KELVIN SMITH, SR., and KEN STEVENSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX EXPRESS, a Delaware corporation,<br><br>Defendant. | Case Nos. C03-02659 SI; C03-02878 SI<br><br>**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 9 (PRECLUDE PLAINTIFFS' EXPERT DR. WILLIAM T. BIELBY'S EVIDENCE REGARDING BIAS IN THE FEDEX PERSONNEL SYSTEM)**<br><br>Hearing Date:   March 2, 2007<br>Hearing Time:   9 a.m. |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I. PLAINTIFFS HAVE NOT SHOWN THAT DR. BIELBY'S PURPORTED EVIDENCE THAT FEDEX'S PERSONNEL SYSTEM IS "VULNERABLE TO BIAS" WILL PROVIDE THE TRIER OF FACT WITH "APPRECIABLE HELP," AND THE EVIDENCE SHOULD THEREFORE BE EXCLUDED ................... 1

   A. Because Dr. Bielby Addresses Subjects Within The Understanding Of The Average Person, His Testimony Regarding Those Subjects Should Be Excluded. ................................................................................................................... 2

      1. Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Regarding The Purported Uniformity And Standardization Of FedEx's Personnel System Are Appropriate Subjects For Expert Testimony. .................................................................................................. 3

      2. Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Regarding The "Vulnerability To Bias" That May Result From Discretionary Features In A Personnel System Are Appropriate Subjects For Expert Testimony. ............................................................... 4

      3. Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Regarding Overt Bias At FedEx Are Appropriate Subjects For Expert Testimony .................................................................................................... 6

   B. Plaintiffs Have Not Shown That Dr. Bielby's Evidence Regarding Potential Bias In Discretionary Features Of FedEx's Personnel System Is Relevant To This Case, And Such Evidence Should Therefore Be Excluded ....................... 7

   C. Rule 403 Further Mandates Exclusion Of Dr. Bielby's Evidence Regarding Potential Bias In FedEx's Personnel System .......................................................... 8

      1. Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Regarding The "Vulnerability To Bias" That May Result From Discretionary Features In A Personnel System Are Not Unfairly Prejudicial ............................................................................................... 9

      2. Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Concerning Statistical Analyses Conducted By Plaintiffs' Expert, Dr. Richard Drogin Are Not Unnecessary And Cumulative ...................... 10

II. PLAINTIFFS HAVE NOT SHOWN THAT DR. BIELBY IS QUALIFIED TO PROVIDE EXPERT EVIDENCE REGARDING FEDEX'S PERSONNEL PRACTICES AND POLICIES, AND THIS EVIDENCE MUST THEREFORE BE EXCLUDED. ...................................................................................................... 10

CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

Page

### CASES
*Bogosian v. Mercedes-Benz of N.A., Inc.*,
104 F.3d 472 (1st Cir. 1996) .................................................................... 10, 11

*Butler v. Home Depot, Inc.*,
984 F. Supp. 1257 (N.D. Cal. 1997) ........................................................... 7, 11

*Daubert v. Merrell Dow Pharm.*,
509 U.S. 579 (1993) .......................................................................................... 7

*Daubert v. Merrell Dow Pharm.*,
43 F.3d 1311 (9th Cir. 1995) ............................................................................ 7

*Dukes v. Wal-Mart, Inc.*,
__ F.3d __, No. 04-16688, 2007 WL 329022, (9th Cir. Feb. 6, 2007) ......... 7, 11

*Eagleston v. Guido*,
41 F.3d 865 (2d Cir. 1994) ............................................................................. 11

*Green v. Kinney Shoe Corp.*,
715 F.Supp. 1122 (D.D.C. 1989) ..................................................................... 5

*Humphreys v. Regents of the Univ. of Cal.*,
2006 WL 1867713, No. C 04-03808 SI (N.D. Cal. July 6, 2006) ......... 4, 12, 13

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................................................... 2, 7

*Little Oil Co. v. Atlantic Richfield Co.*,
852 F.2d 441 (9th Cir. 1988) ............................................................................ 2

*Salem v. U. S. Lines Co.*,
370 U.S. 31 (1962) ........................................................................................ 2, 3

*U.S. Smelting Co. v. Parry*,
166 F. 407, 411 (1909) ..................................................................................... 3

*United States v. Brewster*,
783 F.2d 841 (9th Cir.) ..................................................................................... 6

*United States v. Fuentes-Cariaga*,
209 F.3d 1140 (9th Cir) ..................................................................................... 2

*United States v. Gwaltney*,
790 F.2d 1378 (9th Cir. 1986) .......................................................................... 2

*United States v. Hall*,
93 F.3d 1337 (7th Cir. 1996) ............................................................................ 5

*United States v. Rahm*,
993 F.2d 1405 (9th Cir. 1993) ....................................................................... 2, 6

*Wilkinson v. Rosenthal & Co.*,
712 F. Supp. 474 (E.D. Pa. 1989) ................................................................... 11

*Wilson v. Muckala*,
303 F.3d 1207 (10th Cir. 2002) ........................................................................ 7

Defendant's Reply (Motion in Limine No. 9)
Case Nos. C 03-02659 SI; C 03-02878 SI

# TABLE OF AUTHORITIES

**Page**

**RULES**

FED R. CIV. P. 23 ............................................................................................................. 5
FED R. EVID. 403 ............................................................................................................ 8
FED R. EVID. 702 ..................................................................................................... 1, 2, 8

**ARTICLES**

Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991) ............................................................................ 9

## INTRODUCTION

Despite a deluge of blistering attacks and blustery rhetoric, plaintiffs fail to rebut FedEx's showing that Dr. Bielby's proffered testimony should be excluded. Indeed, plaintiffs provide no meaningful substantive evidence to demonstrate either (a) that Dr. Bielby's testimony regarding "vulnerability to bias" is relevant to the facts of this case -- i.e., that his testimony both addresses subject matters requiring expert testimony and has a logical connection to this litigation, or (b) that Dr. Bielby is qualified to provide expert testimony regarding the adequacy of FedEx's monitoring and accountability. Plaintiffs instead primarily assert irrelevant arguments that do not counter FedEx's substantive showing that Dr. Bielby's evidence should be excluded. To that end, plaintiffs consistently take refuge behind previous determinations regarding Dr. Bielby's proffered expert testimony -- decisions, however, that involved *different* cases with inherently *different* facts in which Dr. Bielby offered *different* testimony than he proffers in this case. Plaintiffs' reliance is therefore misplaced. Moreover, plaintiffs' repeatedly rely upon comparative arguments based upon the testimony of other proposed experts. The testimony of such experts, however, is not at issue here, and plaintiffs' arguments concerning the substance of other expert testimony is therefore irrelevant. The qualifications and subject matter of each witness -- including Dr. Bielby -- must be examined within the context of each individual's own expertise and testimony. Ultimately then, plaintiffs dedicate most of their effort to showing that FedEx is guilty of everything from being a "bad parent" to writing a "scornful motion," but fail to provide substantive relevant rebuttal evidence. Accordingly, Dr. Bielby's evidence should be precluded.

## ARGUMENT

**I. PLAINTIFFS HAVE NOT SHOWN THAT DR. BIELBY'S PURPORTED EVIDENCE THAT FEDEX'S PERSONNEL SYSTEM IS "VULNERABLE TO BIAS" WILL PROVIDE THE TRIER OF FACT WITH "APPRECIABLE HELP," AND THE EVIDENCE SHOULD THEREFORE BE EXCLUDED.**

One of the "fundamental requirements" of Fed. R. of Evid. 702 is that the proposed

expert's evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 539 (S.D.N.Y. 2004); *see also* FED. R. EVID. 702. In evaluating the helpfulness requirement, the Ninth Circuit has emphasized that "the test for admissibility is whether the jury will receive '*appreciable help*'" from the expert's evidence. *Little Oil Co., v. Atlantic Richfield Co.,* 852 F.2d 441, 446 (9th Cir. 1988) (quoting *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 1104 (1987)) (emphasis added).[1]

### A. Because Dr. Bielby Addresses Subjects Within The Understanding Of The Average Person, His Testimony Regarding Those Subjects Should Be Excluded.

Expert testimony is properly excluded if it concerns matters within the understanding of the average person. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962); *see also United States v. Fuentes-Cariaga*, 209 F.3d 1140, 1142 n. 3 (9th Cir. 2000) ("Where an expert offers general testimony about an issue within the ken of the jury's knowledge, it is not an abuse of discretion to exclude such testimony under Rule 702") (citing *United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993). Because Dr. Bielby addresses subjects that are not so complicated as to require expert testimony, his testimony regarding those subjects should be excluded.

As an initial matter, plaintiffs have mischaracterized FedEx's arguments on this point in two ways. First, plaintiffs incorrectly assert that FedEx has promulgated the "offensive" contention that "the average layperson possesses the same (or even any) of the scientific and specialized knowledge that Dr. Bielby has accumulated through a lifetime of study." (Pls.' Opp. at 6.) FedEx, however, has made no such assertion. Rather, FedEx contends simply that Dr. Bielby offers testimony on certain subject matter for which his expert knowledge *is not necessary*

---

[1] Here, as throughout their Opposition, plaintiffs attempt to factually distinguish legal precedent that FedEx relies upon only for general principles of law. (*See, e.g.*, Pls.' Opp. at 10, n.3.) Such efforts are misplaced. Naturally, the factual background of such cases will differ, but this does not affect FedEx's reliance on the broad statements of law set forth in these cases.

2     Defendant's Reply (Motion in Limine No. 9)
Case Nos. C 03-02659 SI; C 03-02878 SI

- i.e., the subject matter is within the average layperson's knowledge, and therefore, "men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them" as is an expert witnesses. *Salem*, 370 U.S. at 35 (quoting *U.S. Smelting Co. v. Parry*, 166 F. 407, 411, 415 (1909)). Perhaps before taking offense at FedEx's comments, plaintiffs should ensure FedEx has, in fact, actually made the comment. Second, plaintiffs have erroneously conflated FedEx's arguments, incorrectly asserting that FedEx has challenged certain evidence as an improper subject of expert testimony. Specifically, on pages 7 and 8 of their Opposition, plaintiffs list several of Dr. Bielby's conclusions that FedEx did not challenge as improper expert subjects: (a) the issues raised in the last five bullet points on page 7 and (b) the second and third bullet points on page 8. Rather, FedEx asserts that those issues, although appropriate for expert testimony, are outside of Dr. Bielby's relevant field of expertise.

### 1. Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Regarding The Purported Uniformity And Standardization Of FedEx's Personnel System Are Appropriate Subjects For Expert Testimony.

Dr. Bielby's assertion that FedEx's personnel system "is uniform, centralized, and in many ways highly formalized and standardized" is, quite simply, his subjective interpretation of deposition testimony -- evidence that the jury is equally capable of understanding and interpreting. (*See* Expert Report of William T. Bielby, Ph.D., dated June 30, 2006 at 6-9, ¶¶ 10-14. ("Bielby Report").) Plaintiffs' contention that the jury needs an expert's help to assess the "thousands of pages of Company handbooks and manuals [and] . . . multiplicity of performance review forms and job aid" (Pls.' Opp. at 8) is belied by the fact that Dr. Bielby himself did not conduct such a review.[2] Rather, Dr. Bielby's conclusion that the FedEx personnel system is

---

[2] As FedEx established in its Motion To Preclude, Dr. Bielby's review of FedEx's policies and procedures was deficient at best. (FedEx MIL No. 9 at 7, n.2.) Plaintiff's conclusory assertions that Dr. Bielby's review was "extensive" (Pls' Opp. at 24-25) cannot counter Dr. Bielby's own testimony demonstrating the minimal nature of his review. (*See generally*

standardized and centralized is a simple, common-sense conclusion based almost entirely upon testimony of other fact witnesses. (Bielby Report at 6-8, ¶¶ 10-14.) Indeed, Dr. Bielby's reliance on his review of Company handbooks is virtually non-existent -- he cites only once to a single company handbook in his overview of FedEx's personnel system. (*Id.* at 8, n.12.) Similarly, he cites only once to social science literature, for the obvious proposition that "large, centralized organizations" like FedEx tend to have "highly formalized and standardized" personnel systems.[3] (*Id.* at 6, ¶10.) As such, Dr. Bielby provides no "appreciable help" to the jury and his evidence on the uniformity and standardization of FedEx's personnel system should be excluded.

### 2. Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Regarding The "Vulnerability To Bias" That May Result From Discretionary Features In A Personnel System Are Appropriate Subjects For Expert Testimony.

Dr. Bielby's assertion that discretionary features in a personnel system "*can* be vulnerable to bias" is a matter of commonsense within the knowledge of the average person and should therefore be excluded. In a common refrain, plaintiffs have again misconstrued FedEx's arguments. Here, plaintiffs dedicate several paragraphs to rebutting "FedEx's contention that the discretionary and subjective nature of its personnel systems and policies is not at 'issue' in Phase I of this trial." (Pls.' Opp. at 12.) FedEx, however, made no such assertion. Rather, Dr. Bielby's proffered testimony on the subject of "vulnerability to bias" boils down to the somewhat

---

Deposition of William T. Bielby, Ph.D., taken October 16, 2006 & November 13, 2006, at 28:1-31:15; 76:4-84:25. ("Bielby Dep.")

[3]   *Humphreys v. Regents of the Univ. of Cal.*, No. C 04-03808 SI, 2006 WL 1867713, (N.D. Cal. July 6, 2006) is therefore inapposite. In *Humphreys*, this Court held that "proposed testimony about the University's deviation from good human resource practices is proper expert testimony under Rule 702." *Humphreys*, 2006 WL 18767713, at *2. Dr. Bielby's testimony at issue here -- that FedEx's personnel system is standardized and centralized -- is a far cry from complex testimony regarding "best human resource management practices." *See id.* Although Dr. Bielby does proffer testimony regarding best human resource practices, FedEx contends that such evidence is beyond Dr. Bielby's realm of expertise, not that it is an improper subject of expert testimony. Once again, plaintiffs have mischaracterized FedEx's arguments.

unremarkable contention that discretion in personnel decisions *could* permit a manager to discriminate, particularly where the manager is not monitored or held accountable for his or her decisions.[4] Noticeably, Dr. Bielby is not, as plaintiffs claim, offering testimony on the "degree of discretion" or "amount of discretion" actually permitted by the FedEx personnel system. (*See, e.g.*, Bielby Dep. at 68:17-20 ("I'm not going to testify that FedEx has too much discretion or too little discretion.").) Here, Dr. Bielby testifies that discretionary features in a personnel system may result in substantial barriers absent adequate monitoring and accountability -- a self-obvious statement that does not require expert testimony.[5] The related but separate issue of whether FedEx's actual accountability and monitoring is adequate to minimize any potential bias is a subject upon which expert testimony would assist the jury -- but, as discussed in Section II below, this is a subject on which Dr. Bielby is not qualified.

---

[4] Plaintiffs' attempts to distinguish *Green v. Kinney Shoe Corp.*, 715 F. Supp. 1122 (D.D.C. 1989) fail. Plaintiffs' primary argument against application of *Green* depends on the assumption that the principle set forth in that case -- that it is "clear to any reasonable person that a subjective [personnel] process *could enable* an employer to hide discriminatory intent" -- is applicable only to single-plaintiff cases. *See id.* at 1123-24. Such an argument, however, is logically flawed because the proposition that subjective or discretionary aspects of a personnel system may result in bias is in no way dependent on or affected by the number of plaintiffs in an employment discrimination case. Moreover, at issue here is only Dr. Bielby's general finding, based on social science research, that personnel systems in the abstract can be vulnerable to bias. This is, in principle, the same general conclusion that the *Green* court found to be obvious to a reasonable person and which the court therefore held was inappropriate expert subject matter. *Id.* Furthermore, plaintiffs' attempts to distinguish *Green* based solely on the fact that plaintiffs have brought this case as a class action runs contrary to the notion that Fed. R. of Civ. P. 23 is a rule of procedure that does not alter substance. Finally, FedEx has not asserted nor does *Green* stand for the proposition that subjectivity or discretion in personnel systems is irrelevant or unimportant; plaintiffs' second and third arguments against *Green* are therefore besides the point.

[5] *United States v. Hall*, 93 F.3d 1337 (7th Cir. 1996) is inapposite. *Hall* emphasized the importance of social science evidence regarding the phenomenon of false confessions -- a phenomenon that runs counter to the experience and commonsense understanding of the average juror. *Id.* at 1345 ("It was precisely because juries are unlikely to know that social scientists and psychologists have identified a personality disorder that will cause individuals to make false confessions that the testimony would have assisted the jury"). Thus, the social science testimony was important because it *contradicted* the average jurors' experience. Here, Dr. Bielby's testimony that discretion may be abused for the impermissible purpose of racial discrimination is not counter to commonsense, but simply a summation of the obvious.

Furthermore, contrary to plaintiffs' assertions, FedEx's arguments on this point do not hinge on the vague nature of Dr. Bielby's opinions regarding vulnerability to bias. FedEx contends that Dr. Bielby's "inability to give a definite opinion" is relevant, although not dispositive, to the finding that expert testimony is unhelpful to the jury. *United States v. Brewer*, 783 F.2d 841, 842 (9th Cir. 1986); *Rahm*, 993 F.2d at 1412 (citing *Brewer* for the proposition that "definiteness of opinion legitimately considered as one non-dispositive factor in determining admissibility" of expert testimony). The essential "gist" of FedEx's challenge on this point, however, remains that Dr. Bielby's assertions regarding the potential abuse of discretion for the improper purpose of racial discrimination are within the common knowledge of a layperson and therefore should be excluded.

   **3.**  **Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Regarding Overt Bias At FedEx Are Appropriate Subjects For Expert Testimony.**

Dr. Bielby's assertion, based solely on allegations contained in the deposition transcripts of two fact witnesses, that "blatant racism has not disappeared" is utterly self-evident and should be excluded. (Bielby Report at 35, ¶ 51.) Plaintiffs, however, in a transparent effort to exaggerate the import of Dr. Bielby's findings on this issue, declare that Dr. Bielby has done more than simply repeat the testimony of the two fact witnesses and has, in fact, "applied his social science expertise to several issues raised" by such testimony. (Pls.' Opp. at 15.) Review of Dr. Bielby's report, however, reveals this statement to be a gross exaggeration. Dr. Bielby's four page discussion of explicit bias at FedEx contains a mere two citations to social science literature, supporting respectively the uncomplicated assertions that (1) a company's discriminatory culture is unlikely to change absent substantial changes in firm environment and (2) overt racism among managers will undermine equal opportunity, contribute to a racially hostile environment, and signal a lack of management commitment to equal employment opportunity. (Bielby Report at

34, 35, ¶¶ 50-51.) The average layperson, unfortunately, is quite familiar with racial discrimination, and therefore, Dr. Bielby's testimony on this issue must be excluded because the subject of overt bias is not "so complicated as to *require* the testimony of an expert witness." *See Wilson v. Muckala*, 303 F.3d 1207, 1218 (10th Cir. 2002).

### B. Plaintiffs Have Not Shown That Dr. Bielby's Evidence Regarding Potential Bias In Discretionary Features Of FedEx's Personnel System Is Relevant To This Case, And Such Evidence Should Therefore Be Excluded.

Expert testimony is admissible only if it "is 'relevant to the task at hand,' i.e., that it logically advances a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*"); *see also Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993). This requirement has commonly been described as one of "fit" and is similar to "'the relevance requirement of Rule 401, which is applicable to all proffered evidence[,] [but] . . . goes beyond mere relevance . . . because it also requires expert testimony to have a valid connection to the pertinent inquiry." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 540 (citations omitted). Federal courts must therefore "exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced it speaks clearly and directly to an issue in dispute in the case." *Daubert II*, 43 F.3d at 1321, n.17.

Plaintiffs have utterly failed to disprove FedEx's contentions in its Motion that Dr. Bielby's proffered testimony regarding potential bias does not fit ***this case***. Plaintiffs rely wholly upon this Court's opinion in *Butler v. Home Depot, Inc.*, 984 F. Supp. 1257 (N.D. Cal. 1997) and the Ninth Circuit's opinion in *Dukes v. Wal-Mart, Inc.*, __ F.3d __, No. 04-16688, 2007 WL 329022, (9th Cir. Feb. 6, 2007) -- separate cases with distinct underlying facts -- to argue that Dr. Bielby's assertions logically fit the facts of ***this case***. (Pls.' Opp. at 16-17.) Moreover, this argument depends entirely on plaintiffs' underlying (and unsupported) presumption that "Dr. Bielby's testimony in this case . . .is very similar to the testimony he has proffered in other

cases." (Pls.' Opp. at 16.) ***This presumption, however, is incorrect.*** Indeed, much of Dr. Bielby's rebuttal to FedEx's expert Dr. Tetlock rests on the defense that Dr. Bielby is not making the same arguments *in this case*. (*See, e.g.* Rebuttal Expert Report of William T. Biebly, Ph.D., dated September 1, 2006, at 4 (implicitly recognizing that he is not asserting argument in this litigation that he has asserted in the past) ("Bielby Rebuttal Report."))[6] Thus, neither *Butler* or *Dukes* controls whether Dr. Bielby's current testimony -- different in substance -- "fits" the facts of the case at hand. Plaintiffs therefore have not shown the necessary fit required under *Daubert*.

Finally, plaintiffs' argument that Title VII precedents allows plaintiffs to proffer Dr. Bielby's testimony as part of their cumulative showing of discriminatory intent ***presupposes*** that Dr. Bielby's testimony regarding "vulnerability to bias" is relevant -- the very question at issue. (Pls.' Opp. at 17-19.) Plaintiffs surely cannot be arguing that any and all evidence they choose to present must be permitted regardless of whether it meets the threshold relevancy "fit" requirement under *Daubert*. Such an argument clearly runs counter to the Ninth Circuit's holding that federal courts must "exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced it speaks clearly and directly to an issue in dispute in the case." *Daubert II*, 43 F.3d at 1321, n.17. As FedEx demonstrated in its Motion, because Dr. Bielby's theories and findings do nothing to advance or support an adverse impact theory, and because his testimony also is unrelated to plaintiffs' disparate treatment theory, his testimony is not helpful to the trier of fact and must be excluded. Plaintiffs have not shown otherwise.

### C. Rule 403 Further Mandates Exclusion Of Dr. Bielby's Evidence Regarding Potential Bias In FedEx's Personnel System.

In determining the admissibility of expert evidence, it is particularly important that courts be mindful of Fed. R. Evid. 403, given that "'[e]xpert evidence can be both powerful and quite

---

[6] As discussed in FedEx's MIL No. 9 at 6-9, Dr. Bielby has, in this case, distanced himself from the theory of implicit bias, thereby significantly changing the substance of his usual proffered testimony.

misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'" *Daubert*, 509 U.S. at 595 (quoting Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)); *see also Daubert II*, 43 F.3d at 1321, n.17.

### 1. Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Regarding The "Vulnerability To Bias" That May Result From Discretionary Features In A Personnel System Are Not Unfairly Prejudicial.

Dr. Bielby's evidence regarding vulnerability is not only irrelevant but affirmatively harmful in its potential to mislead the jury regarding the burden of proof in employment discrimination cases. Contrary to plaintiffs' allegations, Dr. Bielby does implicitly begin with the expectation of bias in a personnel system.[7] In deposition, Dr. Bielby admitted that he starts with the presumption that "100 percent" of people suffer from negative racial stereotypes.[8] (Bielby Dep. at 159:14-15.) Moreover, he further admits that some discretion is necessary in all personnel processes. (Bielby Dep. at 62:21-24.) If (a) all personnel systems have discretionary aspects, (b) all people have bias, and (c) discretionary aspects of a personnel system make it vulnerable to such bias then, by implication, according to Dr. Bielby, all personnel systems begin

---

[7] Although plaintiffs' dispute this, asserting "[t]o the contrary, Professor Bielby notes whether a personnel system has those mechanisms and features that will check or limit actions based on bias *if the workplace contains such bias*," plaintiffs provide no citation. (Pls. Opp. at 20.)

[8] This demonstrates the quandary that Dr. Bielby finds himself in because of his efforts, as discussed in FedEx's Motion to Preclude, to distance himself from the theory of implicit bias. Despite explicitly stating that the theories of implicit racial bias are *not* the "foundation for [his] conclusion" that unmonitored discretion creates a vulnerability to bias in personnel decision-making (*see, e.g.,* Bielby Dep. at 373:12-374:9.), the theory occasionally resurfaces -- leading to internal inconsistencies in Dr. Bielby's own testimony.

On this point, plaintiffs are -- once again -- incorrect when they assert that Dr. Bielby only testified that he did not rely on the implicit association test. (Pls.' Opp. at 19.) In fact, contrary to plaintiffs' assertions, Dr. Bielby did testify, as FedEx stated in its Motion, that implicit bias was not the "foundation for my conclusion [regarding unmonitored discretion being the source of discriminatory decision-making]." (Bielby Dep. at 373:12-374:9.)

with the expectation of bias. Furthermore, contrary to plaintiffs' contentions, it is wholly consistent to assert that Dr. Bielby's proffered evidence is both unhelpful to the trier of fact and unfairly prejudicial. (Pls.' Opp. at 20.) Simply because an expert's proffered testimony is unnecessary does not mean that the testimony is inherently harmless, as FedEx established in its Motion. (*See* FedEx's MIL No. 9 at 10.) This evidence must therefore be excluded.

        **2.    Plaintiffs Have Failed To Demonstrate That Dr. Bielby's Assertions Concerning Statistical Analyses Conducted By Plaintiffs' Expert, Dr. Richard Drogin Are Not Unnecessary And Cumulative.**

Dr. Bielby's contention that statistical analyses by Dr. Drogin demonstrates adverse impact on FedEx's minority employees is merely a summary of Dr. Drogin's independent analysis and, as such, should be excluded "by considerations of undue delay, waste of time, [and] needless presentation of cumulative evidence." Indeed, despite plaintiffs unsupported assertions to the contrary, Dr. Bielby does not show causation for disparities in Dr. Drogin's statistical analysis -- Dr. Bielby simply concludes "social science research demonstrates that the exercise of discretion in personnel systems in the absence of adequate monitoring is vulnerable to bias against minoris, and ***Dr. Drogin's finding demonstrate that this phenomenon was indeed present at FedEx.***" (Bielby Report at 32, ¶ 47.) Dr. Bielby therefore simply repeats Dr. Drogin's evidence. Moreover, plaintiffs' contention that Dr. Bielby is an expert statistician is -- even if accurate -- irrelevant. (Pls.' Opp. at 22.) Plaintiffs' have not offered Dr. Bielby for his expertise in statistics and have made none of the necessary showing that he is so qualified under *Daubert*. This evidence must therefore be excluded.

**II.    PLAINTIFFS HAVE NOT SHOWN THAT DR. BIELBY IS QUALIFIED TO PROVIDE EXPERT EVIDENCE REGARDING THE ADEQUACY OF FEDEX'S PERSONNEL PRACTICES AND POLICIES, AND THIS EVIDENCE MUST THEREFORE BE EXCLUDED.**

Designation as an expert does not give a witness license to provide expert evidence in any and all scientific, technical or other specialized matters. *See, e.g., Bogosian v. Mercedes-Benz of*

*N.A., Inc.*, 104 F.3d 472, 476-78 (1st Cir. 1996) (affirming exclusion of expert evidence where witness' expertise did not extend to relevant field). Rather, when a witness who may be qualified as an expert in one field provides testimony addressing a subject beyond the realm of his known expertise, the court must exclude such evidence unless the expert can show he or she is qualified in that field as well. *See, e.g., Eagleston v. Guido*, 41 F.3d 865, 874 (2d Cir. 1994) (finding that witness with experience in sociology had failed to establish sufficient expertise in specific fields of criminology or domestic violence); *see also Wilkinson, v. Rosenthal & Co.*, 712 F. Supp. 474, 477-78 (E.D. Pa. 1989). Although Dr. Bielby may be qualified as an expert in one field (the social science theory of implicit bias),[9] he is not qualified to proffer opinions on a subject outside the field of his expertise (here, the adequacy of FedEx's monitoring and accountability policies and procedures). Plaintiffs have not -- and indeed, cannot -- demonstrate that Dr. Bielby is qualified to provide an expert opinion regarding FedEx's policies and procedures. Such evidence must therefore be excluded.

Grandstanding rhetoric regarding Dr. Bielby's reputation aside, plaintiffs ask this Court to find that Dr. Bielby is qualified to provide expert testimony as to the adequacy or validity of FedEx's personnel processes and procedures based almost entirely on (a) seven articles originally

---

[9] Plaintiffs' complete reliance on Dr. Bielby's social science expertise as well as the decisions in *Butler* and *Dukes* is misplaced -- because each is inapposite to the issue of Dr. Bielby's qualifications to opine on **the adequacy of FedEx's monitoring and accountability procedures**. Unlike the testimony at issue here, Dr. Bielby's testimony in *Butler* and *Dukes* primarily concerned bias and stereotyping. *See Butler*, 984 F. Supp. at 1265 (permitting Dr. Bielby's testimony regarding "the interplay of gender stereotyping and subjective employment practices, in addition to the effect of such stereotyping on the gender composition of the workforce"); *Dukes*, 2007 WL 329022, at *6 (noting that plaintiffs presented Dr. Bielby's testimony "to interpret and explain the facts that suggest that Wal-Mart has and promotes a strong corporate culture - a culture that may include gender stereotyping"). **Neither decision discusses Dr. Bielby's qualifications to opine specifically on the adequacy and validity of a corporation's monitoring and accountability procedures.** Accordingly, the fact that this Court has previously found Dr. Bielby qualified to opine on the social science of stereotyping does not control the determination of Dr. Bielby's qualifications to opine on best practices in human resources.

published *more than twenty years ago* and (b) a course on organizational behavior taught by Dr. Bielby while a visiting member of the U.C.L.A. School of Management *in 1985*.[10] (Pls.' Opp. at 4, n.1, 5; Bielby Report, Ex. B (curriculum vitae).)  Indeed, the sparsity of Dr. Bielby's expertise in this area is made quite clear by plaintiffs' attempts to characterize the latter experience as "noteworthy." (Pls.' Opp. at 5.)

Dr. Bielby, however, by his own admission, lacks the expertise possessed by individuals who are qualified to opine on the adequacy and validity of human resource policies and practices. First, Dr. Bielby lacks the relevant education in human resources and industrial psychology to opine on best practices in human resource policies and procedures. He, unlike Dr. Hayward or Dr. Campion, does not possess a Ph.D. in Human Resources or Industrial Psychology.[11] (*See* Bielby Report, Ex. B (curriculum vitae).) Indeed, in *Humphreys*, this Court, in permitting expert testimony regarding best human resource management practices, emphasized the expert's qualifications in the relevant field of human resources and industrial/organizational psychology -- qualifications Dr. Bielby does not have. *Humphreys*, 2006 WL 1867713 at *3 (N.D. Cal.) (noting that the witness holds a Ph.D. in Industrial/Organizational Psychology, worked for 13 years in the

---

[10]    Plaintiffs also generally reference classes taught by Dr. Bielby, but fail to disclose details as to the time period or specific subject matter; the relevance of these courses to Dr. Bielby's current expertise in analyzing personnel procedures is therefore unknown. (*See* Pls.' Opp. at 5.)

[11]    Plaintiffs seem to believe Dr. Bielby's academic experience in the field of "organizational behavior" are particularly relevant. (*See, e.g.*, Pls.' Opp. at 5.) The field of organizational behavior, however, focuses on the study of individual and group dynamics in organizational settings, not on best human resource practices. Moreover, plaintiffs put significant -- but misplaced -- emphasis on the fact that FedEx's expert, Dr. Tetlock, also has Ph.D. in Social Science and not Industrial Psychology. (*See, e.g.*, Pls.' Opp. at 2, 14.) Dr. Tetlock, unlike Dr. Bielby, does not attempt to opine on human resources best practices. Rather, Dr. Tetlock is proffering expert testimony that FedEx's monitoring and accountability measures are -- at the least -- greater than those used in the laboratory tests upon which Dr. Bielby relies. (*See generally* Expert Report of Phillip E. Tetlock, dated June 26, 2006 at 27-39, ¶¶ 54-72.) Dr. Tetlock is qualified to opine on this issue because he, unlike Dr. Bielby, has actually conducted original scientific research on the adequacy of monitoring and accountability measures to limit bias. (*See id.* at 7-8, ¶ 12.)

staffing and employment industry, was founding partner of a consulting firm for staffing issues, and testified and published extensively on human resource issues).

Second, Dr. Bielby, unlike FedEx's expert Jan Duffy and plaintiffs' expert Nita French, has no practical experience implementing or designing such procedures. (*See, e.g.,* Bielby Dep. at 32:16-21 ("Q. Do you allege that you have any expertise in the field of HR and diversity policies and practices? A. Not as someone who goes in and sets up programs for companies, which is what I understand much of what [Ms. Duffy] does. That's something I don't do."); 33:1-7 ("Q. fair to say that Ms. Duffy has done more work in designing and implementing state-of-the-art personnel procedures than you have? A. . . . she does that; I don't. I believe that's safe to say."); 242:19-21 ("Q. . . . Did you ever design a performance evaluation monitoring system yourself? No. that's not what I do.").}

Third, Dr. Bielby lacks material experience studying or analyzing corporate human resource best practices. (*See, e.g., id.* 32:22-25 ("I don't write for practitioner journals" in the HR field); 242:22-25 ("Q. Have you ever analyzed the effectiveness of a specific company's performance evaluation monitoring system? A. No.").) Indeed, by Dr. Bielby's own admission, he is "not a person that goes out and does analyses of specific companies *apart from a litigation context.*" (*Id.* at 48:7-16; *see also id..* at 45:14-20 (admitting that "*my experience (with EEO policies) is primarily from litigation.* It's not a representative sample of companies..."); *see also* Deposition of William T. Bielby, Ph.D., taken October 14, 2004 at 238:14-18 ("You know, my opportunities for doing detailed analyses of a performance evaluation system is pretty much limited to litigation contexts.") ("Bielby Dep. II") (attached hereto as Exhibit A to Supplemental Becker Declaration).)[12] Plaintiffs simply cannot counter Dr. Bielby's own admission that he

---

[12] Materials cited herein that were not previously attached to the Becker Declaration in support of FedEx's Motion in Limine, nor to the Wallace Declaration filed in support of

lacks sufficient knowledge to compare FedEx's monitoring and accountability procedures to human resource best practices:

> [I]n general, you know, I -- I don't get access to a representative sample of companies in order to make comparisons. . . . So I really don't have a good basis for saying -- you know, for making judgments on the extent to which other companies that are as labor-intensive as FedEx and as big as FedEx are or are not more sophisticated.

(Bielby Dep. at 39:10-40:11.) Indeed, his unfamiliarity with industry practice was made quite clear by his repeated inability at deposition to specify companies with particular monitoring or accountability practices superior to those of FedEx.[13] Perhaps most shockingly, when asked at

---

plaintiffs' Opposition thereto, are attached to the accompanying Supplemental Declaration of Evelyn L. Becker.

[13] Contrary to plaintiffs' assertion at page 5, footnote 2 of their Opposition, review of the deposition transcript demonstrates that Dr. Bielby was, in fact, repeatedly unable to identify any specific companies with better policies or practices than FedEx. (*See, e.g.* Bielby Dep. at 41:7-13 ("Q. ... Now, can you identify any specific companies that have better employee evaluation procedures than FedEx? A. And there, I will say that, while I've -- I think that people who design those things are better able to make that judgment than I am"); 41:16-42:3 ("Q. . . . .I'm asking you whether, in your opinion -- because you do express some opinions with respect to the performance evaluation system here --- can you identify any company in American industry of which you are aware that has a better employee performance evaluation system than Federal Express? A. I have no basis for making -- expressing an opinion on that, one way or the other. . . . I have not -- no. I have not done -- that's not what I do, is analyses of performance evaluation systems"); 42:6-43:12 ("Q. . . . Do you have any opinions as to whether there's any company in American that has better . . management training in how to do your job and your duties and obligations as a manager. A. . . . . I think my answer is the same. I have no opinion in terms of what I see, doing the kind of work I do"); 48:7-16 ("Q. All right. With respect to manager accountability, can you identify any company in the United States with better policies and practices than Federal Express? A. I -- it's really difficult for me to answer your questions when you're -- when you're asking for the names of specific companies. I'm not a person that goes out and does analyses of specific companies apart from a litigation context."); 51:14-23 ("Q. And you haven't done any analysis or study on that issue? That is, of whether there is any company out there that has a better system of manager accountability than Fed. A. No. No. Q. And you're not going to be prepared to give any opinion that says that there are specific companies out there that have better account --- measures of manager accountability than FedEx. A. No.).)

As plaintiffs point out, Dr. Bielby was ultimately able to provide two examples of specific companies he believed to have superior practices to FedEx. First, however, this does not detract from his repeated inability, as discussed above, to provide examples on the multiple other occasions requested by defense counsel. Moreover, the fact that -- in two days of deposition -- Dr. Bielby was able to provide a mere two examples of companies he believed to have superior personnel practices only further demonstrates the minimal nature of Dr. Bielby's 'expertise' in this area. Second, plaintiffs fail to disclose the more significant fact -- that Dr. Bielby could not provide detailed analysis to support the validity of his conclusory statements that Wal-Mart and

14
Defendant's Reply (Motion in Limine No. 9)
Case Nos. C 03-02659 SI; C 03-02878 SI

his deposition prior to class certification to identify any specific company that employed a monitoring procedure recommended by Dr. Bielby, he could not recall a specific company but responded, *"we could go into Google* and type in performance evaluation audit best practices and I wouldn't be surprised if something comes up form the management literature that identifies specific companies as exemplars for doing this kind of thing." (Bielby Depo. II. at 62:3-9; 69:10-70:11.) Is it now the case that any individual who can Google a topic is an expert who may testify in court on that issue? Dr. Bielby's testimony on FedEx's personnel practice and policies should therefore be excluded.

## CONCLUSION

For the reasons set forth above, FedEx respectfully requests that the Court preclude Dr. Bielby's evidence regarding bias at FedEx in its entirety.

---

Boeing had superior practices. For example, although Dr. Bielby identified Wal-Mart as having a better posting process, when asked for details on how specifically the procedure was superior, Dr. Bielby was unable to provide helpful, substantive comparisons. (*See id.* at 36:19-37:2 ("Q. Okay. So it's a posting system, and it has no adverse impact. And that's why its better? A. And there were clear guidelines and so on. Q. Clear guidelines for what? A. For making decisions, for making selection decisions. Q. Like what? A. It's been several years since I've worked on that case."); 39:4-9 (Q. [Wal-Mart's] monitoring system was more advanced? Q. Well, perhaps the degree to which exceptions were allowed and happened. I would really have to go back. That was three years ago, four or five years ago, when I actually studied that system in any detail." ).) The same is true of Dr. Bielby's other example, Boeing. Dr. Bielby offered only general testimony that Boeing did not have the same "disconnect" between utilization analysis and practice that he believes is present at FedEx, but could not provide further detail. (*See id.* at 47:3-48:6 ("Q. What was the linkage at Boeing between utilization analyses and practice and procedure? A. You're asking me to recall materials that I analyzed three, four years ago and that are no longer available to me. It's not something that I issued a written report on. I'm telling you that, it's my recollection, sitting here today, of the materials that I looked at at that time, that it was much more sophisticated than what I've seen here. Q. But you don't know how because you can't identify what the linkage was? . . . A. Well, I had those materials available to me at one time. I don't anymore. . . . I cannot give you an more than I've already given you. I've given you my best recollection, sitting here now. Q. Any other way in which you believe Boeing EEO policies were better or are better than FedEx's? A. Not that I can think of, sitting here today").)

Dated: February 9, 2007

**FEDERAL EXPRESS CORPORATION**

By: /s/ Frederick Douglas
Frederick Douglas
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road
Building B, 3rd Floor
Memphis, Tennessee, 38125

Gilmore F. Diekmann, Jr.
Seyfarth Shaw LLP
560 Mission Street, Suite 3100
San Francisco, California 94105

Evelyn L. Becker
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

Attorneys for Defendant Federal Express Corporation