# Exhibit 1
# Part 1

1    *[Names and addresses of counsel listed in signature page]*

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    DERRICK SATCHELL, KALINI BOYKIN,           Case No.:  C03-2659 SI; C 03-2878 SI
     VALERIE BROWN, RICK GONZALES,
8    CYNTHIA GUERRERO, RACHEL HUTCHINS,         CLASS ACTION
     TYRONE MERRIT, KELVIN SMITH, SR., and
9    KEN STEVENSON, on behalf of themselves and  [Proposed] Consent Decree
     all others similarly situated,
10
                  Plaintiffs,
11
     vs.
12
     FEDERAL EXPRESS CORPORATION, d/b/a
13   FedEx Express, a Delaware Corporation,

14                Defendant.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  I.     INTRODUCTION ...................................................................................................1

2  II.    LITIGATION BACKGROUND ..............................................................................1

3         A.    The *Satchell* Litigation ...............................................................................1

4         B.    The *Caldwell* Litigation ..............................................................................1

5         C.    The Consolidated Proceedings .....................................................................2

6  III.   PURPOSES OF THE CONSENT DECREE ............................................................7

7  IV.    DEFINITIONS ........................................................................................................7

8  V.     JURISDICTION ....................................................................................................10

9  VI.    TERM OF DECREE ..............................................................................................11

10  VII.  SETTLEMENT CLASSES AND INJUCTIVE RELIEF CLASSES .....................11

11  VIII. RELEASE OF CLAIMS ........................................................................................12

12         A.    Release of Claims by Settlement Class. ....................................................12

13         B.    Individual Claims of Class Representatives ...............................................13

14         C.    No Bar to Future Claims. ...........................................................................13

15  IX.   MISCELLANEOUS PROVISIONS ......................................................................14

16         A.    No Admission of Liability. ........................................................................14

17         B.    No Employment Contract ...........................................................................14

18         C.    Modification and Severability of the Consent Decree. ..............................14

19         D.    Duty To Support and Defend the Decree. ..................................................15

20         E.    Execution In Counterparts. ........................................................................15

21  X.    GENERAL EQUITABLE PROVISIONS ..............................................................15

22  XI.   SELECTION PRACTICES ...................................................................................17

23         A.    Elimination of the Basic Skills Test ..........................................................17

24         B.    Casual Employees ......................................................................................17

25         C.    Posting of and Applying for Hourly Positions ...........................................18

26         D.    Promotion to Management ..........................................................................19

27         E.    Role of Managers in the Promotion Process for Hourly Positions .............19

28         F.    Adherence to Rules regarding Priority Group and CEV Score ...................20

i

XII.    PERFORMANCE EVALUATIONS ......................................................................20

XIII.   MANAGER EVALUATION ON EEO ................................................................22

XIV.    DISCIPLINE ..................................................................................................22

    A.    Discipline Policies and Procedures ........................................................22

XV.     COMPLAINT PROCEDURES/RELATED ISSUES .........................................23

XVI.    GUARANTEED FAIR TREATMENT SYSTEM ..............................................25

XVII.   INTERNAL COMPLIANCE/MONITORING PANEL .......................................25

XVIII.  REPORTING AND RECORD KEEPING ........................................................26

    A.    Documents to be Preserved for the Duration of the Decree ...................26

    B.    Access to Documents .............................................................................27

    C.    Reporting Schedule ................................................................................28

    D.    Contents of the Progress Report .............................................................28

XIX.    DISPUTE RESOLUTION AND ENFORCEMENT PROCEDURES ..................30

XX.     IMPLEMENTATION AND COMMUNICATION OF COMMITMENT TO DIVERSITY, EQUAL EMPLOYMENT OPPORTUNITY AND REQUIREMENTS OF CONSENT DECREE ..............................................................................33

XXI.    TRAINING OF MANAGEMENT REGARDING EEO .....................................33

XXII.   MONETARY RELIEF, NOTICE AND CLAIMS PROCEDURE .......................34

    A.    Payment of the Settlement Fund .............................................................34

    B.    Distribution of Settlement Fund ..............................................................36

    C.    Notice .....................................................................................................36

    D.    Objections and Opt-Outs ........................................................................37

    E.    Claims Administration ............................................................................39

    F.    Submissions of Claim Forms ..................................................................40

    G.    Deceased Claimants ................................................................................40

    H.    Determining Eligibility ..........................................................................41

    I.    Late-Filed Claims ...................................................................................41

    J.    Appeals of Claims Eligibility .................................................................41

    K.    Claimant Information Provided by FedEx Express ..................................42

L.     Allocation Plan ................................................................................42

M.    Distribution of the Monetary Awards ..........................................43

N.    Allocation of Monetary Awards....................................................44

O.    Confidentiality of Claimant Information ......................................44

P.    *Cy Pres* Fund ...............................................................................44

Q.    Report from Claims Administrator ...............................................45

XXIII. PAYMENT OF FEES AND COSTS TO SPECIAL MASTER, MONITORING
COUNSEL AND CLASS COUNSEL.....................................................................45

A.    Payment to Special Master............................................................45

B.    Award of Fees, Costs and Expenses to Class Counsel.................45

C.    Payment of Fees, Expenses and Costs for Work Performed after Approval Date..........46

## I. INTRODUCTION

As a result of negotiations supervised by a mediator, the parties have reached a voluntary agreement that is contained in this Consent Decree.

## II. LITIGATION BACKGROUND

### A. The *Satchell* Litigation

On December 12, 2002, Plaintiffs filed the *Satchell* case in the Alameda County Superior Court alleging violations of the California Fair Employment and Housing Act (FEHA) and the California Equal Pay Act, and asserting various common law causes of action. The Complaint was brought on behalf of a putative class of women and minority individuals in California who alleged that defendant FedEx Express (Defendant) and related entities and individual managers discriminate against women and minorities on the basis of sex, race, color, and/or national origin, with respect to job assignment, compensation, promotion and other terms and conditions of employment, by maintaining a system for making decisions about promotions, assignments, transfers, discipline and compensation which is excessively subjective and which has had a disparate impact on non-Caucasian employees, and through which defendants discriminate against women and minority employees by denying them the same opportunities for job assignments, upward mobility and compensation afforded to similarly situated Caucasian and male employees.

On May 18, 2003, Plaintiffs filed their First Amended Complaint eliminating the statutory claims of discrimination on the basis of sex, as well as several of the common law claims, and dropping the individual defendants named in the original complaint.

On June 6, 2003, Defendants removed the case to the Northern District of California pursuant to 28 U.S.C. §§ 1332 and 1441(b).

### B. The *Caldwell* Litigation

On June 19, 2003, Plaintiffs filed the *Caldwell* case in the Northern District of California alleging violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Eight named plaintiffs brought the Complaint on behalf of a putative class of African American and Latino individuals and made similar allegations to those in the *Satchell* complaint, but asserted that

1

1   Defendants maintained their discriminatory policies on a nationwide basis. On June 25, 2003,

2   Plaintiffs filed their First Amended Complaint in the *Caldwell* case, adding as class representatives six

3   of the *Satchell* plaintiffs, all African American or Latino, and twenty-four additional named plaintiffs.

4   In addition, the First Amended Complaint asserted claims under FEHA on behalf of class members

5   who worked for Defendant in California.

6       **C.**    **The Consolidated Proceedings**

7         On September 25, 2003, the Court issued an order relating the *Caldwell* and *Satchell* cases, and

8   on November 13, 2003, pursuant to a stipulation of the parties, the cases were consolidated for all

9   purposes.

10         Plaintiffs' First Consolidated Amended Complaint was filed on November 12, 2003. The

11   Consolidated Complaint dropped all plaintiffs with claims arising outside the State of California,

12   retained nine named class representatives, and dropped all defendants except FedEx Express. The

13   named plaintiffs were Derrick Satchell, Kalini Boykin, Valerie Brown, Rick Gonzales, Cynthia

14   Guerrero, Rachel Hutchins, Daniel Sherman, Kelvin Smith, Sr., and Ken Stevenson.[1] In addition, the

15   Consolidated Complaint limited its claims and the scope of the putative class to Defendant's Western

16   Region. The Consolidated Complaint asserted claims on behalf of two classes, a class of hourly

17   employees and a class of salaried low-level managerial employees.

18         Throughout the first half of 2004, the parties conducted discovery relating to class certification

19   issues. Plaintiffs took the depositions of approximately 43 30(b)(6) designees and managers.

20   Defendant deposed the eight class representatives in the consolidated action.

21         On September 11, 2004, Plaintiffs filed their motion for class certification. Plaintiffs supported

22   their motion with, inter alia, declarations of class representatives and putative class members, excerpts

23   of deposition testimony from FedEx Express managers, documents obtained from FedEx Express

24   during discovery, and three declarations from expert witnesses. Among other evidence, Plaintiffs

25   presented an expert analysis of Defendant's "Basic Skills Tests" (BST) passage of which was a

26

27   --------

28   [1] On March 19, 2004, plaintiff Daniel Sherman voluntarily dismissed his claims without prejudice.

prerequisite to advancement to certain positions at FedEx Express. Plaintiffs' expert sought to show that the BST was not job related and had disproportionately excluded African Americans and Latinos from opportunities for advancement based on factors unrelated to their ability to perform. Defendant vigorously opposed Plaintiffs' class certification motion. The parties filed numerous briefs and supplemental briefs.

While the class certification motion was pending, Defendant separately sought summary judgment as to six of the named plaintiffs,[2] asserting that there was insufficient evidence in the record to support their claims. These motions were litigated throughout the fall of 2004 and winter of 2005. Plaintiffs moved to compel discovery, and sought relief from the motions pending further discovery under Fed. R. Civ. P. 56(f).

On January 19, 2005, the Court heard argument on the motion for class certification, some of the motions for summary judgment, and the rule 56(f) motion.

On March 21, 2005, the Court granted Plaintiffs' motion to compel and Rule 56(f) motion.

On September 28, 2005, the Court issued orders granting class certification and denying Defendant's motions for Summary Judgment pending further discovery. In its class certification order, the court certified two classes:

> 1. A "Minority Employee Class" consisting of all African-American and Latino Handlers, Freight Handlers, Material Handlers, Checker-Sorters, Customer Service Agents, Couriers, Swing Drivers, Ramp Transport Drivers, Ramp Area Drivers, Shuttle Drivers, Dangerous Goods Agents, Information Agents, Operations Agents, Ramp Agents, Service Assurance Agents, Truck Control Agents, Trace Representatives,[3] Input Auditors, Team Leaders, and Dispatchers, working in defendant's Western Region[3], who are or were employed during the class period, who allege claims of employment discrimination in violation of Title VII of the

---

[2] Defendant did not seek summary judgment as to the claims of Plaintiffs Derrick Satchell and Rachel Hutchins.

[3] As set forth in Footnote 6 of the court's class certification order, the Western Region is comprised of Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, New Mexico, Oregon, part of Texas, Utah, Washington, and Wyoming. From 1999 to on or about November 2003, the Western Region was comprised of only six states: California, Hawaii, parts of Washington, Oregon, Alaska, and Nevada.

3

Civil Rights Act of 1964 (both disparate impact and disparate treatment), 42 U.S.C. § 1981, and for those class members working, or who worked, in California, the California Fair Employment and Housing Act; and

2. An "African-American Lower-Level Manager Class" consisting of all African-American Operations Managers working in defendant's Western Region during the class period who allege claims of employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (both disparate impact and disparate treatment), 42 U.S.C. § 1981, and for those class members working, or who worked, in California, the California Fair Employment and Housing Act.

The court certified Plaintiffs' Title VII, § 1981, and FEHA claims for class treatment, and set forth the following liability periods for each claim for each certified class: for Plaintiffs' Title VII claims, a class period beginning June 20, 2002 for the Minority Employee Class and a class period beginning July 10, 2002 for the African-American Lower Manager Class; for Plaintiffs' FEHA claims, a class period beginning June 13, 2001 for the Minority Employee Class and a class period beginning July 31, 2001 for the African-American Lower Manager Class; for Plaintiffs' claims under Section 1981, a class period beginning October 17, 1999 for both classes with respect to compensation claims; a class period beginning October 17, 1999 for promotion claims by class members alleging denial of promotion from one permanent hourly position to another permanent hourly position; a class period beginning January 1, 2002 for promotion claims by class members alleging denial of promotion from casual positions to permanent positions; and a class period beginning January 1, 2002 for promotion claims by class members alleging denial of promotion from permanent hourly positions to permanent salaried positions. In addition, the Court instructed Plaintiffs to amend the complaint to add a class representative who had failed the BST.

On October 12, 2005, Plaintiffs filed their Second Consolidated Amended Complaint. In compliance with the Court's class certification order, the Complaint added Tyrone Merritt, who had failed the BST, as a class representative of those who had failed the BST.

On October 26, 2005, Defendant filed its Answer to the Complaint, denying all allegations of discrimination and disparate impact.

Defendant sought to appeal the Court's class certification order to the Ninth Circuit Court of Appeals pursuant to Fed. Rule Civ. P. 23(f), and, on October 14, 2005, sought a stay of the district

court proceedings pending the outcome of that appeal. The Court denied the motion for a stay on November 23, 2005. The Ninth Circuit Court of Appeals denied the Rule 23(f) petition on December 12, 2005.

Throughout the end of 2005 and all of 2006 the parties conducted discovery concerning the merits of Plaintiffs' individual and class claims. The discovery was broad, extensive, and thorough. The discovery included requests for production of documents, interrogatories, contention interrogatories, requests for admissions, disclosures pursuant to Rule 26, and extensive expert discovery.

Discovery included the production of extensive documents from Plaintiffs and Defendant including production of computerized personnel and payroll data from 1997 through 2006, relating to Defendant's Western Region. In addition to the volumes of computer data, several hundreds of thousands of pages of documents were produced.

Deposition discovery was extensive. Between them, the Parties took approximately 193 depositions, including the Class Representatives, class members, and FedEx Express managers. Pursuant to Rule 30(b)(6), Class Counsel deposed Defendant through its designated representatives on a variety of topics, including Defendant's (1) personnel policies, (2) evaluations, (3) training, (4) computerized records, (5) retention of documents, (6) the BST, and (7) the reasons for employment actions against specified class members.

In June, September, and December 2006, and January 2007, the parties served and filed expert reports, rebuttal expert reports, and surrebuttal expert reports. Plaintiffs submitted expert reports from Dr. Richard Drogin, a statistician; Dr. Nita French, an industrial organizational psychologist; Dr. William Bielby, a sociologist; Dr. Anthony Greenwald, a social psychologist, Dr. Sheldon Zedeck, an industrial organizational psychologist; and Dr. Marc Bendick, a labor economist. Defendant submitted expert reports from Dr. Mary Baker, a labor economist and statistician, Dr. Michael Campion, an industrial organizational psychologist; Dr. Philip Tetlock, a psychologist; Dr. Nancy

Tippins, an industrial and organizational psychologist, and Jan Duffy, a management practices specialist. There was extensive expert discovery.

On September 19, 2006, the Court granted Plaintiffs' motion to amend the class certification order with respect to the scope of the promotion claims. On November 30, 2006, Plaintiffs filed a Statement Regarding Promotions Claims to be litigated.

On November 14, 2006, the Court granted Plaintiffs' motion for leave to file a Third Consolidated Amended Complaint. This Complaint eliminated the Class FEHA claim and broke the Title VII cause of action into separate claims for disparate impact and disparate treatment.

In the winter of 2006, the parties exchanged lists of trial exhibits. The parties also exchanged proposed jury verdict forms. In December 2006 and January 2007, the parties briefed numerous motions in limine.

The Plaintiffs have vigorously prosecuted this case, and Defendant has vigorously contested it. All pretrial discovery was completed, numerous pre-trial motions were ruled upon, and the parties were prepared for trial. As a result, the parties were able to assess reliably the relative merits of the claims of the Plaintiffs and the certified Classes, and of Defendant's defenses.

At the instruction of the Court, the parties participated in negotiations with the assistance of an experienced mediator: Hunter Hughes of Atlanta, Georgia. The parties had face-to-face sessions in April 2006, December 2006, February 2007, and March 2007. Under the supervision of the mediator, these negotiations have been conducted at arms length and without collusion. These efforts resulted in an agreement to settle this action. The terms of the parties' agreement are contained in this Consent Decree.

The parties agree that the formal and informal discovery conducted in this action — the depositions taken by both sides, the documents produced, the expert witness reports, and the information exchanged during mediation — are sufficient to assess reliably the merits of the respective

parties' positions and to compromise the issues on a fair and equitable basis. As reflected by the signatures of counsel at the end of this document, the parties have consented to the entry of this Decree.

## III.  PURPOSES OF THE CONSENT DECREE

The parties have entered into the Consent Decree for the following purposes:

A.    To resolve all disputes covered by this Consent Decree in such a way as to avoid further expensive and protracted litigation;

B.    To use Best Efforts to achieve equal employment opportunity for African Americans and Latinos working within the DGO and AGFS Divisions of FedEx Express' Western Region;

C.    To use Best Efforts within the DGO and AGFS Divisions of FedEx Express' Western Region to compensate, discipline, evaluate, and promote African Americans and Latinos on a non-discriminatory basis;

D.    To create an expedited procedure for distributing a monetary settlement to eligible members of the Settlement Class and for implementing equitable relief pursuant to the terms of this Decree; and

E.    To provide finality to the resolution of all class claims and defenses asserted in this action.

## IV.    DEFINITIONS

A.    "Adverse Impact" shall be defined in a manner consistent with Title VII law.

B.    "African American" means all persons having origins in any of the black racial groups of Africa.

C.    "Approval Date" means the date upon which the Court signs this Decree after having determined that it is fair, adequate and reasonable, not to be earlier than One Hundred days following the Preliminary Approval.

D.    "Best Efforts" means all reasonable steps necessary to comply with the specific objective to which the Best Efforts are directed.

E.    "Civil Action" means Satchell v. FedEx Express, Case Nos. C03-2659 SI and Caldwell

v. FedEx Express C03-2878 SI, N. D. Cal.

F.    "Claims Administrator" means Settlement Services, Inc. of Tallahassee, Florida.

G.    "Class" is used interchangeably with Settlement Class and has the same meaning. "Settlement Class" is defined in Section VII of this Consent Decree.

H.    "Class Counsel" means Altshuler Berzon LLP; Lieff, Cabraser, Heimann & Bernstein, LLP; Law Offices of John L. Burris; Law Offices of Kay McKenzie Parker; Law Offices of Waukeen McCoy; Law Offices of Michael S. Davis; Schneider and Wallace; and Barry Goldstein, of counsel to Goldstein, Demchak, Baller, Borgen & Dardarian.

I.    "Class Member Hourly Position" means any of the following jobs: Handlers, Freight Handlers, Material Handlers, Checker-Sorters, Customer Service Agents, Couriers, Swing Drivers, Ramp Transport Drivers, Ramp Area Drivers, Shuttle Drivers, Dangerous Goods Agents, Information Agents, Operations Agents, Ramp Agents, Service Assurance Agents, Truck Control Agents, Trace Representatives, Import Auditors, Team Leaders, and Dispatchers in the Western Region.

J.    "Class Representatives" or "Plaintiffs" means Derrick Satchell, Kalini Boykin, Valerie Brown, Rick Gonzales, Cynthia Guerrero, Rachel Hutchins, Tyrone Merritt, Kelvin Smith, Sr., and Ken Stevenson.

K.    "COMATS" are the AGFS and DGO locations that comprise the Western Region for purposes of this Decree.  A list of Western Region COMATS is attached as Appendix A.  Those in Arizona, Colorado, Idaho, Montana, New Mexico, Texas, Utah, and Wyoming became part of the Western Region on or about October 12, 2003.

L.    "Courier" includes Courier/DOT; Courier/Handler; Courier/Handler/Non-DOT; Courier/Non-Driver; Courier Feeder Agent DOT; Courier/Swing Driver/CDL; Courier/Non-DOT; Courier Feeder Agent Non-DOT; Courier/Handler DOT/CDL; Courier/DOT/CDL; Courier Feeder DOT/CDL; Courier/Ramp Agent/Non-DOT; Courier/Ramp Agent/CDL; and Courier/Ramp Agent/DOT.

M.    "Court" means the United States District Court for the Northern District of California, San Francisco Division.

N.    "Decree Year" means the one-year period from the Approval Date or the anniversary of

[PROPOSED] CONSENT DECREE - CASE NO.: C03-2659 SI; C 03-2878 SI

the Approval Date until the next anniversary of the Approval Date.  For example, "Decree Year One" would be the one-year period from the Approval Date until the first anniversary of the Approval Date.

O.      "Fairness Hearing" shall be the hearing at which the Court decides whether or not to grant final approval to the Consent Decree.

P.      "FedEx Express" or "Company" means Federal Express Corporation.

Q.      "Final Approval" means the signing of this Decree on the Approval Date by the Court, and, if any objection to this Consent Decree is timely filed by any member of the Settlement Class, (1) the expiration of the time for filing of a direct appeal from the Court's approval of the Decree without the filing of a notice of appeal, or (2) if a timely direct appeal is filed, the final resolution of that appeal (including any requests for rehearing and/or petitions for writ of certiorari), resulting in the final judicial approval of the Consent Decree.

R.      "Handler" includes Handler/DOT; Handler/non-DOT; and Handler DOT/CDL.

S.      "Latino" means all persons of Mexican, Puerto Rican, Cuban, Central American, South American or other Spanish culture or origin, regardless of race.

T.      "Management Rationale," in the context of a Guaranteed Fair Treatment proceeding, means the documentation submitted by management to the relevant GFTP decision-maker(s), which sets forth the facts, circumstances, policies and other relevant information upon which management based the challenged employment decision.

U.      "Manager" includes Manager BSC, Manager Dispatch, Manager Remote Ops/CDL, Manager Dispatch/A, Manager Hub Operations, Manager Ramp Operations/Prm/AGFS/CDL, Manager Hub International Outbound Operations, Manager Station Operations/Prm/DOT/CDL, Manager Ram Operations/AGFS Prm/CDL, Manager Regional Sort Operations/Prem, Manager Station Operations/CDL, Manager Ramp Operations/CDL, Manager Dispatch Prem Loc, Manager Station Operations/Non-DOT/Prem, Manager Station Operations/Non-DOT, Manager Ramp Operations/Non-DOT, Manager Ramp Operations/Premium/CDL, Manager BSC/Premium Loc, Manager Station/Ramp Operations/CDL, Manager Dispatch/AGT&T, Manager Hub Operations/non-DOT, Manager Station Operations/CDL/Vol, Manager Station Operations/Non-DOT/Vol, Manager Retail Operations, Manager Sort/Support Operations, Manager Station Operations/CDL.

V.     "Minority" means all African Americans and Latinos.

W.     "Monitoring Counsel" means John Burris, James Finberg, Barry Goldstein, and Guy Wallace. That group of lawyers will have sole and exclusive authority to act on behalf of the Class on matters of compliance or non-compliance with this Decree.

X.     "Monitoring Panel" means the group described in Section XVII of the Decree.

Y.     "OLCC" means any On Line Compliment/Counseling electronically recorded in FedEx Express's PRISM database.

Z.     "Party" or "Parties" means the named Class Representatives and Federal Express Corporation, d/b/a FedEx Express.

AA.    "Preliminary Approval Date" means the date upon which the Court enters an Order preliminarily approving this Decree, directing notice and an opportunity for persons falling within the definition of the Settlement Class to opt out of the Settlement Class or submit an objection to the Decree, and setting a fairness hearing.

BB.    "Release" means the Release of claims set forth in Section VIII of the Decree.

CC.    "Scheduled Reports" means the progress reports described in Section XVIII.D on the schedule set forth in Section XVIII.C.

DD.    "Service Agent" includes Service Agent/DOT; Service Agent/Non-DOT; Senior Service Agent/DOT; Senior Service Agent/non-DOT; Service Agent/Non-DOT/non-IPP; and Senior Service Agent/Non-DOT/non-IPP.

EE.    "Settlement Class" is defined in Section VII of the Decree.

FF.    "Term of the Decree" means the period described in Section VI of the Decree.

GG.    "Uniform Guidelines" means uniform guidelines for employee selection procedures, 29 CFR Section 1607.

## V.     JURISDICTION

The Court has jurisdiction over the parties and subject matter of this Civil Action. The Third Amended Complaint in this action asserts claims that, if proved, would authorize the Court to grant the equitable and monetary relief set forth in this Decree. Venue is proper in this Court. The Court shall

retain jurisdiction of this Civil Action during the Term of the Decree for the purpose of entering all orders authorized by the Decree, which may be necessary to implement the relief provided in the Decree or to enforce the provisions of the Decree.

## VI.    TERM OF DECREE

A.    Unless provided otherwise, the equitable provisions in this Decree are effective immediately upon the Approval Date, provided, however, that in the event that this Decree ultimately does not receive Final Approval, then any prior contempt finding which may have been entered shall be vacated by the Court.

B.    Except as otherwise provided herein, the provisions of this Decree and the agreements contained herein shall remain in effect for a period of four years from the Approval Date.

## VII.    SETTLEMENT CLASSES AND INJUNCTIVE RELIEF CLASSES

A.    For purposes of the monetary relief provided in this Decree, the Settlement Class is certified under Federal Rule of Civil Procedure 23(b)(3) and consists of:

1.    A Minority Employee Settlement Class of all Minority employees of the AGFS or DGO Divisions of FedEx Express who are or were employed in the position of Handlers, Freight Handlers, Material Handlers, Checker-Sorters, Customer Service Agents, Couriers, Swing Drivers, Ramp Transport Drivers, Ramp Area Drivers, Shuttle Drivers, Dangerous Goods Agents, Information Agents, Operations Agents, Ramp Agents, Service Assurance Agents, Truck Control Agents, Trace Representatives, Import Auditor, Team Leaders, and Dispatchers in the COMATs that comprised the Western Region at any time between October 17, 1999, and the Preliminary Approval Date, who do not timely opt out.

2.    An African-American Operations Manager Settlement Class of all African American employees of the AGFS or DGO Divisions of FedEx Express who are or were employed in the position of Operations Managers in the COMATs that comprised the Western Region at any time between October 17, 1999, and the Preliminary Approval Date, who do not timely opt out.

B.    For purposes of the injunctive and declaratory relief provided in this Decree, the following classes are certified under Federal Rule of Civil Procedure 23(b)(2):

11

1.  A Minority Employee Class of all Minority employees of the AGFS or DGO Divisions of FedEx Express who are or were employed in the position of Handlers, Freight Handlers, Material Handlers, Checker-Sorters, Customer Service Agents, Couriers, Swing Drivers, Ramp Transport Drivers, Ramp Area Drivers, Shuttle Drivers, Dangerous Goods Agents, Information Agents, Operations Agents, Ramp Agents, Service Assurance Agents, Truck Control Agents, Trace Representatives, Import Auditors, Team Leaders, and Dispatchers in the COMATs that comprise the Western Region at any time between October 17, 1999, and the end of the Decree.

2.  An African-American Operations Manager Class of all African American employees of the AGFS and DGO Divisions of FedEx Express who are or were employed in the position of Operations Managers in the COMATs that comprise the Western Region at any time between October 17, 1999, and the end of the Decree.

C.  Settlement Class Members who have filed a timely request to opt out of the monetary relief provisions shall not be held to release any claims for individual relief.

D.  In the event that Final Approval is not obtained, nothing in this Decree shall be deemed to waive FedEx Express's objections and defenses to class certification, liability, or entitlement to monetary or equitable relief, or any other issue in the Civil Action and this Decree shall then be deemed null and void and not admissible in any court regarding the propriety of class certification, liability, or entitlement to monetary or equitable relief, or any other issue in the Civil Action.

## VIII.   RELEASE OF CLAIMS

### A.   Release of Claims by Settlement Class.

Upon Final Approval of the Consent Decree, all Settlement Class Members who do not timely opt out will release all race and national origin discrimination claims against FedEx Express under federal and state laws that were certified by the Court on September 27, 2005, for the liability period of October 17, 1999 through the Preliminary Approval Date.

The Court certified on September 27, 2005, claims of the Minority Employee Settlement Class concerning race or national origin discrimination in promotions, compensation, and discipline. The Minority Employee Settlement Class will release claims, arising during the Class Period, under any

12

federal or state legal theory, for race and national origin discrimination in compensation, promotions identified in plaintiffs' statement regarding promotion claims filed on November 30, 2006, i.e., (1) promotions in the Western Region of the AGFS and DGO Divisions from any casual Class Member Hourly Position to any permanent hourly position, (2) promotions from any permanent Class Member Hourly Position to any other permanent hourly position, (3) promotions of Latinos from a Class Member Hourly Position to operations manager positions, (4) promotion from Class Member Hourly Positions to customer representative positions from the beginning of the class period until June 1, 2006, and in the allegedly discriminatory issuance of performance reminders or warning letters, to the extent that the issuance of such discipline had an impact on an active employee's compensation or ability to promote.

The Court certified on September 27, 2005, claims of the African-American Operations Manager Settlement Class of race and national origin discrimination claims concerning compensation and discipline. The African-American Operations Manager Settlement Class will release claims, arising during the Class Period, under any federal or state legal theory, for race and national origin discrimination in compensation and the allegedly discriminatory issuance of performance reminders or warning letters to the extent that the issuance of such discipline had an impact on an active employee's compensation or ability to promote.

**B.** **Individual Claims of Class Representatives.**

This Decree does not release the non-class claims asserted by the Class Representatives individually, as set forth in the Third Amended Complaint, paragraphs 77-81, 88-90, 98-100, 109-111, 117-119, 130-134, 141-143, 154-162, 181-185, 203-218, 226-253, 254-257.

**C.** **No Bar to Future Claims.**

Nothing in the Decree shall be construed to bar any claims of members of the Settlement Class or Plaintiffs that arise from conduct occurring after the Preliminary Approval Date.

# IX.  MISCELLANEOUS PROVISIONS

## A.  No Admission of Liability.

This Consent Decree does not constitute and shall not be deemed to be a finding or determination by the Court, nor an admission by any party, regarding the merits, validity or accuracy of any of the allegations, claims or defenses.  This Decree represents the compromise of disputed claims that the parties recognize would require protracted and costly litigation to determine.  FedEx Express denies that it has engaged in any policy or pattern or practice of unlawful discrimination, or that it has engaged in any other unlawful conduct as alleged in the Civil Action, and FedEx Express's entry into this Decree is not and may not be used by any person in any proceeding as an admission or evidence that FedEx Express and/or its employees, managers, and/or attorneys have on any occasion engaged in discriminatory employment practices or any other unlawful conduct, such being expressly denied.  FedEx Express has voluntarily entered into this Decree because it believes the actions it has agreed to undertake demonstrate its strong commitment to diversity and equal employment opportunity.  Neither the Decree nor any compliance reports, filings, data, or other compliance information arising out of or related to the Decree shall be discoverable, or admissible in any proceeding other than one relating to the enforcement of this Decree.

## B.  No Employment Contract.

Nothing in this Consent Decree creates contractual employment rights or otherwise modifies the "at will" nature of the employment of employees of FedEx Express.

## C.  Modification and Severability of the Consent Decree.

1.  Whenever possible, each provision and term of this Decree shall be interpreted in such a manner as to be valid and enforceable; provided, however, that in the event that after Final Approval hereof any provision or term of this Decree should be determined to be or rendered unenforceable on collateral review, all other provisions and terms of this Decree and the application thereof to all persons and circumstances subject thereto shall remain unaffected to the extent permitted by law.  If any application of any provisions or term of this Decree to any specific person or circumstance should

be determined to be invalid or unenforceable, the application of such provision or term to other persons or circumstances shall remain unaffected to the extent permitted by law.

2.    Monitoring Counsel and FedEx Express may jointly agree to modify the Decree in writing signed by both Monitoring Counsel and FedEx Express.

3.    In the event that changed or other circumstances make a modification of the Decree necessary to ensure its purposes are fully effectuated, but good faith negotiations seeking such modifications are unsuccessful, any party to the Decree shall have the right to move the Court to modify this Decree. Such motion shall be granted only upon the movant proving to the Court by clear and convincing evidence that changed or other circumstances make such modification necessary. In determining the specific modification to order, the Court shall consider whether there is an equally effective modification that would not materially increase the burden of compliance and/or cost to FedEx Express of compliance (out-of-pocket or otherwise). Any such modification to this Decree by the Court shall be ordered in such a fashion as will limit the burden of compliance and/or the cost to FedEx Express (out-of-pocket or otherwise) to the extent possible consistent with effectuating the purposes of this Decree. The procedures for negotiations to modify this Decree (and, if necessary, for resolution of disputes) shall be the same as those set forth in Section XIX regarding Decree enforcement.

**D.    Duty To Support and Defend the Decree.**

Class Representatives, Class Counsel and FedEx Express each agree to abide by all of the terms of this Decree in good faith and to support it fully, and shall use Best Efforts to defend this Decree from any legal challenge, whether by appeal or collateral attack.

**E.    Execution In Counterparts.**

The parties agree that the Decree may be executed in counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be part of the same Decree.

## X.    GENERAL EQUITABLE PROVISIONS

1.    Subject to the provisions of Paragraphs 2 and 3 hereof:

1          a.  FedEx Express shall maintain and enforce its non-discrimination and anti-retaliation

2  policies designed to assure equal employment opportunity.

3          b.  In accordance with its non-discrimination policies and its obligations under the law,

4  FedEx Express shall not knowingly maintain or enact any policy or practice that has the purpose or

5  effect of unlawfully discriminating against any member of the Minority Hourly Employee Class on the

6  basis of race (African-American) or national origin (Latino), or any member of the African-American

7  Operations Manager Class on the basis of race (African-American).

8          c.  In accordance with its anti-retaliation policies and its obligations under the law,

9  FedEx Express shall not retaliate against any member of the Minority Hourly Employee Class or any

10  member of the African-American Operations Manager Class because he or she opposed discrimination

11  on the basis of race or national origin, testified, furnished information or participated in any

12  investigation, proceeding, or hearing in connection with this lawsuit or any charge or complaint of

13  discrimination on which this lawsuit is based; testified, furnished information or participated in

14  connection with the monitoring or implementation of this Decree; or sought and/or received monetary

15  and/or non-monetary relief pursuant to this Decree.

16          d.  In accordance with its non-discrimination policies and its obligations under the law,

17  FedEx Express shall make available to African-American and Latino employees and African-

18  American Operations Managers the same opportunities and terms and conditions of employment as

19  FedEx Express affords similarly situated white employees and Operations Managers.

20      2.  FedEx Express employees complaining of alleged unfair or unlawful treatment may use

21  FedEx Express's internal complaint procedure or may file charges with the EEOC, or the state or local

22  fair employment practices ("FEP") agency.  However, the parties mutually intend that the enforcement

23  provisions of this Decree shall not be used as an alternative method for class members or any other

24  FedEx Express employee to litigate entitlement to individual relief for claims of alleged race or

25  national origin discrimination or retaliation.  Individual complaints of such alleged violations, as

26  distinguished from pattern or practice allegations, shall not be considered to raise an issue of

27  compliance or non-compliance with this Decree.

28

3.  Monitoring Counsel will have sole and exclusive authority to act for the Class on issues of compliance or non-compliance with this Decree.

4.  As of the Approval Date, and pursuant to the Court's authority under the All Writs Act and the Anti-Injunction Act, and Fed.R.Civ.P. 23, each and every Class Representative and each and every Settlement Class member who does not file a timely request to opt out shall be permanently enjoined from bringing claims released as part of the Class Settlement.

## XI.    SELECTION PRACTICES

### A.    Elimination of the Basic Skills Test.

1.  Within three months of the Approval Date, FedEx Express will discontinue use of the Basic Skills Test ("BST") as a requirement for awarding Courier, Ramp Transport Driver, or Service Agent positions, without requiring passage of an alternative cognitive ability test as a condition precedent to being offered one of these positions during the period of the Decree.

2.  If FedEx Express chooses to implement a new selection device or test for the positions of Courier, Ramp Transport Driver, or Service Agent, it will monitor whether such selection device or test has adverse impact with respect to African-Americans or Latinos. FedEx Express will report the results of those adverse impact analyses to Monitoring Counsel and the Special Master. If there is adverse impact, FedEx Express will, after consultation with Monitoring Counsel and the Special Master, take appropriate steps, in accordance with the Uniform Guidelines on Employee Selection Procedures.

### B.    Casual Employees.

FedEx Express has revised its Categories of Employment policy to eliminate the casual category. FedEx Express will create a new category of employment for "retiree casuals" which will be limited to employees who have retired from FedEx Express but wish to maintain some limited working relationship with the Company. By the approval date, FedEx Express will offer existing casual employees upgrades to permanent status based on location availability and most recent hire date. Casual employees who are not upgraded will be advised of the opportunity to apply for available permanent positions through www.fedex.com.

**C.   Posting of and Applying for Hourly Positions.**

1.   FedEx Express will make a computer or terminal reasonably available for employees to review posted Career Opportunities.  (If the workplace is not of sufficient size to have a computer or terminal in its break room, then FedEx Express will establish reasonable procedures by which affected employees will be advised of the times and places that computers or terminals will be reasonably available for reviewing Career Opportunities.)

2.   FedEx Express will continue to provide employees access to the Job Change Application Tracking System by logging in with their IMS password.

3.   FedEx Express will continue to post all replacements, additions, and new permanent positions in the Career Opportunities Postings unless a posting exception is approved as set forth in Policy 4-15 of the FedEx People Manual attached to this Decree as Appendix B.  Within one month of the Approval Date, Local Department/Station postings will also be included in the Career Opportunities postings with a post note indicating that actual location experience is a minimum requirement for the position.

4.   Within one month of the Approval Date, FedEx Express will replace references to manager "recommendation" with references to manager "verification" in its Career Opportunities policy to more accurately reflect the role of managers in the internal application process.

5.   Within one month of the Approval Date, FedEx Express will update and distribute the employee and manager job aids related to Career Opportunities.

6.   Subject to very limited authorized exceptions, hourly positions posted in Career Opportunities are to be filled only through the JCAT system.  Hourly positions posted in Career Opportunities may be filled with an internal candidate through the processing of a paper Prism Authorization Form ["PAF"] only under the following circumstances, which must be documented on the PAF and confirmed by the matrix Human Resources Manager: compliance with legal requirements governing return from military, medical, or family leave; compliance with FedEx Express policy regarding personal leave; reinstatement; voluntary demotion of a manager; accommodation of an employee's disability; involuntary demotion of an hourly employee; other unique circumstances which

must be documented and approved by the Human Resources Manager. The Monitoring Panel described in Section XVII herein will develop and review reports to help ensure the foregoing. The monitoring reports will be provided to Monitoring Counsel and the Special Master in accordance with the schedule set forth in Section XVIII.C.

**D.     Promotion to Management.**

1. The FedEx Express intranet (which will be reasonably accessible to employees, see supra) will contain information about the ASPIRE (Assessment of Skills, Performance and Interests Required for Entry into Management) process for each Division.

2. FedEx Express will, within three months of the Approval Date, also develop and distribute offline materials that outline the ASPIRE (Assessment of Skills, Performance and Interests Required for Entry into Management) process for each Division.

3. FedEx Express will allow enrollment in the available ASPIRE to Management classes upon verification by the employee's manager that the employee meets the objective eligibility requirements, i.e., the employee has no active warning letter, has a satisfactory rating in all performance review categories and a satisfactory overall performance review score, has two years of college credit or equivalent work experience and has four (4) years of work experience in addition to the experience, if any, used for college credit equivalent.

**E.     Role of Managers in the Promotion Process for Hourly Positions**

1. For JCATS positions, the manager will not approve, but only "verify" whether an employee has met the minimum objective requirements, i.e., a performance review score of 5 or above, time in station/department, no active warning letter, no performance reminder letters concerning performance areas that are the same as the requirement for the new position. FedEx Express will reprogram JCATS within one month of the Approval Date to reflect this change.

2. Within one month of the Approval Date, FedEx Express will reprogram JCATS so that if a manager fails to take the action required to timely verify that an employee meets the minimum objective requirements, the employee's name will be included on the list of eligible applicants for

consideration by the hiring manager. The hiring manager will verify the employee's eligibility before the employee may be offered the position.

**F.**     <u>**Adherence to Rules regarding Priority Group and CEV Score**</u>

FedEx Express will revise its Candidate Selection and Internal Applicant Processing policies to subject managers to discipline up to and including termination when they fail to fill positions according to Company policy, including selection policies relating to priority groups and CEV scores.

## XII.     PERFORMANCE EVALUATIONS

1. Within one month of the Approval Date, FedEx Express will expand the character capacity for Online Performance Review ["OLPR"] categories to accommodate additional anchor statements, descriptions, and guidelines to assist managers in evaluating employee performance, particularly with respect to the subjective categories.

2. FedEx Express will continue to provide rating scales which managers will be required to use in setting scores for objective OLPR categories.

3. Within one month of the Approval Date, FedEx Express will develop and communicate to managers clear guidelines setting forth when an exception to the rating scale can be given. Exception scores will be appropriate for:

    a.   active warning or reminder letters;

    b.   compliance with FMLA, military leave laws, state workers comp laws, or other federal, state or local laws;

    c.   adding bonus points for perfect attendance and/or perfect punctuality;

    d.   consideration of documented events such as severe weather conditions or traffic situation that impacted a significant number of employees on the same date in the same location;

    e.   consideration of documented staffing shortages that impacted categories such as Quality (i.e., service levels) or Efficiency (i.e., actual hours versus plan hours);

    f.   consideration of other documented circumstances that justify exceptions in compliance with policy and after consultation with Human Resources and the location Senior Manager.

4.   FedEx Express will maintain and enforce its written requirements that all exception scores are approved by the location Senior Manager and that the reason for all exception scores is documented in the comments section of the performance review.

5.   Within one month of the Approval Date, FedEx Express will add a performance review item to its location audit process to audit a sample of performance reviews for hourly employees to ensure that the guidelines and rating scales for the objective scores are followed and any exception ratings are fully-documented and approved as required by policy.

6.   Within six months of the Approval Date, FedEx Express will develop an interactive mandatory training module to assist managers in conducting performance reviews in an accurate and consistent manner that will include a focus on the items set forth in this section.

7.   Within three months of the Approval Date, FedEx Express will establish a procedure by which it will monitor whether the subjective components of its Courier and Handler performance evaluations (that is, all categories other than attendance, punctuality, worker safety for Handlers and Couriers; and  vehicle safety, scan compliance, service level, and route efficiency for Couriers) for Handler and Courier produce more than 2 negative standard deviations of disparity between African-American or Latino and white employees in the same job code, organization code, COMAT, time-in-position, and length of FedEx Express service.  FedEx Express will conduct regression analyses for Handlers and Couriers in the Western Region of the AGFS and DGO Divisions, aggregating data by (1) Handlers in AGFS; (2) Couriers in AGFS; (3) Handlers in DGO; and (4) Couriers in DGO.  Within three months of the Approval Date, FedEx Express will establish a procedure by which it will monitor whether the subjective components of its performance evaluations for Operations Manager produce more than 2 negative standard deviations of disparity between African-American and white employees in the same job code, organization code, COMAT, time-in-position, time-in-management and length of FedEx Express service.  FedEx Express will conduct a regression analysis, aggregating all data from (1) the Western Region of the AGFS Division, and (2) the Western Region of the DGO Division. FedEx Express will report the results of those impact analyses to Monitoring Counsel and the Special Master; and if for any year during the term of the Decree, there is adverse impact as to either African-Americans or Latinos, FedEx Express shall validate in accordance with the Uniform Guidelines the

21

subjective portions of the performance evaluation and associated processes used for the positions for which a statistically significant disparity was found.

### XIII.    MANAGER EVALUATION ON EEO

FedEx Express will maintain the categories on the Manager performance review that measure the manager's performance in **Employee Selection, Development, Affirmative Action** (with anchors including considering affirmative action plan when making selection/promotion decisions; fully supporting the ASPIRE process; identifying training, job assignments, and special programs to develop employees for promotional opportunities, with special emphasis on development of minorities and females; and treating each subordinate individually); **Leadership** (with anchors including demonstrating a belief in the value of each individual regardless of their background, race, sex, ethnic group, education level, or position); and **Judgment and Decision-Making** (with anchors including applying FedEx Express policy regarding promotion, compensation, and discipline in a consistent fashion).

### XIV.    DISCIPLINE

**A.    Discipline Policies and Procedures.**

1.    FedEx Express has revised its Acceptable Conduct and Performance Improvement Policies to provide for greater consistency in the use of disciplinary tools such as warning letters and performance reminders as follows:

a.    Added language that clarifies that an OLCC is not considered discipline but can be considered when determining whether discipline is required and when identifying patterns of conduct or performance issues that may warrant discipline; and

b.    Merged the separate categories of "documented verbal counselings" and "documented written counselings" into the single category of "documented counselings," and require that all counselings be "documented" as an OLCC, regardless of whether a separate memo or written synopsis of the counseling is given to the employee.

2.    By the Approval Date, FedEx Express will revise, and thereafter continue to maintain and enforce, Policy 2-5 (attached as Appendix C, and incorporated herein by reference), to reflect that

management "must," completely document all actions taken related to discipline for misconduct, including notifying the employee of the date of the infraction, the facts supporting the discipline, the policy violated, and a reference to the employee's privilege to pursue internal review of the decision through the Guaranteed Fair Treatment Procedure.

3. By the Approval Date, FedEx Express will revise, and thereafter continue to maintain and enforce Policy 2-50, (attached as Appendix D, and incorporated herein by reference), to reflect that management "must" review thoroughly the circumstances surrounding any incident to determine whether a reminder is warranted, and that performance reminders must include the date(s) of the performance problem; the policy violated; the facts supporting the performance problem; the action plan jointly-developed and documented by the employee and manager to correct the employee's performance problem(s); an established follow-up date; and a reference to the employee's right to pursue internal review of the decision through the Guaranteed Fair Treatment Procedure.

4. Within six months of the Approval Date, FedEx Express will develop an interactive mandatory training module to assist managers with understanding and applying the Acceptable Conduct and Performance Improvement policies for greater consistency and neutrality. The training module will include information to assist with identifying and thoroughly investigating performance and conduct problems.

## XV.    COMPLAINT PROCEDURES/RELATED ISSUES

1. FedEx Express shall maintain and enforce Policy 5-5 Guaranteed Fair Treatment Procedure/EEO Complaint Process (attached as Appendix E, and incorporated by reference), as revised pursuant to Section XVI herein.

2. Within one month of the Approval Date, FedEx Express shall prepare a complaint tracking spreadsheet recording pertinent information regarding complaints in the Western Region of alleged discrimination on the basis of race (African American) or national origin (Latino) or retaliation against Class Members. Pertinent information shall include the following:

        i.      a designation regarding whether the complaint was one of race or national origin discrimination in the Western Region, or both;

ii.    the name, job classification, and work location of the complainant(s); and

iii.    the results of the investigation undertaken in response to such complaint, including the corrective action imposed, if any, and the name of the manager(s) or other employee(s) disciplined.

3.  FedEx Express shall provide the complaint tracking spreadsheets on a semi-annual basis for the term hereof to the Monitoring Panel established pursuant to Section XVII and to Monitoring Counsel.

4.  During the course of the Decree, FedEx Express shall, on a semi-annual basis, provide the Monitoring Panel and Monitoring Counsel with three (3) employee complaints (as selected by the Monitoring Panel from the complaint tracking spreadsheet), along with all related non-privileged investigative files, and non-privileged written reports summarizing the investigation and remedial actions taken or proposed by FedEx Express relative to each such complaint, for the purpose of reviewing the propriety and justness of the resolution of such complaints.

5.  The Monitoring Panel will review FedEx Express' investigation of each such complaint and, where appropriate, may make recommendations to FedEx Express regarding the investigation and resolution of complaints. The Monitoring Panel may recommend the Company take additional investigative steps including, without limitation, re-interview of the complaining party and other persons of interest with respect to any complaint. In addition, if such additional investigative steps do not fully resolve any concerns the Monitoring Panel may have regarding the matter, they may take any other investigative actions as they may deem appropriate.

6.  In carrying out its monitoring duties, the Monitoring Panel may seek nonprivileged backup or further documents or information regarding any complaint identified on the tracking spreadsheet in order to, among other things, review the propriety and justness of the resolution of any such complaint.

## XVI. GUARANTEED FAIR TREATMENT SYSTEM

Within one month of the Approval Date, FedEx Express will revise its Guaranteed Fair Treatment ("GFT") process as follows:

1. To modify the steps for initiating a GFT to encourage, rather than require, employees to engage in an open and frank discussion with the decision-maker before the GFT; and

2. To allow the employee a reasonable amount of time prior to the GFT hearing to review and respond to the Management Rationale submitted in support of the employment decision which is the subject of the GFT complaint.

## XVII. INTERNAL COMPLIANCE/MONITORING PANEL

1. Within two (2) weeks of the Approval Date, FedEx Express shall establish a three-member Monitoring Panel which shall be charged with the overall responsibility for monitoring compliance with the terms of the Decree. The Panel shall be comprised of an attorney from the FedEx Express Labor and Employment Group, an attorney from the FedEx Express Litigation Group, and a Managing Director from the FedEx Express Human Resources Division. The Monitoring Panel will report directly to the Chief Diversity Officer and the Legal Department Vice President member of the FedEx Express Officer Diversity Council.

2. In the event that a member of the Monitoring Panel ceases to function in that role, the Company shall designate a replacement member of the Monitoring Panel as soon as practicable but no later than (30) days after the Monitoring Panel member ceases to function in that role.

3. The following procedure shall apply in selecting the members of the Monitoring Panel:

    a. The Company shall use its Best Efforts to appoint individuals who will be effective in carrying out its duties and responsibilities.

    b. Prior to appointing an individual for the Monitoring Panel position, FedEx Express shall provide Monitoring Counsel with a resume including the identity, background, experience and qualifications of the individual that FedEx Express intends to appoint to the position. FedEx Express also shall provide Monitoring Counsel with a description of the reasons why it designated this individual. Within ten (10) days of receiving the resume and description of the basis for the selection,

1  Monitoring Counsel may interview the designated individual and provide their views as to the

2  individual's qualifications and suitability for the Monitoring Panel position.

3      4.  The Monitoring Panel shall use its Best Efforts to ensure the Company's implementation of

4  and compliance with the provisions of this Decree.  FedEx Express shall provide such support staff,

5  funds and other resources as may be reasonably necessary to discharge FedEx Express's obligations

6  under the Decree.

7           **XVIII.        REPORTING AND RECORDKEEPING**

8      1.  The parties agree to appointment of Hunter Hughes as Special Master.  The Special Master

9  may be removed at the joint written request of Class Counsel and FedEx Express, or by order of the

10  Court upon motion of any Party and a showing of good cause that Hunter Hughes should no longer

11  serve as Special Master.  In the event that Hunter Hughes becomes unavailable to serve as Special

12  Master for any reason, Class Counsel and FedEx Express will make a good faith effort to select on a

13  joint basis a new Special Master.  If Class Counsel and FedEx Express are unable to reach agreement

14  as to a successor Special Master within forty-five (45) days following the date Hunter Hughes becomes

15  unavailable to serve as Special Master, the Court shall appoint a successor Special Master upon motion

16  of Class Counsel or FedEx Express.  Class Counsel or FedEx Express may nominate to the Court

17  persons for consideration as a successor Special Master.  Class Counsel and FedEx Express shall each

18  have the right to interview any nominated person, and to present argument and evidence to the Court

19  regarding the selection of the successor Special Master.

20      2.  Monitoring Counsel and the Special Master will receive the Scheduled Reports set forth in

21  Sections XVIII.D on the Schedule set forth in Section XVIII.C. The Special Master will meet with the

22  Monitoring Counsel and the appropriate representatives of FedEx Express as deemed necessary, but at

23  least annually.

24  **A.    Documents to Be Preserved for the Duration of the Decree.**

25      1.  FedEx Express shall retain the following employment-related records for the duration of the

26  Decree or as required by state or federal law, whichever is longer:

27

28

a.  A computer readable database or databases containing computerized payroll and personnel information for employees in the Western Region of AGFS and DGO Divisions for the time period covered by the Decree.  The payroll and personnel information contained in the database or databases shall include the information currently contained in FedEx Express's PRISM, JCATS, FAMIS, and payroll databases.

b.  Records of who registers for the ASPIRE to Management classes during the time period covered by the Decree.

c.  Records of all jobs that are posted in the JCATS system and a record of how those jobs are filled, if they are during the time period covered by the Decree.

d.  Performance evaluation forms for all employees, including Operations and Senior Managers, completed during the time period covered by the Decree.

e.  All formal internal complaints filed during the time period covered by the Decree pursuant to Section XV, regarding alleged Race or National Origin discrimination, and the non-privileged written findings of the investigation.

f.  All documents expressly required to be created by this Decree.

2.  Nothing in this Decree shall be interpreted to relieve FedEx Express of any recordkeeping requirements otherwise imposed by applicable Federal or State law.

**B.**   **Access to Documents.**

1.  Monitoring Counsel shall, upon reasonable notice, be entitled to review all documents required to be maintained or created by the express terms of this Decree, except, however, that Monitoring Counsel shall not be entitled to review any such documents that are protected by attorney-client or work product privilege.  FedEx Express may object that the production of certain documents is unreasonable, and the Special Master shall decide, whether Monitoring Counsel have a reasonable basis for receiving the documents.

2.  All documents required to be maintained by the express terms of the Decree are and shall be treated as confidential business records.  In light of Monitoring Counsel's continuing role in the administration of this Decree, Monitoring Counsel will be provided access to such documents on a

confidential basis in order to investigate and resolve potential non-compliance with the Decree. Monitoring Counsel and Class Counsel (with whom Monitoring Counsel can share these documents) shall not divulge any such documents to any third party (except any expert retained in connection with Decree enforcement who agrees to be bound by the Decree's confidentiality provisions), unless so ordered by the Court after notice to FedEx Express and an opportunity for FedEx Express to object to such disclosure and be heard. Upon expiration of this Decree, Monitoring Counsel and Class Counsel shall promptly return to FedEx Express any and all documents FedEx Express furnished under this Decree. Neither Monitoring Counsel nor Class Counsel shall use these documents for any purpose other than enforcing the terms of this Consent Decree.

**C.**    **Reporting Schedule.**

FedEx Express shall provide Progress Reports to Monitoring Counsel and the Special Master on the Company's compliance with the Decree's requirements 30 days after the close of the five (5) following reporting periods: months 1 through 12; months 10 through 21; months 19 through 30; months 28 through 39; and months 37 through 45.

**D.**    **Contents of the Progress Reports.**

The Progress Reports shall include the following information:

     a.   Adverse impact analyses of any selection device implemented by FedEx Express after the Approval Date, used to select employees as Couriers, RTDs, or Service Agents, and any documents relating to validation of, or attempts to validate any such devices, in accordance with Section XI.A.

     b.   Report of location audit of performance reviews, as provided for in Section XII.7, to make sure guidelines and rating scales for objective measures are followed and that exception rating documentation process is followed;

     c.   Adverse impact analysis of subjective measures of performance reviews, and any analysis relating to the validation of performance evaluation measures or attempts to validate such measures, as set forth in Section XII.7.

     d.   Complaint tracking spreadsheet as set forth in Section XV.2.

1           e.   Three Complaints per quarter, as chosen by the Monitoring Panel, plus all, non-

2  privileged back up materials as set forth in Section XV.4.

3           f.   Computer-readable data of all discipline imposed (warning letters and performance

4  reminders), facility, race, and job title of employee, and reason codes;

5           g.  Monitoring reports to assure that all hourly jobs (with very limited exceptions

6  spelled out in the Decree) are filled through JCATS, as provided in Section XI.C.6.

7           h.  Reports of the Monitoring Panel to ensure that CEV rules are followed for hourly

8  promotions, in accordance with the requirement in Section XI.F.

9           i.   A chart or charts displaying the number and percentage of White, African

10  American, and Latino employees who applied for Courier, Ramp Transport Driver, Customer Service

11  Agent, or Operations Manager positions, and the number and percentage of White, African American,

12  and Latino employees who met the Minimum Qualifications for each position.  This information shall

13  be reported on a Western Region-wide basis for the AGFS and DGO Divisions, by affirmative action

14  plan.

15           j.   A chart or charts displaying the number and percentage of White, African

16  American, and Latino employees who were promoted to Courier, Ramp Transport Driver, Customer

17  Service Agent, or Operations Manager during a reporting period.  This information shall be reported

18  on a Western Region-wide basis for the AGFS and DGO Divisions, by affirmative action plan.

19           k.  A description of the implementation and delivery of the training required by

20  Sections XII.3, XII.7, XIV.4, and lists of those in attendance.

21           l.   Copies of all training materials used by the Company during the reporting period to

22  train managers and Human Resources personnel regarding equal employment opportunity, pursuant to

23  Section XXI.

24           m.  An organizational chart or charts, which lists all Human Resource staff who have

25  substantive responsibilities for the Western Region of the AGFS and DGO Divisions.

26           n.   Certification by the Monitoring Panel that it has used Best Efforts to see that the

27  Notice and Summary of Consent Decree as described in Section XX has been provided to employees

28  as required by the Decree.

o.  A summary of the formal internal complaints received during the reporting period alleging race or national origin discrimination in the Western Region as described in Section XV.2. This summary shall be kept confidential and shall not be provided to any person or entity not a party to this Consent Decree.

## XIX.  DISPUTE RESOLUTION AND ENFORCEMENT PROCEDURES

1.  The Special Master appointed pursuant to Section XVIII shall have authority to resolve all disputes arising under the Decree, subject to limitations and standards set forth in the Decree.

2.  At the request of Monitoring Counsel or FedEx Express, the parties shall use Best Efforts to resolve promptly any differences or any disputes regarding the interpretation or implementation of the Consent Decree.

3.  Monitoring Counsel or FedEx Express shall have the right to initiate steps to resolve any dispute or issue of compliance regarding any provision of the Decree subject to limitations and standards set forth in the Decree.

a.  If Monitoring Counsel or FedEx Express has good reason to believe that a legitimate dispute exists, the initiating party shall first promptly give written notice to the other party including:  (a) a reference to all specific provisions of the Decree that are involved; (b) a statement of the issue; (c) a statement of the remedial action sought by the initiating party; and (d) a brief statement of the specific facts, circumstances and any other arguments supporting the position of the initiating party;

b.  Within thirty (30) days after receiving such notice, the non-initiating party shall respond in writing to the statement of facts and arguments set forth in the notice and shall provide its written position, including the facts and arguments upon which it relies in support of its position;

c.  Monitoring Counsel and FedEx Express shall undertake good-faith negotiations, including meeting or conferring by telephone or in person and exchanging relevant documents and/or other information, to attempt to resolve the issues in dispute or alleged noncompliance;

d.  The Special Master, upon motion, may permit Monitoring Counsel or FedEx Express to take post-settlement discovery as provided by the Federal Rules of Civil Procedure, but

30

1  only as to matters relevant to the underlying claim of breach, if the Special Master determines that the

2  informal exchange of documents or information has not been sufficient to allow Monitoring Counsel or

3  FedEx Express to present the dispute upon a factual record adequate for a fair determination of the

4  issue;

5           e.  If the parties' good-faith efforts to resolve the matter have failed, and after written

6  notice of an impasse by the moving party to the non-initiating party or parties, Monitoring Counsel or

7  FedEx Express may file a motion with the Special Master, with a supporting brief, requesting

8  resolution of the dispute or the issues of non-compliance, provided however, that such motion shall be

9  limited to the dispute(s) and/or issue(s) as to which the parties have met and conferred as described in

10  this Section;

11           f.  The non-moving parties will have fifteen (15) days to respond to any such motions;

12           g.  The Special Master shall attempt within fifteen (15) days after filing of the final

13  brief to resolve the dispute and may schedule a hearing or other proceeding, including an evidentiary

14  hearing, to resolve the matter; and

15           h.  Within thirty (30) days of any hearing, the Special Master shall issue a written

16  determination, including findings of fact if requested by any Party.

17       4.  The provisions of this Section do not prevent Monitoring Counsel or FedEx Express from

18  promptly bringing an issue directly before the Court when exigent facts or circumstances require

19  immediate Court action to prevent a serious violation of the terms of this Decree, which otherwise

20  would be without meaningful remedy.  The moving papers shall explain the facts and circumstances

21  that allegedly necessitate immediate action by the Court.  Absent a showing of exigent facts or

22  circumstances, the Court shall refer the matter to the Special Master to resolve in accordance with

23  procedures set forth above.  If any such matter is brought before the Court requesting immediate

24  action, the other party shall be provided with appropriate actual notice, and an opportunity to be heard

25  on the motion, under the Local Rules of the Court and the Federal Rules of Civil Procedure.  The Court

26  in its discretion may set such procedure for emergency consideration as are appropriate to the

27  particular facts or circumstances, but no such matter may be heard or considered on an ex parte basis.

28

5. All fees and expenses of the Special Master shall be paid as provided in Section XXIII. A, infra.

6. Monitoring Counsel or FedEx Express may appeal a decision of the Special Master to the Court provided that such an appeal is made within fourteen (14) days of receipt of notice of the decision by the Special Master. Any such appeal shall be brought by motion under the Local Rules of the Court and Federal Rules of Civil Procedure. The decision rendered by the Special Master shall be affirmed unless the Court determines that the Special Master made clearly erroneous findings of fact or wrongly interpreted or applied the Consent Decree. A party may seek on appeal any remedy provided by law, provided that such remedy is consistent with the provisions of this Decree.

7. Only Monitoring Counsel or FedEx Express shall have standing to move the Court to enforce, apply, or modify this Decree. Any individual concerned about FedEx Express's compliance with this Decree may so notify Monitoring Counsel and request that they examine FedEx Express's compliance and seek such relief, if any, as may be appropriate.

8. In the event that any party seeks to utilize the dispute resolution procedure set forth in Section XIX, then each party shall bear its own attorneys' fees, costs and expenses for all work performed through resolution by the Special Master (although Monitoring Counsel may be paid from the Settlement Fund Account as described in Section XXXIII.C, to the extent it remains). In the event that any party seeks to appeal any decision of the Special Master, then the prevailing party in such matter shall be entitled to recover reasonable attorneys' fees, costs and expenses incurred in such appeal from the other party, consistent with applicable standards under Title VII. Whether and to what extent any party is a prevailing party entitled to an award of fees and expenses shall be determined in the sole and absolute discretion of the Court.

9. The dispute resolution provisions set forth in Section XIX are not intended to be an exclusive mechanism for resolution of complaints of discrimination by FedEx Express. FedEx Express employees complaining of violations of state and/or federal law prohibiting discrimination in employment may use FedEx Express's internal complaint procedure or may file charges with the EEOC, or the state or local fair employment agency, even where such violations, if proven, might also constitute violations of the provisions in this Consent Decree. The parties mutually intend that the

32

1  enforcement provisions of this Decree shall not be used as an alternative method for Class Members to

2  litigate entitlement to individual relief for claims of alleged race or national origin discrimination or

3  retaliation. Individual complaints for such alleged violations, as distinguished from pattern or practice

4  allegations, shall not be considered to raise an issue of compliance or non-compliance with this

5  Decree.

### XX.  IMPLEMENTATION AND COMMUNICATION OF COMMITMENT TO DIVERSITY, EQUAL EMPLOYMENT OPPORTUNITY AND REQUIREMENTS OF CONSENT DECREE

Not later than thirty days after the Approval Date, FedEx Express shall provide to each of its Western Region officers, managers, and employees a written communication that reflects the Company's commitment to diversity, equal employment opportunity, and implementation of the non-monetary provisions of the Consent Decree, a copy of which has been provided to Class Counsel. At least once during each Decree Year thereafter, FedEx Express shall provide a similar communication to each of its Western Region officers, managers, and employees after first providing a copy and reasonable opportunity for comment to Monitoring Counsel. The communications will be signed and issued by the Chief Executive Officer of FedEx Express.

### XXI.  TRAINING OF MANAGEMENT REGARDING EEO

FedEx Express will maintain its training of managers and Human Resources personnel regarding EEO issues and harassment.

FedEx Express will continue to provide each new employee and manager in the Western Region of its AGFS and DGO Divisions, as part of his/her new employee orientation, with the Company's commitment to equal opportunity and the expectation of compliance with that commitment.

Within three months of the Approval Date, FedEx Express will develop an interactive mandatory diversity training module to help managers identify barriers that inhibit valuing race and ethnic diversity, understand why race and ethnic diversity awareness and acceptance is important to FedEx Express' growth and future, learn how race and ethnic stereotypes hinder effective communication and workplace interactions, learn how to recognize differences and how those

differences can enhance the workgroup.

## XXII.  MONETARY RELIEF, NOTICE AND CLAIMS PROCEDURE

**A.    Payment of the Settlement Fund.**

    1.    FedEx Express will pay a monetary amount according to the formula set forth in this section XXII.A.1 for the purpose of providing individual monetary awards to the Class Representatives and other eligible members of the Settlement Class, payment of attorneys' fees, litigation expenses, and costs, as provided in Section XXIII.B and XXIII.C, funding of the settlement administration expenses, payment of payroll taxes pursuant to Section XXII.M, payment of fees and costs of the Special Master in accordance with the provisions of Section XXIII.A and payment of the fees and costs of the Claims Administrator in accordance with the provisions of Section XXII.E. The precise amount to be paid by FedEx will be calculated as follows:

    (1)    $53,500,000.00, plus
    (2)    either 5% [.05] or the United States Treasury Bill percentage rate as established on the tenth (10th) business day after Preliminary Approval, whichever is lower, multiplied by $53,300,000 less the amount of the incremental payments for the period between the tenth (10th) business day after Preliminary Approval and the date FedEx Express wire transfers incremental payments to the Settlement Fund Account as and at the times required under this Consent Decree. Any opt-out credits due, pursuant to Section XXII.D.4. shall be deducted from the final payment before calculation of the lower of the 5% or the United States Treasury Bill rate.

    2.    The Claims Administrator will open and administer an interest-bearing account ("Settlement Fund Account") approved by Class Counsel with a unique Tax Payer Identification Number.  The monetary payments described above shall be made into this Settlement Fund Account. Payments will be made by FedEx Express to the Settlement Fund Account as follows:

    a.    Within ten business days of the Preliminary Approval Date, FedEx Express will wire $200,000 to the Settlement Fund Account.  This amount is intended to cover costs of the mailed notices and expenses associated with the claims procedure.

    b.    If there is no Final Approval, then within seven business days of the court declining Final Approval the Claims Administrator shall return to FedEx Express any funds remaining in the

Settlement Fund Account, in the event that the funds wired for notice as provided in Section

XXII.A.2.a. exceeded the actual cost of notice.

c.     Within seven business days of Final Approval, FedEx Express will wire $360,000 to

the Settlement Fund Account, or such amount as is approved by the Court, to be distributed by the

Claims Administrator to the Class Representatives and Declarant/Deponents as Service Awards as set

forth in Section XXII.B.1.

d.     After Final Approval, and within seven business days after the Claims Administrator

has informed FedEx Express in writing that it is prepared to distribute monetary awards to the eligible

members of the Settlement Class, FedEx Express will wire the balance of money due pursuant to

Section XXII.A.1 above, except that FedEx Express will wire Class Counsel's attorneys' fees,

litigation expenses, and costs to the Settlement Fund Account within seven business days after Final

Approval or the issuance of a court order approving Class Counsel's attorneys' fees, litigation

expenses, and costs, whichever is later, as provided in Section XXIII.B.3. After Final Approval, and

within seven business days after the Claims Administrator has informed FedEx Express in writing that

it is prepared to distribute monetary awards to the eligible members of the Settlement Class, FedEx

Express will also wire to the Settlement Fund Account one half of the employer's share of all

applicable payroll taxes, on amounts treated as wages.

Upon payment of the amounts sets forth in Sections XXII.A.2.a, XXII.A.2.c and XXII.A.2.d to

the Settlement Fund Account and in Section XXII.B.2 to Class Counsel as provided in Section

XXIII.B.3 FedEx Express will have no further monetary obligation hereunder to Class

Representatives, members of the Settlement Class, or Class Counsel, including no obligation to pay

any funds for distribution to Class Representatives or members of the Settlement Class; no obligation

to pay costs of mailed notices and expenses associated with the claims procedure; no obligation to pay

any other settlement costs; no obligation to pay any fees or costs for the Special Master; no obligation

to pay any fees and costs for the Claims Administrator; no obligation to pay any taxes associated with

the Settlement Fund Account or distributions from the Settlement Fund Account; and no obligation to

pay any fees or costs to Class Counsel or Monitoring Counsel. Provided however the Court may order FedEx Express to pay fees and costs as a nonprevailing party pursuant to Section XIX.8.

Nothing herein shall be deemed to require FedEx Express to separate or segregate its assets into a restricted fund. The Settlement Fund Account will constitute a qualified settlement fund and it will be created, managed and disbursed by the Claims Administrator under the supervision of Class Counsel. FedEx Express will have no responsibilities or liabilities with respect to the Settlement Fund Account, its administration, or distribution therefrom.

**B.    Distribution of Settlement Fund.**

     **1.    Class Representatives and Declarant-Deponents.**

Each Class Representative shall receive a Service Award in the liquidated amount of $30,000, or such amount as is approved by the Court, not to exceed $30,000 per Class Representative. Each of eighteen class members who signed a declaration and whose deposition was taken by FedEx Express shall receive a Service Award in the liquidated amount of $5,000, or such amount as is approved by the Court, not to exceed $5,000 per Declarant/Deponent. A list of these individuals is contained in Appendix F. This liquidated amount will compensate the Class Representatives and Declarant/Deponents in consideration for the time and effort expended in these proceedings. Payment of these sums, not to exceed a total of $360,000, shall be made by the Claims Administrator no later than seven (7) calendar days after receipt of the funds described in Section XXII.A.c

     **2.    Settlement Class.**

The Claims Administrator will distribute from the Settlement Fund Account the sum of $38,500,000, less all opt-out credits, any notice payments, and Service Awards approved by the Court for Class Representatives and Declarants/Deponents to eligible members of the Settlement Class who do not opt out based on a formula set out in the allocation plan as set forth in Section XXII. L.

**C.    Notice.**

Within twenty days following the Preliminary Approval Date, FedEx Express shall provide the Claims Administrator with a computer disk containing the full names, social security numbers, last

known addresses and phone numbers, start dates and, as applicable, end dates of employment with FedEx Express and BST status for all employees employed by FedEx Express through the Preliminary Approval Date who are potential Settlement Class members.  Within twenty days following the Preliminary Approval Date, Class Counsel shall provide the Claims Administrator with a computer readable list of all known potential Settlement Class members and their mailing addresses.  Prior to the mailing of the Notices, the Claims Administrator will combine these lists of potential Settlement Class members received from FedEx Express and Class Counsel and update any new address information for potential class members as may be available through the National Change of Address ("NCOA") system.  Within 40 days of the Preliminary Approval Date, the Claims Administrator shall mail, via first class postage, Notices of Class Settlement, and Claim Forms, all in the form approved by the Court in the Preliminary Approval Order, to all known potential Settlement Class members at their last known address or at the most recent address that may have been obtained through the NCOA.  The Claims Administrator will trace all returned undeliverable notices and re-mail to the most recent address available.

**D.** **Objections and Opt-Outs.**

Class members may object to or opt-out of the class settlement.

**1.** **Objections.**

Class members objecting to the terms of the settlement must do so in writing; the written objection must be sent to the Claims Administrator on or before the date specified in the Preliminary Approval Order.  The Claims Administrator will record the date of receipt of the objection and forward it, by e-mail as a PDF attachment, to both FedEx Express and Class Counsel within two (2) business days following receipt.  The Claims Administrator will also file the original objections with the Clerk of the Court no later than five (5) days prior to the scheduled Fairness Hearing date.  The Claims Administrator shall retain copies of all written objections until such time as it has completed its duties and responsibilities under this Decree.

**2.** **Opt-Outs.**

Class members may exclude themselves, or opt-out, of the monetary relief provisions of the

class settlement. Any request for exclusion must be in the form of a written "opt-out" statement sent to the Claims Administrator. Information on how to opt-out of the settlement shall be made available by the Claims Administrator. A person wishing to opt-out must sign a statement which includes the following language:

> I understand that I am requesting to be excluded from the class monetary settlement and that I will receive no money from the settlement fund created under the Consent Decree entered into by FedEx Express. I understand that if I am excluded from the class monetary settlement, I may bring a separate legal action seeking damages, but may receive nothing or less than what I would have received if I had filed a claim under the class monetary settlement procedure in this case. I also understand that I may not seek exclusion from the class for injunctive relief and that I am bound by the injunctive provisions of the Consent Decree entered into by FedEx Express.

A class member submitting an Opt-out statement shall sign and date the statement and deliver it to the Claims Administrator by the date specified in the Preliminary Approval Order.

The Claims Administrator shall date stamp the original of any Opt-out statement and serve copies on both FedEx Express and Class Counsel by email as a PDF attachment within two (2) business days of receipt of such statement. The Claims Administrator will also file the original Opt-out statements with the Clerk of the Court no later than five (5) days prior to the scheduled Fairness Hearing date. The Claims Administrator shall retain copies of all Opt-out statements until such time as it has completed its duties and responsibilities under this Decree.

**3. Rescission of Class Member Opt-Outs.**

The parties recognize that some class members who initially submit Opt-out statements seeking exclusion may, upon further reflection, wish to withdraw or rescind such Opt-out statements. The parties agree that class members shall be permitted to withdraw or rescind their Opt-out statements by submitting a "Rescission of Opt-out" statement to the Claims Administrator. The Rescission of Opt-out statement shall include the following language:

> I previously submitted an Opt-out statement seeking exclusion from the class monetary settlement. I have reconsidered and wish to withdraw my Opt-out statement. I understand that by rescinding my Opt-out I may be eligible to receive an award from the claims settlement fund and may not bring a separate legal action against FedEx Express seeking damages with respect to the Released Claims.

A class member submitting such a rescission statement shall sign and date the statement and cause it to be delivered to the Claims Administrator no later than the deadline for the claims filing period specified in the Preliminary Approval Order.

The Claims Administrator shall stamp the date received on the original of any Rescission of Opt-out statement and serve copies to counsel for FedEx Express and Class Counsel by email as a PDF attachment no later than (2) days after receipt thereof and shall file the date-stamped originals with the Clerk of the Court no later than five (5) business days prior to the date of the Fairness Hearing. The Claims Administrator shall retain copies of all Rescissions of Opt-out statements until such time as the Claims Administrator is relieved of its duties and responsibilities under this Decree.

**4. Opt-Out Credits.**

In the event any Settlement Class member elects to opt-out in the time and manner set forth in Section XXII. D, and does not rescind it, FedEx Express shall be entitled to a credit for each such opt-out. The credit amount will be 100% of the average settlement award of all class members eligible to participate in the monetary settlement fund as determined by the Allocation Plan, Section XXII. L. The aggregate credit for each opt-out shall be calculated and deducted from the final payment to be made to the Settlement Fund Account prior to the wire transfer of those funds as set forth in Section XXII.A.2.d.

**E. Claims Administration.**

The Claims Administrator shall (1) prepare and mail settlement notices and claim forms to class members; (2) establish and operate a website designed to provide information to and communication with class members; (3) receive and evaluate claims eligibility; (4) seek additional information from claimants, when appropriate; (5) receive, serve, and file opt-out statements, rescission of opt-out statements, and objections; (6) respond to questions from potential class members; (7) implement the allocation plan; (8) maintain a toll-free number for communicating with class members; and (9) any other duties necessary to carry out its responsibilities set forth in this Decree.

The Claims Administrator shall make claim forms available to potential class members who

submit oral, e-mail, or written requests for claim forms.  The Claims Administrator shall mail the requested claim form via first class postage within two (2) business days after receiving a request.  If FedEx Express, or its counsel, receives requests for claim forms or for information regarding the class settlement, it shall refer such requestors to the toll-free number established by the Claims Administrator for the purpose of administering this settlement.  The requestors shall be informed that any requests for claim forms or information should be directed to the Claims Administrator.  The Claims Administrator shall retain copies of all written requests for claim forms and all records of oral or e-mail requests for claim forms until such time as it has completed its duties and responsibilities under this Decree.

The fees, costs, and expenses of the Claims Administrator shall be paid from the Settlement Fund Account.  All payments to the Claims Administrator shall be approved by Class Counsel.

**F.    Submission of Claim Forms.**

Class members who seek recovery of monetary compensation must complete a claim form and cause it to be filed with the Claims Administrator by the claim filing deadline set forth in the Preliminary Approval Order.  The claim form must be postmarked on or before such date in order to be considered timely.  All claim forms must be signed under penalty of perjury to be considered.  Failure to file a timely claim form, for any reason whatsoever, shall bar the potential class member from having his or her claim considered and from receiving monetary compensation from the Settlement Fund Account.  Class members who file a claim form must notify the Claims Administrator of any change of address.  A failure to notify the Claims Administrator of a change of address may result in the forfeiture of a monetary award.  The Claims Administrator shall be available through the toll-free telephone number and via e-mail through the Claims Website to respond to requests form class members for assistance in completing and filing claim forms.  Class Counsel shall also be available to consult with and provide assistance to potential class members who request assistance in completing their claims forms.

**G.    Deceased Claimants.**

Claims may be filed by deceased claimants through representatives of their estate if appropriate

1   documentation is provided. Claim payments shall be made payable to the estate of the deceased

2   claimant.

3   **H.**    **Determining Eligibility.**

4        The Claims Administrator shall make the determination as to whether a claim form is complete.

5   If it is not complete, the Claims Administrator shall request additional information from the claimant,

6   if it appears that such additional information would complete the Claim Form. Such requests for

7   information shall be in writing and shall specify the information necessary to complete the claim form.

8   The request for information will be sent via first class mail and inform the claimant that a response

9   must be returned no later than thirty days from the date the request for information was mailed. The

10  claimant must provide the requested information, signed under penalty of perjury, to the Claims

11  Administrator by mail with a postmark no later than thirty days from the date of the mailed request for

12  information. Such additional information shall be considered part of the original claim form and will

13  relate back to the original filing date. The failure of a claimant to timely respond to the request for

14  information may result in the denial of the claim.

15  **I.**    **Late-Filed Claims.**

16       For claims received after the filing deadline, the Claims Administrator shall notify late-fling

17  claimants that their claims are untimely and that they are not eligible for any monetary award. The

18  Claims Administrator shall also inform late-filing claimants that they may seek a review of the

19  determination that they filed untimely by requesting the Claims Administrator to reconsider its

20  determination. The Claims Administrator may reverse its determination that a claim was not timely

21  filed only if the claimants proves that the claim form was postmarked on or before the postmark filing

22  deadline and that the untimeliness determination is erroneous.

23  **J.**    **Appeals of Claims Eligibility.**

24       Within ninety days of the close of the claims filing period, all ineligible claimants shall receive

25  written notice of their ineligibility for monetary relief. Any claimants wishing to seek review of their

26  ineligibility determinations must do so by returning a written request for review to the Claims

27  Administrator by mail with a postmark no later than twenty-one days from the date of the notice of

28

1  claim ineligibility.  Failure to file a timely request for review shall bar a claimant from challenging a

2  determination of ineligibility.

3  The Claims Administrator shall resolve the requests for review based on the written request for

4  review and any other documentation or written information submitted by the claimant, or deemed

5  necessary by the Claims Administrator.  The Claims Administrator may seek further written

6  information from the claimant as to the basis of their request and may consider the written arguments

7  of Class Counsel or FedEx Express.

8  The Claims Administrator shall attempt to expeditiously resolve any request for review within

9  sixty days after the filing of the request for review.  The Claims Administrator's decisions shall be

10 communicated to the claimant in writing and shall be final, binding and non-appealable.

11 **K.**    **Claimant Information Provided by FedEx Express.**

12 The parties understand and agree that FedEx Express may possess information that may assist

13 in the determination of eligibility of potential class members for monetary compensation.  FedEx

14 Express shall reasonably cooperate in providing such information which Class Counsel or the Claims

15 Administrator deems reasonably necessary to assist in determining the eligibility of any class member

16 for monetary relief.  FedEx Express shall attempt to provide such information within fourteen days of

17 any written request for the information, although  FedEx Express may object that the production of any

18 such information is unreasonable, and the Special Master shall decide whether Class Counsel and/or

19 the Claims Administrator have a reasonable basis for receiving the information.  Neither Class Counsel

20 nor the Claims Administrator shall be entitled to receive information that is protected by attorney-

21 client or work product privilege.

22 **L.**    **Allocation Plan.**

23 Each class member, including Class Representatives, who seeks to receive an award must fill

24 out the claim form and supply information related to his or her claim.  On the basis of a review of the

25 information supplied, the Claims Administrator shall allocate a certain number of points based upon

26 specific factors related to the claims.  For those eligible African American and Latino members in the

27 Settlement Class who work or worked in hourly paid jobs the specific factors include length of service

28

[PROPOSED] CONSENT DECREE - CASE NO.: C03-2659 SI; C 03-2878 SI

1  in those jobs, status as a full-time or part-time employees, and whether the class member failed the

2  BST. For those eligible African American members in the Settlement Class who work or worked as

3  operations managers the specific factor is length of service as an operations manager. The Claims

4  Administrator shall total the points applicable to all eligible claimants, determine each eligible

5  claimant's proportionate share of the total points, and allocate each eligible claimant's proportionate

6  share of the Settlement Fund Account.

7       For example, if the amount available for distribution from the Settlement Fund Account to

8  eligible class member is $1,000,000.00, and the Claims Administrator has awarded 10,000 points to

9  eligible class members and if an eligible class member were awarded 10 points, then that class member

10  would receive an award of $1,000.00 since each point would be worth $100.00 ($1,000,000.00 ÷

11  10,000).

12  **M.**    **Distribution of the Monetary Awards.**

13       As soon as practicable after making the calculations required by the allocation plan set forth in

14  Section XXII.L, the Claims Administrator shall distribute the monetary awards to eligible class

15  members via first class mail. The Claims Administrator shall only issue the checks in the name of the

16  eligible class members unless Section XXII.G is applicable. The checks shall be invalid if not cashed

17  within 90 days of the date issue.

18       Any amounts allocated to lost wages shall be subject to withholding for federal and state

19  income and payroll taxes. Each Class Member will be responsible for all income taxes on his or her

20  monetary award, and the Company shall be responsible for one half of the employer's share of all

21  applicable payroll taxes. The Claims Administrator will inform FedEx Express of the amount that is

22  one half of the employer's share of the payroll taxes to be paid by the Company and such payment

23  shall be made as provided in Section XXII.A.2.d. The other half of the employer's share of payroll

24  taxes shall be paid by the Claims Administrator out of the Settlement Fund Account. Any amounts

25  designated as interest shall not be subject to withholding and shall be reported, if required, to the IRS

26  on Form 1099-INT. The amounts paid for emotional distress shall not be subject to withholding and

27  shall be reported to the IRS on Form 1099-MISC.

28

Included with the check due to the eligible claimant will be a statement showing the gross amount of the payment and an itemized statement of all deductions made. Flat rate deductions from gross amounts that are determined to be wage payments will be made for federal and state income taxes. The employee's share of social security and medicare tax, and any local income or payroll taxes will be based on the rates in effect with the federal and local governments.

The Claims Administrator will be responsible for preparing the filing of all appropriate tax filings and reports including, but not limited to, W-2 and 1099 forms for all eligible claimants and Class Representatives for their payments from the Settlement Fund Account, as well as any required for the Settlement Fund Account. The Claims Administrator will also be responsible for reporting and remitting to the appropriate taxing authorities the employer's and employees' shares of payroll taxes.

**N.** **Allocation of Monetary Awards.**

The monetary awards to eligible class members shall be allocated to lost wages, compensatory damages, and interest with 20% allocated to lost wages, 60% allocated to compensatory damages, and 20% allocated to interest.

**O.** **Confidentiality of Claimant Information.**

FedEx Express' counsel and payroll department will only be provided with the names and social security numbers of class members who filed claims on a need-to-know basis. The identity of the claimants will not be disclosed to anyone else at FedEx Express.

**P.** *Cy Pres* **Fund.**

It is the intention of the parties to distribute completely the funds in the Settlement Fund Account. The Claims Administrator will use SSNs to attempt to get better addresses for any class members whose checks are returned, and will remail the uncashed checks to the new addresses. The Claims Administrator will also attempt to telephone any class member who has not cashed a check of at least $2,000. If, despite those efforts, checks remain uncashed after they have become invalid, the remaining sum shall become part of a *cy pres* fund to be distributed to one or more charitable organizations selected by the Parties. If the Parties cannot agree, they will each submit two possible *cy pres* beneficiaries to the Court, which shall determine the distribution of remaining funds.

**Q.**   **Report from Claims Administrator.**

Within thirty days of the distribution of the monies from the Settlement Fund to the eligible Class members, the Claims Administrator shall furnish an accounting of the distributions from the Settlement Fund to the Court with copies to Class Counsel and FedEx Express. Within thirty days of the completion of the Term of the Decree the Claims Administrator shall furnish a final accounting of all the distribution from the Settlement Fund Account to the Court, Class Counsel and FedEx Express.

## XXIII. PAYMENT OF FEES AND COSTS TO SPECIAL MASTER, MONITORING COUNSEL AND CLASS COUNSEL

**A.**   **Payments to Special Master.**

1.   Payments to the Special Master will be made from the Settlement Fund Account by the Claims Administrator. The Special Master will receive payment on the basis of his or her standard hourly rates and reimbursement for out-of-pocket expenses within thirty days of submitting to the Claims Administrator a bill including an itemized statement of time spent and work performed and expenses and costs incurred. Copies of any bill submitted shall be sent to FedEx Express and Class Counsel.

2.   In order to manage effectively the Settlement Fund Account the Claims Administrator may request the Special Master to provide an estimate of fees and costs that he or she anticipates incurring.

**B.**   **Award of Fees, Costs and Expenses to Class Counsel.**

1.   As part of the settlement underlying this Consent Decree, FedEx Express has agreed to pay to Class Counsel, on behalf of the Class Representatives and the Settlement Class, reasonable attorneys' fees, litigation expenses, and costs.

2.   After Final Approval of the Decree and court approval of Class Counsel's attorneys' fees, litigation expenses and costs, FedEx Express has agreed to pay Class Counsel an award of reasonable attorneys' fees, litigation expenses, and costs in the amount of $15,000,000 for work performed and costs and expenses incurred through and including the Approval Date. Included in this amount is approximately $2,575,000 for litigation costs and expenses incurred by Class Counsel. This amount fully satisfies any obligation that FedEx Express may have to pay attorneys' fees, litigation

45

expenses, and costs for and on behalf of the Class Representatives and the Settlement Class for any and all work performed and costs and expenses incurred through and including the Approval Date. This amount is part of, and not in addition to, the Settlement Fund specified in Section XXII. A.

   3. The award of attorneys' fees, litigation expenses and costs shall be paid as follows:

    Within seven business days following Final Approval or the issuance of an order approving attorneys' fees, litigation expenses and costs, whichever is later, FedEx Express will wire the amount of the fees, litigation expenses, and costs approved by the Court to the Settlement Fund Account, to hold in trust for Class Counsel. If the amount of attorneys' fees, litigation expenses, and costs approved by the Court is less than $15,000,000, the difference shall be added to the amount distributed to the Settlement Class pursuant to Section XXII.A.2.d.

   4. Once FedEx Express makes the payments sets forth in Section XXIII.B.3 to the Settlement Fund Account, no Class Counsel may assert any claim for such payments from FedEx Express.

**C.** **Payment of Fees, Expenses and Costs for Work Performed after Approval Date.**

   1. Class Counsel may receive payment for work performed and expenses incurred after the Approval Date relating to the defense of the Decree, monitoring, administration and implementation of the Decree, including but not limited to evaluating and enforcing compliance with the Decree, including the retention of experts to assist in evaluating and enforcing the Decree on the following basis:

    a. Except as provided in Section XIX, all payments shall be made from the Settlement Fund Account with FedEx Express having no responsibility for making such payments after it has paid the Settlement Fund Account as provided in Section XXII. A.

    b. All requests for payment shall be made at the discretion of Class Counsel who, as appropriate, may make requests for payment to experts.

    c. Class Counsel shall receive payment on the basis of their hourly rates and reimbursement for out-of-pocket expenses. Class Counsel shall submit to the Claims Administrator a bill including an itemized statement of time, work performed and expenses and costs incurred. Class

1  Counsel shall be paid at the hourly rate schedule attached hereto as Appendix G, plus reasonable

2  annual rate increases.

3      The Claims Administrator shall pay the amounts requested by Class Counsel that meet the

4  requirements set forth in Section XXIII.C.1 within ten days of receipt of any such request, provided

5  that there are sufficient funds available in the Settlement Fund Account including sufficient funds to

6  pay the estimated costs of the claims and allocation processes and the estimated payments that may be

7  due to the Special Master. If after all payments have been made to the Class Representatives,

8  Declarant/Deponents and Settlement Class pursuant to Section XXII.B.1 and XXII.B.2 to Class

9  Counsel pursuant to Section XXIII.B, to the Claims Administrator, to the taxing authorities for all

10  applicable taxes, to the Special Master, and to Monitoring Counsel at their hourly rates for the

11  monitoring of the Decree, there are funds remaining in the Settlement Fund Account, then any

12  remaining amount will be distributed to Monitoring Counsel in recognition of their having taken the

13  risk that there would be insufficient funds in the Settlement Fund Account to pay Monitoring Counsel

14  at their hourly rates for monitoring the Decree.

21  Dated: April __6__, 2007

James M. Finberg (SBN 114850)
Eve H. Cervantez (SBN 164709)
Claire Prestel (SBN 235649)
Chimene I. Keitner (SBN 226948)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

By: _____

47

Michael S. Davis

Barry Goldstein (SBN 141868)
GOLDSTEIN, DEMCHAK, BALLER, BORGEN
    & DARDARIAN
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Telephone: (510) 763-9800
Facsimile: (510) 835-1417


By:_____
           Barry Goldstein

Waukeen Q. McCoy (SBN 168228)
LAW OFFICES OF WAUKEEN Q. McCOY
703 Market Street, Suite 1407
San Francisco, CA 94103
Telephone (415) 675-7705
Facsimile: (415) 675-2530


By: _____
          Waukeen Q. McCoy

Kay McKenzie Parker (SBN 143140)
LAW OFFICES OF KAY McKENZIE PARKER
225 Bush Street, 16th Floor
San Francisco, CA 94104
Telephone: (415) 227-9622
Facsimile: (415) 227-4522


By:_____
          Kay McKenzie Parker

*Attorneys for the Plaintiffs*

Kelly M. Dermody (SBN 171716)
Daniel E. Barenbaum (SBN 209261)
LIEFF, CABRASER, HEIMANN &
    BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008


By: _____

John L. Burris (SBN 69888)
LAW OFFICES OF JOHN L. BURRIS
7677 Oakport Street, Suite 1120
Oakland, CA 94612
Telephone: (510) 839-5200 ext. 67
Facsimile; (510) 839-3882


By:_____
            John L. Burris


Guy B. Wallace (SBN 17615)
Todd M. Schneider (SBN 158253)
Joshua Konecky (SBN 182897)
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105


By:_____

Dated: April _____, 2007

Michael S. Davis (SBN 160045)
LAW OFFICES OF MICHAEL S. DAVIS
345 Hill Street
San Francisco, CA
Telephone: (415) 282-4315
Facsimile: (415) 358-5576


By:_____
            Michael S. Davis

Kelly M. Dermody (SBN 171716)
Daniel E. Barenbaum (SBN 209261)
LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008


By:_____


John L. Burris (SBN 69888)
LAW OFFICES OF JOHN L. BURRIS
7677 Oakport Street, Suite 1120
Oakland, CA 94612
Telephone: (510) 839-5200 ext. 67
Facsimile: (510) 839-3882


By:_____
        John L. Burris


Todd M. Schneider (SBN 158253)
Guy B. Wallace (SBN 176151)
Joshua Konecky (SBN 182897)
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105


By:_____


Dated: April _____, 2007

Michael S. Davis (SBN 160045)
LAW OFFICES OF MICHAEL S. DAVIS
345 Hill Street
San Francisco, CA
Telephone: (415) 282-4315
Facsimile: (415) 358-5576


By:_____

Kelly M. Dermody (SBN 171716)
Daniel E. Barenbaum (SBN 209261)
LIEFF, CABRASER, HEIMANN &
   BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008


By:_____


John L. Burris (SBN 69888)
LAW OFFICES OF JOHN L. BURRIS
7677 Oakport Street, Suite 1120
Oakland, CA 94612
Telephone: (510) 839-5200 ext. 67
Facsimile; (510) 839-3882


By:_____
            John L. Burris


Todd M. Schneider (SBN 158253)
Guy B. Wallace (SBN 176151)
Joshua Konecky (SBN 182897)
SCHNEIDER & WALLACE
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 421-7100
Facsimile: (415) 421-7105


By:_____


Dated: April ____, 2007

Michael S. Davis (SBN 160045)
LAW OFFICES OF MICHAEL S. DAVIS
345 Hill Street
San Francisco, CA
Telephone: (415) 282-4315
Facsimile: (415) 358-5576


By:_____
           Michael S. Davis

48

1   Dated: April ____9____, 2007

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeana M. Littrell
Frederick L. Douglas
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Bldg. B, 3rd Floor
Memphis, TN 38125-8800
Telephone: (901) 434-8519
Facsimile: (901) 434-9271

By: *Frederick L. Douglas*

*Attorneys for the Defendant*

IT IS SO ORDERED.

Signed:_____  Dated:_____
      The Hon. Susan Illston

[PROPOSED] CONSENT DECREE - CASE NO.: C03-2659 SI; C 03-2878 SI

Dated: April _____, 2007

Jeana M. Littrell
Frederick L. Douglas
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Bldg. B, 3rd Floor
Memphis, TN 38125-8800
Telephone: (901) 434-8519
Facsimile: (901) 434-9271

By:_____

*Attorneys for the Defendant*

IT IS SO ORDERED.

Signed:_____          Dated:_____8/15/07_____

The Hon. Susan Illston

[PROPOSED] CONSENT DECREE - CASE NO.: C03-2659 SI; C 03-2878 SI